### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) ) | Chapter 11 |
| FRED'S, INC., *et al.*,[1] | ) ) ) | Case No. 19-_____ (   ) |
| Debtors. | ) ) | Joint Administration Requested |
| | ) | |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING, BUT NOT DIRECTING, THE PAYMENT OF CERTAIN PREPETITION CLAIMS OF LIEN CLAIMANTS AND 503(b)(9) CLAIMANTS AND (II) GRANTING RELATED RELIEF

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") respectfully state as follows in support of this motion (the "Motion"):

### RELIEF REQUESTED

1.    The Debtors submit this Motion pursuant to sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") requesting entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order," and the "Final Order," respectively): (i) authorizing, but not directing, the Debtors to pay certain Lien Claims (as defined herein) in an amount not to exceed not to exceed $212,000 (the "Interim Cap") and on a final basis in an

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 2001 Bryan Street, Suite 1550, Dallas, Texas 75201.

aggregate amount not to exceed $312,000 (the "Final Cap" and together with the Interim Cap, the "Lien Claim Caps") absent further order of the Court, and the 503(b)(9) Claims (as defined herein) in full; (ii) authorizing banks and other financial institutions (the "Banks") to receive, process, honor, and pay any and all checks and transfer requests related thereto pursuant to the Interim Order or the Final Order, as applicable, whether presented before or after the Petition Date; and (iii) granting related relief.

2.      In addition, the Debtors request that the Court schedule a hearing on the entry of the Final Order (the "Final Hearing") within 30 days of the date hereof or as soon thereafter as practicable.

### JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C § 157(b)(2).  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m).

**BACKGROUND**

A.    **General Background.**

6.    On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. No committees have been appointed or designated.

7.    A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' bankruptcy petitions are set forth in greater detail in the *Declaration of Mark A. Renzi, Chief Restructuring Officer of Fred's, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith. This Motion incorporates by reference the facts set forth in the First Day Declaration as if fully set forth herein. Additional facts specific to this Motion are set forth below.

B.    **The Lien Claimants.**

8.    The Debtors operate discount merchandise stores in 11 states across the southeastern United States. As described more fully in the First Day Declaration, the Debtors generally serve low-, middle-, and fixed-income families in small- to medium-sized towns. These customers often live in rural areas without access to large discount retailers.

9.    The Debtors operate stores that sell general merchandise and specialty and retail pharmacy products. The Debtors rely on approximately 1,100 vendors for the goods and services necessary to operate their stores and provide the best selection of goods and pharmacy

products for their customers.  The Debtors acquire goods and pharmacy products domestically

from vendors throughout the United States, and import a limited number of goods from China.

As described below, certain of the Debtors' vendors provide specific types of goods or services

that may entitle them to security interests, priorities, or other rights in or over the Debtors'

property.

10.    In the ordinary course of business, the Debtors work with two third-party vendors

(the "<u>Shipping Vendors</u>")[2] to ensure the uninterrupted flow of goods and pharmacy products to

the Debtors' distribution center and stores.   One of the Shipping Vendors – CH Robinson

Worldwide, Inc. – coordinates all aspects of the shipment and transportation of domestic goods

to  the  Debtors'  distribution  center  and  stores.    Another  Shipping  Vendor  –  Expeditors

International of Washington, Inc. – coordinates all aspects of the shipment and transportation of

international goods from the Debtors' vendors to the Debtors' distribution center and stores.  A

third Shipping Vendor – Mode Transportation – transports all goods for the 9 Discount Depots in

the Alabama market. The Shipping Vendors work directly with other vendors (the "<u>Shipper Lien

Claimants</u>")  who  are  responsible  for  the  actual  shipment  and  transportation  of  goods  and

pharmacy products to the Debtors' distribution center and stores.  The Shipper Lien Claimants

regularly possess goods and products that belong to the Debtors in the course of shipping and

transporting those goods and products to the Debtors' distribution center and stores.   The

Debtors pay the Shipping Vendors for the Shipper Lien Claimants' services, and the Shipping

Vendors remit those payments to the Shipper Lien Claimants.   The failure of the Debtors to

ensure that all prepetition claims of the Shipper Lien Claimants (the "<u>Shipper Lien Claims</u>") are

paid could result in the Shipper Lien Claimants asserting possessory liens, under applicable non-

---

[2] By this Motion, the Debtors are seeking authority to pay the Shipping Vendors any amounts owed to the Shipper Lien Claimants (as defined herein), which the Shipping Vendors will remit in total to the Shipper Lien Claimants.

bankruptcy law, against the Debtors' property in their possession and refusing to deliver the Debtors' property in their possession.

