## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRED'S, INC., *et al.*,[1] | Case No. 19-11984 (CSS) |
| Debtors. | Joint Administration Requested |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND
### FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO
### (A) MAINTAIN AND ADMINISTER PREPETITION CUSTOMER
### PROGRAMS, PROMOTIONS, AND PRACTICES AND (B) PAY AND HONOR
### RELATED PREPETITION OBLIGATIONS AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") in these Chapter 11 cases ("Chapter 11 Cases") respectfully state as follows in support of this motion (the "Motion"):

### RELIEF REQUESTED

1.      The Debtors submit this Motion pursuant to sections 105(a), 363, and 507(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") requesting entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** and **Exhibit B** (respectively the "Interim Order" and the "Final Order"), (a) authorizing the Debtors to (i) maintain and administer the Customer Programs (as defined below), and (ii) pay and honor related prepetition obligations, and (b) granting related relief.  Additionally, the Debtors request

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 2001 Bryan Street, Suite 1550, Dallas, TX 75201.

that the Court schedule a final hearing within approximately twenty-five days of the commencement of these Chapter 11 Cases to consider entry of the Final Order

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C § 157(b)(2).  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363, and 507(a), Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m).

## BACKGROUND

A.      <u>General Background</u>.

5.      On the date hereof (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.  No committees have been appointed or designated.

6.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' bankruptcy petitions are set forth in

2

greater detail in the *Declaration of Mark A. Renzi, Chief Restructuring Officer of Fred's, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  This Motion incorporates by reference the facts set forth in the First Day Declaration as if fully set forth herein.  Additional facts specific to this Motion are set forth below.

### B.    The Customer Programs.

7.    The Debtors' business depends upon the loyalty of their customers.  To maximize customer loyalty, the Debtors have maintained and followed, in the ordinary course of business, certain practices and programs (collectively, the "Customer Programs") to reward and provide incentives to existing customers and to attract new customers to the Debtors' stores.  The Debtors' believe that continuing the Customer Programs and satisfy prepetition obligations in connection therewith is necessary to preserve the Debtors' relationships with their customers and goodwill, each for the benefit of the Debtors' estates and their reorganization efforts.  The following table contains descriptions of each of the Customer Programs and the related relief sought by this Motion.

| Customer Program | Description | Relief Requested |
|---|---|---|
| **Fred's Rewards Club Loyalty Program** | The Debtors maintain a customer rewards program, the Fred's Rewards Club Loyalty Program (the "Rewards Program").  As of the Petition Date, the Rewards Program comprises approximately 1,230,218 partially enrolled members (customers who have signed up for the Rewards Program solely by providing their phone numbers to the Debtors) and 444,564 fully enrolled members (customers who have signed up for the Rewards Program by providing their phone numbers to the Debtors and creating an account on the Debtors' website).  Members of the Rewards Program (i) earn cashback on all eligible purchases at a rate of 3%, which cashback can only be used on purchases at the Debtors' stores and (ii) receive | By the Motion, the Debtors seek authorization to honor all existing loyalty rewards under the program, however, the Debtors will not allow any new customers to sign up for the program. |