11.     Additionally, in the ordinary course of business, the Debtors utilize other third-party vendors who, under applicable non-bankruptcy law, have the potential to assert mechanic's, materialmen's, artisan's, or other similar liens against the Debtors' property (collectively, the "Other Lien Claimants" and together with the Shipper Lien Claimants, the "Lien Claimants") if the Debtors fail to pay their prepetition claims (the "Other Lien Claims" and together with the Shipper Lien Claims, the "Lien Claims").  The Other Lien Claimants provide a number of services to the Debtors to facilitate their operations and ability to maximize the value of their estates, such as sorting, tagging, pricing, and boxing the Debtors' products outside of the Debtors' stores and distribution center and routine maintenance and repair services at the Debtors' stores and distribution center.

12.     The Debtors also sell lottery tickets in certain locations, which are scanned as soon as they arrive at the store, and are then invoiced within two weeks (the "Lottery Sales Obligations").  The Debtors also sell beer in certain locations, which as required by federal law, must be paid within two days (the "Beer Sales Obligations").  To comply with the Beer Sales Obligations, the Debtors' bank accounts are swept daily.  Given these circumstances, the Debtors request the ability to pay the Lottery Sales Obligations and Beer Sales Obligations amounts as they come due in the ordinary course.

13.     Additionally, the Debtors are in the midst of construction projects essential to maintain compliance with state regulations.  The Debtors currently have companies who assist with this process and request the option to pay these companies up to $130,000 in the ordinary course.

14.     Prior to the Petition Date, although the Debtors generally made timely payments to the Lien Claimants, including payments to the Shipping Vendors who then remitted payments to the Shipper Lien Claimants, some of the Lien Claimants may not have been paid in full for certain Lien Claims.  This may result in such Lien Claimants asserting or perfecting possessory or other liens under applicable non-bankruptcy law with respect to certain of the Debtors' property (collectively, the "Liens").[3]  Moreover, to protect any asserted Lien rights, the Lien Claimants may refuse to release goods or property in their possession unless and until the Lien Claims have been satisfied.  Irrespective of the amount and validity of the Liens, the mere assertion of the Liens would delay the Debtors' access to key goods and services and severely disrupt the Debtors' operations, thereby causing irreparable harm to the Debtors' estates and stakeholders.  Accordingly, the Debtors seek authority, but not direction, to pay the Lien Claims to the extent the Debtors determine, in the exercise of their business judgment, that such payments are necessary or appropriate, in an amount not to exceed the Lien Claim Caps.

C.     **The 503(b)(9) Claimants.**

15.     As set forth above, in the ordinary course of their business, the Debtors work with approximately 1,110 vendors.  Certain of those 1,110 vendors (the "503(b)(9) Claimants") may have delivered goods to the Debtors within the 20-day period immediately preceding the Petition Date, thereby giving rise to prepetition claims under Bankruptcy Code Section 503(b)(9) (the "503(b)(9) Claims").  The Debtors' relationships with many of the 503(b)(9) Claimants are not governed by long-term contracts and failure to pay the 503(b)(9) Claims could result in the 503(b)(9) Claimants refusing to supply new goods to the Debtors or requiring more restrictive trade terms.  Such refusal to supply new goods could significantly harm the Debtors' business,

---

[3] By this Motion, the Debtors do not concede that any asserted Liens (contractual, common law, statutory, or otherwise) are valid, and the Debtors expressly reserve the right to contest the extent, validity, and perfection of any and all such asserted Liens.

which depends upon a steady stream of goods regularly delivered to and available at the Debtors' stores. Similarly, requiring more restrictive trade terms would put additional strain on the Debtors' businesses and their ability to maintain an orderly liquidation by limiting the amount and variety of goods the Debtors could purchase and offer at their stores, which would impair the Debtors' ability to meet customers' expectations and maintain customer loyalty.