| Customer Program | Description | Relief Requested |
|---|---|---|
| | personalized manufacturer discounts and Debtor-specific discounts and promotions based on the particular member's purchase history. | |
| **Layaway Program** | The Debtors offer a layaway program at certain of their stores that allows a customer to pay for certain products,[2] which individually cost at least $10 with a purchase of more than $50, over a period of 90 days (the "<u>Layaway Program</u>"). Under the Layaway Program, a customer (i) executes a contract with the Debtors, (ii) provides a deposit in the amount of the greater of (a) $10 or (b) 10% of the purchase price, and (iii) makes a payment towards the purchase price at least once every 30 days. A customer who misses required payments or wants to cancel the layaway purchase can receive a total refund of his or her payments, subject to a $10 cancellation fee. | The Debtors will discontinue their layaway program as of the Petition Date; provided, however, the Debtors will honor the amounts already paid by customers pursuant to their layaway contracts and comply with any refund and cancellation requests initiated by any customer. |
| **State Lottery Tickets**[3] | The Debtors' stores in 8 states sell lottery tickets (the "<u>Lottery Tickets</u>"). In the ordinary course of their business, the Debtors "cash out" customers' winning Lottery Tickets in amounts no greater than $600. In turn, the Debtors have a bank account associated with each state's lottery and are reimbursed by the applicable states for paying out winning Lottery Tickets through deposits into such accounts. | By this Motion, the Debtors seek authorization to (i) "cash out" any Lottery Tickets purchased prepetition and presented postpetition for payment at their stores, up to $600 and (ii) continue selling and cashing out the Lottery Tickets in the ordinary course of business on a postpetition basis. |
| **Gift Card Program** | The Debtors maintain a gift card program (the "<u>Gift Card Program</u>") pursuant to which their customers can purchase prepaid, non-expiring gift cards (the "<u>Gift Cards</u>") in any denomination for use in the Debtors' stores. The Debtors sell the Gift Cards exclusively at their stores. For the Gift Cards that have not been used within 12 months of the date of purchase, there is a $1.50 per month fee. As of August 3, 2019, the Debtors estimate that the aggregate amount outstanding for issued gift cards is approximately $291,604. | By this Motion, the Debtors seek authorization, in a manner consistent with past practices, to honor all outstanding obligations under the Gift Card Program; provided, however, the Debtors will not issue any new gift cards as of the Petition Date. |

---

[2] Consumable items, lottery tickets, gift cards, prepaid cards, prescriptions, and tobacco are excluded from the Layaway Program.

[3] The Debtors also receive benefits from selling the Lottery Tickets. Certain of the states that sponsor the Lottery Tickets pay the Debtors a commission on (a) each Lottery Ticket sold at the Debtors' stores and (b) each winning Lottery Ticket sold at the Debtors' stores.

5008980v6

## BASIS FOR RELIEF REQUESTED

A.    **The Court Should Authorize the Debtors To Honor
Their Prepetition Obligations Under the Customer Programs.**

1.    **Payment of the Debtors' Obligations Under the Customer Programs
Is Appropriate Under Bankruptcy Code Sections 363 and 105(a).**

8.    Section 363 of the Bankruptcy Code empowers the Court to authorize a chapter 11 debtor to expend funds outside of the ordinary course of business.  11 U.S.C. § 363. Section 363(b) provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  To obtain approval for the use of estate assets outside the ordinary course of business, a debtor must articulate a valid business justification for the requested use.  *See In re Filene's Basement, LLC*, No. 11-13511, 2014 WL 1713416, *12 (Bankr. D. Del. Apr. 29, 2014) (noting that under Bankruptcy Code section 363(b), "'[w]here the debtor articulates a reasonable basis for its business decisions . . . courts will generally not entertain objections to the debtor's conduct'") (quoting *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)); *In re Landsource Cmtys. Dev. LLC*, No. 08-11111, 2009 WL 4874670, ¶ 15 (Bankr. D. Del. Nov. 25, 2009) ("Where valid business justifications exist, a presumption exists 'that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'") (quoting *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1990)); *see also In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (requiring that debtor show a "sound business purpose" to justify its actions under section 363 of Bankruptcy Code).  Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. at 616 (citation omitted); *see also In re Tower*

*Air, Inc.*, 416 F.3d 229, 238 n.13 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

9. Additionally, Bankruptcy Code section 105 empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The "doctrine of necessity" functions in a Chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.

10. The United States Court of Appeals for the Third Circuit has recognized the applicability of the doctrine of necessity with respect to the payment of prepetition claims when such payment was essential to the continued operation of the debtor. *In re Lehigh & N. E. R. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating a court may authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824-26 (D. Del. 1999) (noting that the Third Circuit permits debtors to pay prepetition claims that are essential to the continued operation of business).

11. Bankruptcy Code section 105(a) also authorizes the bankruptcy court to grant such relief as is necessary for a chapter 11 debtor to carry out its fiduciary duties under Bankruptcy Code section 1107(a). Bankruptcy Code section 1107(a) "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "'protect and preserve the estate, including an operating business' going-concern value,'" on behalf of the debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr.

5008980v6

S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

12.     Payment of the Debtors' obligations under the retained Customer Programs serves the sound business purpose of protecting the Debtors' relationship with their customers.  The filing of these Chapter 11 Cases has the potential to adversely affect customers' perception of the Debtors and customer willingness to shop at the Debtors' stores.  Maximizing the value of the Debtors' assets depends on continued customer loyalty during this time.  The Debtors believe that honoring the Customer Programs will prevent any potential alienation of customers.  In contrast, the Debtors' determined to end other programs that they believed were not value maximizing: return and exchange program, coupon and discount program, and price matching program.