16.     Accordingly, the Debtors seek authority, but not direction, to pay the 503(b)(9) Claims to the extent the Debtors determine, in the exercise of their business judgment, that such payments are necessary or appropriate. The Debtors believe that payment in full of the 503(b)(9) Claims and payment of the Lien Claims up to the Lien Claim Caps is sufficient to ensure a continued supply of critical goods and services necessary to maintain the Debtors' ordinary course operations.

## BASIS FOR RELIEF

**A.     The Court Should Authorize Payment of the Lien Claims.**

**1.     Payment of the Lien Claims is Justified under Sections 363(b) and 105(a) of the Bankruptcy Code and under the Doctrine of Necessity.**

17.     The relief requested in this Motion is appropriate under sections 363(b) and 105(a) of the Bankruptcy Code and the doctrine of necessity. As stated above, payment of the Lien Claims, and in particular, payment of the Shipping Vendors who remit payment to the Shipper Lien Claimants, is essential to the continued operation of the Debtors' business. In turn, the maintenance of the Debtors' business during these Chapter 11 Cases, especially the capacity to offer those goods and pharmacy products that customers and patients expect to be at their stores is crucial to the Debtors' ability to maximize the value of their assets for the benefit of all of the Debtors' stakeholders. As a result, payment of the Lien Claims is appropriate under the Bankruptcy Code and should be authorized by the Court.

18.     Courts have consistently authorized the payment of prepetition obligations in appropriate circumstances. *See, e.g.*, *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions . . . . [under the] 'business judgment test.'") (citations omitted)   Once a debtor has articulated a valid business justification, there "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

19.     Additionally, payment on account of a prepetition claim may be justified pursuant to Bankruptcy Code section 105 and under the "doctrine of necessity."   Section 105(a) authorizes the Court to enter any order "necessary or appropriate" to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a).   The doctrine of necessity also allows bankruptcy courts to authorize payment of certain prepetition claims prior to the completion of the reorganization or liquidation process where the payment of such claims is necessary to maximize asset values. *See In re Just for Feet, Inc.*, 242 B.R. 821, 825-26 (D. Del. 1999) (holding the "necessity of payment" doctrine justified payment of prepetition claims where such payment was "critical to the debtor's reorganization") (citations omitted); *Ionosphere Clubs*, 98 B.R. at 175 ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt is not a novel concept.") (citing *Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286 (1882)).

20.     The Debtors respectfully submit that payment of the Lien Claims in accordance with the Interim Order and Final Order is supported by the foregoing authority and should be authorized by the Court.  If the Debtors fail to pay the Lien Claims, the Lien Claimants could assert or perfect Liens for the amounts owed on account of the Lien Claims.  Moreover, to protect any asserted Lien rights, the Lien Claimants may refuse to release goods or property in their possession unless and until the Lien Claims have been satisfied, and may refuse to provide future services for the Debtors, thereby delaying or eliminating the Debtors' access to goods and services that are vital to the Debtors' continuing business operations, including the availability of pharmacy products.  As a result, the Debtors have determined, in their reasonable business judgement, that payment of the Lien Claims is necessary to avoid immediate and irreparable harm.

**2.     Payment of the Lien Claims is Justified as a Valid Exercise of the Debtors' Fiduciary Duties.**

21.     Payment of prepetition claims also may be authorized as a valid exercise of a debtor's fiduciaries duties.  "A debtor in possession, like a trustee, is a fiduciary holding the bankruptcy estate and operating the business for the benefit of its creditors . . . and equity owners." *In re CoServ L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (citing 7 COLLIER ON BANKRUPTCY ¶ 1106.02[3] (15TH ED. REV. 2001)).  Indeed, a debtor in possession has a duty to protect and preserve the value of its estate, including the business's going-concern value, and may pay prepetition claims if necessary for the debtor to fulfill that duty.  *Id.*  Indeed, "[t]here are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim." *Id.*  The *CoServ* court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant.
> Second, unless it deals with the claimant, the debtor risks the

> probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

22.     The Debtors submit that payment of the Lien Claims will allow them to discharge their fiduciary duties as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, as payment of the Lien Claims meets each prong of the *CoServ* test.