**2.     Customers' Prepetition Claims Under the Gift Card Program and the Layaway Program Are Entitled To Priority Treatment.**

13.     Pursuant to Bankruptcy Code section 507(a)(7), up to $3,025 in claims arising from a consumer's prepetition deposit of money in connection with the purchase of property "for personal, family or household use" to the extent that such property was not delivered, have priority over other general unsecured claims.  11 U.S.C. § 507(a)(7).  This provision was added to the Bankruptcy Code in 1984 to "protect consumers who had deposited money for goods and services with a business that subsequently filed for bankruptcy" and has since been adjusted to increase the priority amount.  *In re River Vill. Assocs.*, 161 B.R. 127, 133 (Bankr. E.D. Pa. 1993), *aff'd*, 181 B.R. 795 (E.D. Pa. 1995).  The Debtors submit that the obligations that arise in connection with the Gift Card Program and the Layaway Program are priority claims under Bankruptcy Code section 507(a)(7).  Accordingly, the satisfaction of prepetition claims under

these Customer Programs on a postpetition basis will not enhance the priority of the customers or

prejudice the rights of general unsecured creditors or other parties in interest.

      **B.**      **The Court Should Authorize the Debtors To**
                **Continue the Customer Programs.**[4]

14.    Continuing to administer the Customer Programs, including renewing, modifying,

terminating, or replacing the retained Customer Programs in the ordinary course and consistent

with prepetition practices, is in the best interests of the Debtors' business and estates.

Continuing the Customer Programs will help the Debtors preserve their valuable customer

relationships and goodwill during the pendency of the Debtors' orderly liquidation, which will

inure to the benefit of the Debtors' creditors and estates through an effective chapter 11 process.

15.    Moreover, the Customer Programs are central to the Debtors' marketing strategy

for attracting new customers.  Failure to continue the Customer Programs and offer even basic

programs such as the Return and Exchange Policy will place the Debtors at a significant

competitive disadvantage in the marketplace and magnify any negative effect of customer

uncertainty that may arise from the commencement of these Chapter 11 Cases.  Such uncertainty

could erode the Debtors' hard-earned goodwill and customer loyalty, which, in turn, could

adversely impact the Debtors' ability to maximize value for all stakeholders.

16.    Accordingly, the Debtors submit that maintenance of the Customer Programs and

the ability to satisfy all obligations thereunder will maximize the value of their estates and

therefore, is in the best interests of the Debtors and their creditors.

---

[4] The Debtors believe that, pursuant to Bankruptcy Code section 363(c) and other governing statutory and case law, they possess the authority to continue the Customer Programs without an express grant of authority from the Court but seek such approval out of an abundance of caution to provide further assurances to their customers that these programs will continue to be available if offered by the Debtors.

**C.    The Court Should Authorize Banks and Other Financial Institutions To Honor Checks and Electronic Funds Transfers.**

17.    To facilitate the implementation of the requested relief, the Debtors further request that the Court authorize all banks to receive, process, honor, and pay any and all checks drawn or electronic fund transfers from the Debtors' accounts whether such checks or transfer requests were presented before or after the Petition Date, to the extent that such checks or electronic fund transfers are expressly identified by the Debtors as relating directly to the authorized payments under this Motion.    The Debtors also seek authority to issue new postpetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the entry of an order for relief.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

18.    For a debtor to obtain relief to make payments within 21 days of the Petition Date, it must establish that making such payments satisfies the requirements mandated by Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid "immediate and irreparable harm."

19.    As described above, immediate and irreparable harm to the Debtors' estates would result if the relief requested herein is not granted.    Eliminating the Customer Programs described herein would erode the Debtors' customer base and threaten to derail the Debtors' reorganization efforts.    Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

## WAIVER OF NOTICE REQUIREMENTS

20.    Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable.