23.     First, it is critical the Debtors deal with the Lien Claimants. To meet this element, a debtor "must show that, for one reason or another, dealing with the claimant is virtually indispensable to profitable operations or preservation of the estate." *Id.* at 498. Here, as described above, the Debtors rely on the Shipper Lien Claimants to ensure the uninterrupted flow of goods to their stores, and rely on the Other Lien Claimants to provide a number of other services to facilitate their operations and to maximize value. These services include sorting, tagging, pricing, and boxing the Debtors' products outside of the Debtors' stores and distribution center, as well as necessary maintenance and repair services. The Lien Claimants are limited to those vendors identified by the Debtors, in their business judgement, who have perfected, or are capable of perfecting in the future, a Lien in respect of a Lien Claim. Accordingly, such Lien Claimants are "virtually indispensable" to the preservation of the estate.

24.     Second, the Debtors risk a probability of harm or loss of economic advantage to their estates that is disproportionate to the amount of the Lien Claims. As discussed above, the Debtors have determined, after careful consideration, that the failure to pay the Lien Claims would likely have a material adverse impact on their business operations and efforts to maximize the value of their estates for all stakeholders. Any interruption or delay in the supply of the critical goods and services caused by failure to pay the Lien Claims could significantly impact

the Debtors' operations and the availability of goods and pharmacy products for the Debtors' liquidation efforts.  In addition, any doubt about the Debtors' ability to provide desired goods and pharmacy products without interruption may result in a decrease in the number of customers and patients coming to the Debtors' stores.  Even a small decrease in foot traffic at the Debtors' stores could be detrimental to the Debtors' business and going-concern value.  Accordingly, the Debtors have properly weighed the costs and benefits in determining that the Lien Claims should be paid.

25.      Third, there is no legal or practical alternative to dealing with the Lien Claimants aside from payment of the Lien Claims.  With respect to each of the Lien Claims, the Debtors have examined other legal options short of payment of such Lien Claims, and have determined in their business judgment that there exists no practical or legal alternative to payment.

26.      Moreover, paying the Lien Claims does not result in material prejudice to any parties in interest due to the rights, priorities, and interests that the Lien Claimants have or could assert to collect on the Lien Claims.  Because the amount of the Lien Claims is likely less than the value of any property securing those claims, any such party holding a Lien arguably is a fully secured creditor.  For Lien Claims that are deemed secured claims, Bankruptcy Code Section 1129 requires that they be satisfied through deferred cash payments totaling at least the allowed amount of each such claim, of a value as of the effective date of the plan equal to the value of the collateral securing the claim, with a continuation of the Liens against the collateral; or if the collateral is to be sold, that the Lien securing the claim attach to the proceeds of sale; or that the holder realize the indubitable equivalent of the claim.  *See* 11 U.S.C. § 1129(b)(2)(A). Consequently, payment of the Lien Claims should only affect the timing of payment of the Lien Claims and will not prejudice the rights of other parties in interest.

**3.**     <u>The Court Should Authorize Payment of 503(b)(9) Claims</u>.

27.     Bankruptcy Code Section 503(b)(9) provides administrative expense status for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." Thus, payment of the 503(b)(9) Claims now only provides the 503(b)(9) Claims with amounts they would be entitled to receive under a chapter 11 plan, and the timing of such payments falls within the Court's discretion. *See, e.g.*, *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) ("The determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court."). The Debtors' ability to obtain goods without interruption is key to their survival and necessary to preserve the value of their estates. Absent payment of the 503(b)(9) Claims at the outset of these Chapter 11 Cases – which merely accelerates the timing of payment and not the ultimate treatment of such claims – the Debtors could be denied access to the goods necessary to maintain their operations and maximize the value of the Debtors' estates.