5008980v6

## **DEBTORS' RESERVATION OF RIGHTS**

21.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## **NOTICE**

22.     Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware, (b) the Debtors' thirty largest unsecured creditors on a consolidated basis, (c) counsel to the DIP Agent, (d) the United States Attorney's Office for the District of Delaware, (e) the Internal Revenue Service, (f) the Securities and Exchange Commission, (g) any other party required to be provided notice under Local Rule 9013-1(m); and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.  Due to the nature of the relief requested herein, the Debtors submit that no other or further notice need be provided.

*[Remainder of page intentionally left blank.]*

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter interim and final orders substantially in the form annexed hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested in the Motion, and (b) grant such other and further relief as may be just and proper.

Dated: September 9, 2019
      Wilmington, Delaware

*/s/ Derek C. Abbott*

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Matthew B. Harvey (No. 5186)
Joseph C. Barsalona II (No. 6102)
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email:  dabbott@mnat.com
      aremming@mnat.com
      mharvey@mnat.com
      jbarsalona@mnat.com

- and -

Adam L. Shiff (*pro hac vice* motion pending)
Robert M. Novick (*pro hac vice* motion pending)
Matthew B. Stein (*pro hac vice* motion pending)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800
Email:  AShiff@kasowitz.com
      RNovick@kasowitz.com
      MStein@kasowitz.com

**PROPOSED COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**

5008980v6

## **Exhibit A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FRED'S, INC., *et al.*,[1] | ) | Case No. 19-_____ (   ) |
|  | ) |  |
| Debtors. | ) | Joint Administration Requested |
|  | ) |  |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO
(A) MAINTAIN AND ADMINISTER PREPETITION CUSTOMER
PROGRAMS, PROMOTIONS, AND PRACTICES AND (B) PAY AND HONOR
RELATED PREPETITION OBLIGATIONS AND (II) GRANTING RELATED RELIEF**

Upon the Motion[2] of the above-captioned debtors and debtors in possession (collectively,

the "Debtors"), for entry of this interim order (the "Interim Order") pursuant to Bankruptcy Code

sections 105(a), 363, and 507(a), Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m)

(i) authorizing the Debtors to (a) maintain and administer prepetition customer programs,

promotions, and practices, and (b) pay and honor related prepetition obligations, and (ii) granting

related relief, all as further described in the Motion; and this Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware, dated as of February 29, 2012; and consideration of the Motion and the

relief requested therein being a core proceeding in accordance with 28 U.S.C. § 157(b)(2); and

venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper

notice of the Motion being adequate and appropriate under the particular circumstances; and

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 2001 Bryan Street, Suite 1550, Dallas, Texas 75201.

[2] All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

upon the record and the statements in support of the relief requested at a hearing before this Court (the "Hearing") being held to consider the relief requested in the Motion; and upon the First Day Declaration and all proceedings had before this Court; and this Court having found and determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The Debtors are authorized to maintain and administer the Customer Programs and honor any related prepetition obligations in the ordinary course of business and consistent with past practice; provided, however, that the Debtors shall not replace, modify, or terminate any Customer Program without the consent of the DIP Secured Parties.

3.      The requirements set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

4.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (i) an admission as to the validity of any prepetition claim against a Debtor entity; (ii) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (iii) a promise or requirement to pay any prepetition claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (v) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (vi) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

5.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, this Interim Order shall be immediately effective and enforceable upon its entry.

6.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

7.      Subject to the Cash Management Order, the banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized, but not directed, to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Interim Order.

8.      Notwithstanding anything to the contrary in this Order, (i) payments made by the Debtors pursuant to the authority granted in this Order must be in compliance with, and shall be subject to, the requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the "DIP Financing Agreements") and the terms and conditions of the interim and final orders, as applicable, approving the DIP Financing Agreements and governing the Debtors' use of cash collateral (in either case, the "DIP Financing Order"), including, without limitation, that such expenditures must comply with the DIP Budget under, and as defined in, the DIP Financing Agreements, (ii) to the extent there is any inconsistency between the terms of the DIP Financing Order and any action taken or proposed to be taken hereunder, the terms of the DIP Financing Order shall control, and (iii) neither the entry of this Order nor any pre-petition or post-petition agent's or lender's failure to object to the entry of this Order is intended, or shall be construed, as a consent to or waiver of any objection to any payment or expenditure under this

3

Order or otherwise in excess of the amount authorized under the DIP Financing Agreement and the DIP Budget.