28.     Moreover, the Bankruptcy Code does not prohibit a debtor from paying administrative expense claims prior to confirmation of a plan. As administrative expense claims are incurred in the ordinary course of business, such claims may be paid in accordance with the Debtors' business judgment pursuant to Bankruptcy code Section 365(c)(1).

29.     Accordingly, the Debtors respectfully submit that payment of the 503(b)(9) Claims in accordance with the Interim Order and Final Order should be authorized by the Court.

**4.**     **The Court Should Authorize Banks and Other Financial Institutions to Honor <u>Checks and Electronic Funds Transfers</u>.**

30.     To facilitate the implementation of the requested relief, the Debtors further request that the Court authorize the Financial Institutions to receive, process, honor, and pay any

and all checks drawn or electronic fund transfers from the Debtors' accounts whether such checks or transfer requests were presented before or after the Petition Date, to the extent that such checks or electronic fund transfers are expressly identified by the Debtors as relating directly to the authorized payments under the Interim Order or the Final Order.  The Debtors also seek authority to issue new postpetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the entry of an order for relief.

### THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

31.     For a debtor to obtain relief to make payments within 21 days of the Petition Date, it must establish that making such payments satisfies the requirements mandated by Bankruptcy Rule 6003 – namely, the relief requested is necessary to avoid "immediate and irreparable harm."

32.     As described above, immediate and irreparable harm would result if the relief requested herein is not granted.  Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

### WAIVER OF NOTICE REQUIREMENTS

33.     Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable.

### DEBTORS' RESERVATION OF RIGHTS

34.     Nothing contained herein is intended or should be construed as:  (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365; (iii) an implication or admission that any particular claim is of a type specified or defined in this Motion; (iv) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or other applicable law; or (v) a concession by the

Debtors or any other part-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of any such liens.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

35.    Notice of this Motion shall be given to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' thirty largest unsecured creditors on a consolidated basis; (c) counsel to the DIP Agent; (d) the United States Attorney's Office for the District of Delaware; (e) each of the Debtors' financial banking institutions; (f) the United States Attorney for the District of Delaware; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service; and (j) any other party required to be provided notice under Local Rule 9013-1(m).  Due to the nature of the relief requested herein, the Debtors submit that no other or further notice need be provided.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court:  (i) enter the Interim Order substantially in the form attached hereto as **Exhibit A** granting the relief requested in this Motion on an interim basis; (ii) schedule the Final Hearing on the Motion within 30 days of the Petition Date or as soon as otherwise practicable thereafter to consider entry of the Final Order substantially in the form attached hereto as **Exhibit B** and enter the Final Order; and (iii) grant such other and further relief as may be just and proper.

Dated: September 9, 2019
      Wilmington, Delaware

*/s/ Derek C. Abbott*  _____

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Matthew B. Harvey (No. 5186)
Joseph C. Barsalona II (No. 6102)
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email:  dabbott@mnat.com
      aremming@mnat.com
      mharvey@mnat.com
      jbarsalona@mnat.com

- and -

Adam L. Shiff (*pro hac vice* motion pending)
Robert M. Novick (*pro hac vice* motion pending)
Matthew B. Stein (*pro hac vice* motion pending)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
Email:  AShiff@kasowitz.com
      RNovick@kasowitz.com
      MStein@kasowitz.com

**PROPOSED COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**

**<u>Exhibit A</u>**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRED'S, INC., *et al.*,[1] | ) | Case No. 19-_____ (   ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING, BUT NOT DIRECTING,
THE PAYMENT OF CERTAIN PREPETITION CLAIMS OF LIEN
CLAIMANTS AND 503(b)(9) CLAIMANTS AND (II) GRANTING RELATED RELIEF**

Upon the Motion[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of this Interim Order pursuant to Bankruptcy Code sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m):  (i) authorizing, but not directing, the Debtors to pay the Lien Claims in an amount not to exceed the Interim Cap of $212,000 on an interim basis, and on a final basis not to exceed the Final Cap of $312,000, absent further order of the Court, and the 503(b)(9) Claims in full; (ii) authorizing Financial Institutions to receive, process, honor, and pay any and all checks and transfer requests evidencing amounts authorized by this Interim Order or Final Order whether presented before or after the Petition Date; and (iii) granting related relief, all as further described in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and consideration of the Motion and the relief requested therein being a core