9.     The deadline by which objections to the Motion and the Final Order must be filed is _____, 2019 at 4:00 p.m. (ET).  Objections must be served on: (a) proposed counsel to the Debtors, (i) Kasowitz Benson Torres LLP, 1633 Broadway, New York, New York 10019, Attn: Adam L. Shiff, Esq. (AShiff@kasowitz.com), Robert M. Novick (RNovick@kasowitz.com), and Matthew B. Stein (MStein@kasowitz.com) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Floor, Wilmington, Delaware 19899, Attn: Derek C. Abbott (DAbbot@mnat.com), and Andrew R. Remming (ARemming@mnat.com); (b) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street Suite 2207 Lockbox 35, Wilmington, Delaware 19801; (c) counsel to the DIP Agent, (i) Parker, Hudson, Rainer & Dobbs LLP, 303 Peachtree Street N.E., Suite 3600, Atlanta, Georgia 30308, Attn: C. Edward Dobbs, Esq. (edobbs@phrd.com) and Eric W. Anderson, Esq. (eanderson@phrd.com) and (ii) Richards Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: John H. Knight, Esq. (knight@rlf.com); and (d) counsel to any statutory committee appointed in these Chapter 11 Cases.

10.     A final hearing, if required, on the Motion will be held on _____, 2019 at ___ (ET). If no objections are filed to the Motion, this Court may enter the Final Order without further notice or hearing.

11.    The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Interim Order.

Dated: _____, 2019
          Wilmington, Delaware

_____
United States Bankruptcy Judge

**Exhibit A**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRED'S, INC., *et al,*.[1] | Case No. 19-_____ (   ) |
| Debtors. | Joint Administration Requested |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN AND ADMINISTER PREPETITION CUSTOMER PROGRAMS, PROMOTIONS, AND PRACTICES AND (B) PAY AND HONOR RELATED PREPETITION OBLIGATIONS AND (II) GRANTING RELATED RELIEF

Upon the Motion[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of this final order (the "Final Order") pursuant to Bankruptcy Code sections 105(a), 363, and 507(a), Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m) (i) authorizing the Debtors to (a) maintain and administer prepetition customer programs, promotions, and practices, and (b) pay and honor related prepetition obligations, and (ii) granting related relief, all as further described in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding in accordance with 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; upon the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 2001 Bryan Street, Suite 1550, Dallas, Texas 75201.

[2] All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

record and the statements in support of the relief requested at a hearing before this Court (the "Hearing") being held to consider the relief requested in the Motion; and upon the First Day Declaration and all proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.      The Motion is granted to the extent provided herein.

2.      The Debtors are authorized to maintain and administer the Customer Programs and honor any related prepetition obligations in the ordinary course of business and consistent with past practice; provided, however, that the Debtors shall not replace, modify, or terminate any Customer Program without the consent of the DIP Secured Parties.

3.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (i) an admission as to the validity of any prepetition claim against a Debtor entity; (ii) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (iii) a promise or requirement to pay any prepetition claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (v) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (vi) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

4.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, this Final Order shall be immediately effective and enforceable upon its entry.

5.      To the extent that the Motion is inconsistent with this Final Order, the terms of this Final Order shall govern.

6.      Subject to the Cash Management Order, the banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized, but not directed, to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Final Order.

7.      Notwithstanding anything to the contrary in this Order, (i) payments made by the Debtors pursuant to the authority granted in this Order must be in compliance with, and shall be subject to, the requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the "DIP Financing Agreements") and the terms and conditions of the interim and final orders, as applicable, approving the DIP Financing Agreements and governing the Debtors' use of cash collateral (in either case, the "DIP Financing Order"), including, without limitation, that such expenditures must comply with the DIP Budget under, and as defined in, the DIP Financing Agreements, (ii) to the extent there is any inconsistency between the terms of the DIP Financing Order and any action taken or proposed to be taken hereunder, the terms of the DIP Financing Order shall control, and (iii) neither the entry of this Order nor any pre-petition or post-petition agent's or lender's failure to object to the entry of this Order is intended, or shall be construed, as a consent to or waiver of any objection to any payment or expenditure under this

3

Order or otherwise in excess of the amount authorized under the DIP Financing Agreement and the DIP Budget.

8.      The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Final Order.

Dated: _____, 2019
          Wilmington, Delaware

                                                            _____
                                                            United States Bankruptcy Judge