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 2001 Bryan Street, Suite 1550, Dallas, Texas 75201.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

proceeding in accordance with 28 U.S.C. § 157(b)(2); and venue being proper in this District

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being

adequate and appropriate under the particular circumstances; and upon the record of any hearing

being held to consider the relief requested in the Motion; and upon the First Day Declaration and

all proceedings had before this Court; and this Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other

parties in interest and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and any objections to the requested relief having been withdrawn or

overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED:**

1.     The Motion is granted to the extent provided herein.

2.     Except as otherwise provided herein, the Debtors are authorized, but not directed,

to pay directly, or indirectly through the Shipping Vendors, the Lien Claims in an amount not to

exceed the Interim Cap of $212,000 in the aggregate on an interim basis, absent further order of

this Court, and the 503(b)(9) Claims in full.

3.     The Debtors are authorized, but not directed, to issue postpetition checks or to

affect postpetition fund transfer requests in replacement of any checks or fund transfer requests

that are dishonored as a consequence of the Chapter 11 Cases with respect to prepetition amounts

authorized to be paid herein.

4.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Interim Order in accordance with the Motion.

5.     Subject to the Cash Management Order, the banks and financial institutions on

which checks were drawn or electronic payment requests made in payment of the prepetition

obligations approved herein are authorized to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Interim Order.

6.      Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Order shall constitute, nor is it intended to constitute:  (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365; (iii) an implication or admission that any particular claim is of a type specified or defined in the Motion; (iv) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or other applicable law; or (v) a concession by the Debtors or any other part-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of any such liens; (vi) a concession that any payment made pursuant to the Court's order is valid of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

7.      Notwithstanding anything to the contrary in this Order, (i) payments made by the Debtors pursuant to the authority granted in this Order must be in compliance with, and shall be subject to, the requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the "DIP Financing Agreements") and the terms and conditions of the interim and final orders, as applicable, approving the DIP Financing Agreements and governing the Debtors' use of cash collateral (in either case, the "DIP Financing Order"), including, without limitation, that such expenditures must comply with the DIP Budget under, and as defined in, the DIP

Financing Agreements, (ii) to the extent there is any inconsistency between the terms of the DIP Financing Order and any action taken or proposed to be taken hereunder, the terms of the DIP Financing Order shall control, and (iii) neither the entry of this Order nor any prepetition or postpetition agent's or lender's failure to object to the entry of this Order is intended, or shall be construed, as a consent to or waiver of any objection to any payment or expenditure under this Order or otherwise in excess of the amount authorized under the DIP Financing Agreement and the DIP Budget.

8.    The requirements set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

9.    The deadline by which objections to the Motion and the Final Order must be filed is _____, 2019 at 4:00 p.m. (ET).  Objections must be served on: (a) proposed counsel to the Debtors, (i) Kasowitz Benson Torres LLP, 1633 Broadway, New York, New York 10019, Attn: Adam L. Shiff, Esq. (AShiff@kasowitz.com), Robert M. Novick (RNovick@kasowitz.com), and Matthew B. Stein (MStein@kasowitz.com) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Floor, Wilmington, Delaware 19899, Attn: Derek C. Abbott (DAbbot@mnat.com), and Andrew R. Remming (ARemming@mnat.com); (b) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street Suite 2207 Lockbox 35, Wilmington, Delaware 19801; (c) counsel to the DIP Agent, (i) Parker, Hudson, Rainer & Dobbs LLP, 303 Peachtree Street N.E., Suite 3600, Atlanta, Georgia 30308, Attn: C. Edward Dobbs, Esq. (edobbs@phrd.com) and Eric W. Anderson, Esq. (eanderson@phrd.com) and (ii) Richards Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: John H. Knight, Esq. (knight@rlf.com); and (d) counsel to any statutory committee

appointed in these Chapter 11 Cases.  A final hearing, if required, on the Motion will be held on

_____, 2019 at ___ (ET).  If no objections are filed to the Motion, this Court may enter the

Final Order without further notice or hearing.

10.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, this Interim Order shall be immediately effective and enforceable upon its entry.

11.    To the extent that the Motion is inconsistent with this Interim Order, the terms of this Interim Order shall govern.

12.    The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Interim Order.


Dated: _____, 2019
          Wilmington, Delaware

          _____
          United States Bankruptcy Judge

## **Exhibit A**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRED'S, INC., *et al.*,[1] | ) | Case No. 19-_____ (   ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

**FINAL ORDER (I) AUTHORIZING, BUT NOT DIRECTING,
THE PAYMENT OF CERTAIN PREPETITION CLAIMS OF LIEN
CLAIMANTS AND 503(b)(9) CLAIMANTS AND (II) GRANTING RELATED RELIEF**

Upon the Motion[2] of the above-captioned debtors and debtors in possession (collectively,

the "Debtors"), for entry of this Interim Order pursuant to Bankruptcy Code Sections 105(a),

363(b), 503(b)(9), 1107(a), and 1108, Bankruptcy Rule 6004, and Local Rule 9013-1(m):

(i) authorizing, but not directing, the Debtors to pay the Lien Claims in an amount not to exceed

the Final Cap of $338,000, absent further order of the Court, and the 503(b)(9) Claims;

(ii) authorizing Financial Institutions to receive, process, honor, and pay any and all checks and

transfer requests evidencing amounts authorized by this Final Order whether presented before or

after the Petition Date; and (iii) granting related relief, all as further described in the Motion; and

this Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from

the United States District Court for the District of Delaware, dated as of February 29, 2012; and

consideration of the Motion and the relief requested therein being a core proceeding in

accordance with 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 2001 Bryan Street, Suite 1550, Dallas, Texas 75201.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; and upon the record of any hearing being held to consider the relief requested in the Motion; and upon the First Day Declaration and all proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED:**

1.     The Motion is granted to the extent provided herein.

2.     Except as otherwise provided herein, the Debtors are authorized, but not directed, to pay directly, or indirectly through the Shipping Vendors, the Lien Claims in an amount not to exceed the Final Cap of $338,000 in the aggregate on final basis, absent further order of this Court, and the 503(b)(9) Claims in full.

3.     The Debtors are authorized, but not directed, to issue postpetition checks or to affect postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Chapter 11 Cases with respect to prepetition amounts authorized to be paid herein.

4.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

5.     Subject to the Cash Management Order, the banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor and pay all such checks and

electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Final Order.

6.      Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Final Order shall constitute, nor is it intended to constitute:  (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code Section 365; (iii) an implication or admission that any particular claim is of a type specified or defined in the Motion; (iv) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or other applicable law; or (v) a concession by the Debtors or any other part-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of any such liens; (vi) a concession that any payment made pursuant to the Court's order is valid of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

7.      Notwithstanding anything to the contrary in this Order, (i) payments made by the Debtors pursuant to the authority granted in this Order must be in compliance with, and shall be subject to, the requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the "DIP Financing Agreements") and the terms and conditions of the interim and final orders, as applicable, approving the DIP Financing Agreements and governing the Debtors' and the terms and conditions of the interim and final orders, as applicable, approving the DIP Financing Agreements and governing the Debtors' use of cash collateral (in either case, the "DIP Financing Order"), including, without limitation, that such expenditures must comply with the

DIP Budget under, and as defined in, the DIP Financing Agreements, (ii) to the extent there is any inconsistency between the terms of the DIP Financing Order and any action taken or proposed to be taken hereunder, the terms of the DIP Financing Order shall control, and (iii) neither the entry of this Order nor any prepetition or postpetition agent's or lender's failure to object to the entry of this Order is intended, or shall be construed, as a consent to or waiver of any objection to any payment or expenditure under this Order or otherwise in excess of the amount authorized under the DIP Financing Agreement and the DIP Budget.

8.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, this Final Order shall be immediately effective and enforceable upon its entry.

9.      To the extent that the Motion or the Interim Order is inconsistent with this Final Order, the terms of this Final Order shall govern.

10.    The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Final Order.


Dated: _____, 2019
          Wilmington, Delaware

_____
United States Bankruptcy Judge