**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FRED'S, INC., *et al.*,[1] | ) Case No. 19-19-11984 (CSS) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

**DEBTORS' MOTION FOR APPROVAL OF PROCEDURES**
**FOR THE SALE OF *DE MINIMIS* PHARMACY ASSETS FREE AND**
**CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases") respectfully state as follows in support of this motion (the "Motion"):

**RELIEF REQUESTED**

1.     By this Motion, the Debtors seek authorization to establish certain procedures (the "Sale Procedures") pursuant to (a) sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6004 and 2002(a)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to sell free and clear of all liens, claims, interests, and encumbrances certain *de minimis* or otherwise expendable Pharmacy Assets (defined below) having a Sale Price (defined below) of $1,500,000 or less.   While the Debtors believe such sales are in the ordinary course of business, out of an abundance of caution the Debtors seek the relief herein.

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 2001 Bryan Street, Suite 1550, Dallas, TX 75201.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and other legal predicates for the relief sought herein are Bankruptcy Code sections 105 and 363, Bankruptcy Rules 2002(a)(2) and 6004, and Local Rule 6004-1.

## BACKGROUND

A.      **General Background.**

4.      On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors have requested procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases, and no committees have been appointed or designated.

5.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' bankruptcy petitions are set forth in

greater detail in the *Declaration of Mark A. Renzi, Chief Restructuring Officer of Fred's, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  This Motion incorporates by reference the facts set forth in the First Day Declaration as if fully set forth herein.  Additional facts specific to this Motion are set forth below.

**B.**     **The Pharmacy Assets.**

6.     Throughout the past year, the Debtors have worked closely with their advisors to stabilize their business and improve their financial condition.  As part of this process, the Debtors' sought to enhance their liquidity through a complete divestment of their legacy pharmacy business.  To date, the Debtors' months-long marketing process has been quite successful, having monetized a substantial number of pharmacies and bolstered its liquidity position.  The Debtors remain engaged in further monetizing their pharmacy holdings.

7.     The Debtors' pharmacy holdings consist of the stock of prescription pharmaceutical inventory located in the remaining pharmacies in each of the Debtors' stores (the "Pharmacy Inventory") and/or the prescription files and records, pharmacy customer lists and patient profiles (the "Pharmacy Files" and, together with the Pharmacy Inventory, the "Pharmacy Assets").  The Debtors' remaining Pharmacy Assets are mainly housed at locations where front-store operations have already closed or are in the process of closing.

8.     As a result of the Debtors' aggressive marketing of their Pharmacy Assets, the Debtors sold most of their Pharmacy Assets prior to the Petition Date.  Beginning in the middle of August 2019, the Debtors commenced a second concerted effort to monetize their Pharmacy Assets at the remaining 106 locations.  As a result, the Debtors currently have 62 transactions that can close in the near term:  executed contracts for 3 locations, signed letters of intent for 10

locations, and accepted bids at 49 locations (individually, a "Contracted Asset" and together, the "Contracted Assets"). Closing each of the transactions for the Contracted Assets promptly is critical to the Debtors' plan to preserve the value of their assets for the benefit of all parties in interest in these cases.

9. Despite the potentially large aggregate value that the Debtors will generate by closing these asset sales, the Debtors' remaining Pharmacy Assets, on an individual basis, each have a *de minimis* value. Indeed, the Debtors' estimate that the average value of the remaining Pharmacy Assets is less than $450,000 per location, and that Pharmacy Assets at substantially all remaining locations do not exceed $1,000,000 per location.

10. Given their current liquidity positon and existing milestones in the DIP Facility, the Debtors are under pressure to monetize the Pharmacy Assets as quickly as possible. Moreover, specifically with respect to these assets, time is of the essence as their value diminishes by the day. Specifically, an extended lag time between the commencement of these Chapter 11 Cases and the sale of the Pharmacy Assets increases the risk that pharmacy customers migrate, significantly reducing the value that the Debtors can realize from script and related sales. Indeed, in the recent ShopKo case (*In re Specialty Retail Shops Holding Corp.*, Case No. 19-80064, Bankr. D. Nebraska (Jan. 16, 2019)), where the debtors sought to sell their pharmacy assets via an expedited auction process, the value of the debtors' pharmacy assets plummeted postpetition because they were not sold quickly enough. Here, the Debtors' aggressive prepetition efforts to sell their Pharmacy Assets and the relief sought herein are an attempt to avoid that same fate.

C.    **The Sales Procedures**.

11.    The proposed Sales Procedures will allow the Debtors to maximize the value of the Pharmacy Assets to the Debtors' estates, reduce the administrative costs incurred in connection with effectuating each sale, and increase the speed at which the Debtors are able to close such sales.

12.    Specifically, the Debtors seek authority to implement the following Sales Procedures as an alternative to those set forth in Local Rule 6004-1, to the extent applicable, and submit that the requirements of such rule, if applicable, be waived with respect to any sale of Pharmacy Assets undertaken by the Debtors pursuant to the Procedures:

- Sale Price Less Than or Equal to $500,000. If the Sale Price[2] of Pharmacy Assets at a single location is less than or equal to $500,000 or is a Contracted Asset and the Agent under the Debtors' postpetition financing facility (the "DIP Agent") has consented to such proposed sale in writing, no notice or hearing shall be required.

- Sale Price Greater than $500,000 and Less than or Equal to $1,500,000. If the Sale Price for the sale of Pharmacy Assets at a single location is greater than $500,000 and less than or equal to $1,500,000, the following Procedures shall apply:

  i.  Only if the DIP Agent has consented to such proposed sale in writing, the Debtors shall file a notice with the Court, substantially in the form attached to the Motion as Exhibit B (the "Sale Notice"), specifying (i) the Pharmacy Assets to be sold, (ii) the identity of the purchaser, (iii) any commissions to be paid to third parties (such as brokers), and (iv) the sale price. The Debtors shall serve the Sale Notice only on the following parties: (b) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street Suite 2207 Lockbox 35, Wilmington, Delaware 19801; (c) counsel to the DIP Agent, (i) Parker, Hudson, Rainer & Dobbs LLP, 303 Peachtree Street N.E., Suite 3600, Atlanta, Georgia 30308, Attn: C. Edward Dobbs, Esq. (edobbs@phrd.com) and Eric W. Anderson, Esq. (eanderson@phrd.com) and (ii) Richards Layton & Finger, P.A., One Rodney Square, 920 North

---

[2] "Sale Price" shall mean the total net cash consideration and fair market value of non-cash consideration estimated to be received by the Debtors, plus the amount of any liabilities to be assumed by the purchaser (to the extent quantifiable or reasonably estimable), less the amount of expenses to be incurred in connection with the sale, offsets, or other deductions (to the extent quantifiable or reasonably estimable).

King Street, Wilmington, Delaware 19801, Attn: John H. Knight, Esq. (knight@rlf.com); (d) counsel to any statutory committee appointed in these Chapter 11 Cases; and (e) any person or entity with a particularized interest in the Pharmacy Assets to be sold, including any known creditor asserting a lien, claim, interest, or encumbrance on such Pharmacy Assets (collectively, the "Notice Parties").

ii. Parties will have five days after the service of a Sale Notice (the "Sale Objection Deadline") to object (each, an "Objection") to a proposed sale of Pharmacy Assets. After the expiration of the Sale Objection Deadline, the Debtors may immediately sell the Pharmacy Assets listed in the Sale Notice and take any actions and execute any agreements or other documentation that are necessary or desirable to close the transaction and obtain the sale proceeds.

iii. If any party in interest wishes to object to a proposed sale of Pharmacy Assets, such party must (i) file a written Objection with the Court on or before the Sale Objection Deadline and (ii) serve the Objection on the Debtors and each of the other Notice Parties so that it is actually received by such parties on or before the Sale Objection Deadline. Any such Objection shall identify, with specificity, the basis for such Objection. If an Objection is timely received and filed and cannot be resolved by the Debtors and the objecting party, the Pharmacy Assets that are the subject of the Objection will not be sold except upon order of the Court; *provided*, *however*, that any Pharmacy Assets set forth in the Sale Notice that is not the subject of an Objection may be immediately sold in accordance with paragraph (ii).

- Sale Price Greater than $1,500,000. If the Sale Price for the sale of Pharmacy Assets at a single location is greater than $1,500,000, the Debtors shall file a motion with the Court requesting approval of the sale.[3]

13. The Debtors further seek authority to compensate any broker engaged by the Debtors in connection with any sale of Pharmacy Assets; *provided, however*, that if an Objection to the payment of any broker's fees is timely received and filed by the Sale Objection Deadline, then the portion of such broker's fees to which the Objection is directed shall not be paid until such Objection is consensually resolved or until the Court approves such payment.

---

[3] If the Sale Price for the Pharmacy Assets at a single location is less than $1,500,000 but the DIP Agent has withheld its written consent to the proposed sale, the Debtors reserve the right to seek Court approval of the sale by motion.

**BASIS FOR RELIEF**

14.     Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).

15.     As an initial matter, the Debtors determined in the beginning of 2019 to liquidate its Pharmacy Assets and have successfully engaged in such efforts.  The Debtors submit that the continuation of such sale efforts is in the ordinary course and outside the requirements of section 363 of the Bankruptcy Code.  However, to the extent that such sale efforts are not ordinary course transactions, the Debtors submit that the requirements of section 363 of the Bankruptcy Code are satisfied.

**A.  Approval of the Sale Procedures is in the Best Interest of the Debtors, Their Estates, and All Parties in Interest.**

16.     Courts have approved the authorization of a sale of a debtor's assets under section 363 of the Bankruptcy Code if such sale is based upon the sound business judgment of the debtor.  *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

17.     Courts typically consider the following factors in determining whether a proposed sale satisfies this standard:   (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del.

1991)).  Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. at 656 (quoting *Van Gorkom*, 488 A.2d at 872).

### 1.    A Sound Business Justification For the Sale Procedures Exists.

18.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders.  *See, e.g., In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1063; *Four B. Corp. v. Food Barn Stores, Inc.* (*In re Food Barn Stores, Inc.*), 107 F.3d 558, 566 n.16 (8th Cir. 1997) (recognizing the paramount goal of any proposed sale of property of estate is to maximize value).

19.    Courts emphasize that the business judgment rule is not an onerous standard and may be satisfied "as long as the proposed action *appears* to enhance the debtor's estate." *Crystalin, L.L.C. v. Selma Props. Inc.* (*In re Crystalin, L.L.C.*), 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (quoting *In re Food Barn Stores, Inc.*, 107 F.3d at 564-65 (emphasis in original, internal alterations and quotations omitted)).  Courts require only that the debtors "show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153 (citations omitted); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729, 2003 WL 22316543, at *31 (Bankr. S.D.N.Y. Mar. 4, 2003); *In re Lionel Corp.*, 722 F.2d at 1071.

20.    Further, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d

Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task"); *In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the business judgment standard is "not a difficult standard to satisfy").   Under the business judgment rule, "management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (citing *In re United Artists Theatre Co.*, 315 F.3d 217, 233 (3d Cir. 2003)); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Def. Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992)); *In re Food Barn Stores, Inc.*, 107 F.3d at 567 n.16 (citing *Richmond Leasing Co.*, 762 F.2d at 1309) ("Where the [debtor's] request is not manifestly unreasonable or made in bad faith, the court should normally grant approval 'as long as the proposed action appears to enhance the debtor's estate.'").

21.     The expected value to be generated from each individual location is relatively small.   Relief similar that the relief requested herein has been granted by courts in this jurisdiction for complex chapter 11 cases where the sale value represents a small fraction of the debtors' estates.   *See, e.g.*, *In re Nuverra Envtl. Solutions, Inc.*, Case No. 17-10949 (KJC) (Bankr. D. Del. June 5, 2017) (approving *de minimis* sale procedures for sale of assets up to $2,000,000); *In re Paragon Offshore PLC*, Case No. 16-10386 (CSS) (Bankr. D. Del. April 28, 2017) (approving *de minimis* sale procedures for sale of assets up to $1,500,000); *In re Chaparral Energy, Inc.*, Case No. 16-11144 (LSS) (Bankr. D. Del. Aug. 15, 2016) (approving *de*

*minimis* sale procedures for sale of assets up to $4,000,000); *In re Triangle USE Petroleum Corp.*, Case No. 16-11566 (MFW) (Bankr. D. Del. Aug. 3, 2016) (approving *de minimis* sale procedures for sale of assets up to $1,500,000); *In re UCI International, LLC*, Case No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016) (approving *de minimis* sale procedures for sale of assets up to $1,000,000); *In re Samson Res. Corp.*, Case No. 15-11934 (CSS) (approving *de minimis* sale procedures for sale of assets up to $1,500,000).

22.     The Procedures will allow the Debtors to expedite the flow of cash into the estates, which will eliminate the need to prepare and prosecute motions and to obtain express Court approval of every sale of assets.  In addition, the Procedures will protect the Debtors against the declining value of the Pharmacy Assets, save the Debtors potentially significant interim storage costs, eliminate certain administrative costs, reduce professional fees, and expedite the sale of Pharmacy Assets for the benefit of the Debtors' estates and their creditors. The Procedures constitute the most efficient and cost-effective way to capitalize on the value of the Pharmacy Assets, while protecting the best interests of the Debtors, their estates, and their creditors.

23.     Finally, compensating brokers engaged by the Debtors in connection with the sale of Pharmacy Assets will promote maximizing value for the Debtors' estates and, thus, is in the best interest of the Debtors' estates and their creditors.

24.     Accordingly, a strong business justification exists for the sale of Pharmacy Assets in accordance with the Sale Procedures.  An orderly but expeditious sale of Pharmacy Assets is critical to maximizing the value of the Debtors assets and recoveries for the Debtors' economic stakeholders.

25.     It would not be an efficient use of the Debtors' resources or the Court's time to seek Court approval each and every time the Debtors have an opportunity to sell Pharmacy Assets.  Accordingly, subject to the Sale Procedures, the Debtors request authorization to sell the Pharmacy Assets, including those currently under contract, without the need to obtain any further Court approval.  Additionally, given the Debtors' months-long and multi-phased marketing efforts for all of its Pharmacy Assets, including the Contracted Assets, it is unlikely that increased time and notice would generate additional proceeds.

### 2.   The Notice Component of the Sales Procedures is Reasonable and Appropriate.

26.     The Sale Procedures described above are reasonably calculated to provide all of the Debtors' significant creditors and all other parties in interest with adequate, timely notice of, among other things, any proposed sale of Pharmacy Assets.

### 3.   The Sales Procedures Will Produce, in Good Faith, Fair and Reasonable Sales Prices For the Pharmacy Assets.

27.     As set forth above, the Debtors believe that the proposed Sale Procedures will allow the Debtors to obtain fair and reasonable purchase prices for the Pharmacy Assets and to effectuate such transactions in an efficient and streamlined process—particularly with respect to the sale of Pharmacy Assets that are under contract and ready to close due to the Debtors' prepetition marketing efforts.  In doing so, the Sale Procedures provide an appropriate framework for the Debtors, in consultation with their significant creditors, to review, analyze, and compare all offers received to determine in good faith which of such offers (if any) are in the best interests of the Debtors' estates and their economic stakeholders.  The Procedures undoubtedly will serve the important objectives of obtaining not only a fair and reasonable purchase price for the Pharmacy Assets, but also the highest or otherwise best value for the Pharmacy Assets, which will inure to the benefit of all parties in interest in the Chapter 11 Cases.

**B.  The Pharmacy Assets Should Be Sold Free and Clear of**
**Liens, Claims, Interests, and Encumbrances.**

28.    In the interest of attracting the best offers, the Pharmacy Assets should be sold

free and clear of any and all liens, claims, interests, and other encumbrances, in accordance with

section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, and encumbrances

attaching to the proceeds of the applicable sale.  Section 363(f) of the Bankruptcy Code

authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if

any one of the following conditions is satisfied:

    i.    applicable non-bankruptcy law permits sale of such property free and clear
          of such interest;

    ii.   such entity consents;

    iii.  such interest is a lien and the price at which such property is to be sold is
          greater than the value of all liens on such property;

    iv.   such interest is in bona fide dispute; or

    v.    such entity could be compelled, in legal or equitable proceeding, to accept
          a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del.

2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five

conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.");

*Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988)

(same).

29.    The Debtors submit that the Sale Procedures satisfy section 363(f) of the

Bankruptcy Code.  Any holder of a lien, claim, interest, or encumbrance on any Pharmacy Assets

to be sold at a single location, with a Sale Price greater than $500,000 and less than or equal to

$1,500,000, will receive a Sale Notice and will have an opportunity to object to any sale in which

they claim an interest.  If a holder of a lien, claim, interest, or encumbrance receives a Sale

Notice and does not object within the prescribed time period, then such holder will be deemed to have consented to the proposed sale and the property may then be sold free and clear of the holder's interests pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, or encumbrances to be satisfied from the proceeds of the sale with such proceeds to be first applied to the Obligations and the Pre-Petition Lender Debt in accordance with the Post-Petition Credit Agreement (as "Obligations" and "Pre-Petition Lender Debt" are defined in the Post-Petition Credit Agreement) until all such Obligations and the Pre-Petition Lender Debt are satisfied in full, and thereafter to satisfy any junior liens, claims, interests, or encumbrances had on the Pharmacy Assets sold in the order of priority that existed prior to the Petition Date.

30.     In approving the sales of Pharmacy Assets free and clear of liens, claims, interests, or encumbrances, the Debtors request that the Court find that those who purchase Pharmacy Assets in accordance with the Procedures are entitled to the protections afforded by section 363(m) of the Bankruptcy Code.  This relief is appropriate in light of the opportunity for review and objection provided herein.

31.     Bankruptcy Rule 2002(a)(2) provides that, for cause shown, the Court may direct "another method of giving notice" of a proposed sale of property of the estate.  The Debtors submit that good cause has been shown for approval and implementation of the Sale Procedures as a fair and reasonable alternative to the notice procedures of Bankruptcy Rule 2002.

32.     Finally, section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.  The Debtors submit that implementation of the Sale Procedures is appropriate in the Chapter 11 Cases and within the Court's equitable powers under

section 105 of the Bankruptcy Code.  Similar procedures have been approved in other complex chapter 11 cases, as described above.

### THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

33.     For a debtor to obtain relief to make payments within twenty-one (21) days of the Petition Date, it must establish that making such payments satisfies the requirements mandated by Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid "immediate and irreparable harm."

34.     As described above, immediate and irreparable harm would result if the relief requested herein is not granted.  Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

### WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(H)

35.     The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to maximize the value of their assets and recoveries for their economic stakeholders.  Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

### NOTICE

36.     Notice of this Motion shall be given to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' thirty largest unsecured creditors on a consolidated basis; (c) counsel to the DIP Agent; (d) the United States Attorney's Office for the

14

District of Delaware; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) any party required to be provided notice under Local Rule 9013-1(m); and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service. A copy of this Motion and any order approving it will also be made available on the Debtors' case information website located at https://dm.epiq11.com/freds.  The Debtors respectfully submit that no further notice is required.

## **NO PREVIOUS REQUEST**

37.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.


*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the proposed order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: September 9, 2019
      Wilmington, Delaware

*/s/ Derek C. Abbott*

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Matthew B. Harvey (No. 5186)
Joseph C. Barsalona II (No. 6102)
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email:  dabbott@mnat.com
      aremming@mnat.com
      mharvey@mnat.com
      jbarsalona@mnat.com

- and -

Adam L. Shiff (*pro hac vice* motion pending)
Robert M. Novick (*pro hac vice* motion pending)
Matthew B. Stein (*pro hac vice* motion pending)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800
Email:  AShiff@kasowitz.com
      RNovick@kasowitz.com
      MStein@kasowitz.com

**PROPOSED COUNSEL FOR DEBTORS AND
DEBTORS IN POSSESSION**

**Exhibit A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRED'S, INC., *et al.*,[1] | ) | Case No. 19-_____ ( ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

**ORDER APPROVING PROCEDURES FOR THE SALE OF**
***DE MINIMIS* PHARMACY ASSETS FREE AND CLEAR OF**
**LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**

Upon the motion dated September 9, 2019 (the "Motion")[2] of the above-captioned

debtors and debtors in possession (collectively, the "Debtors"), for authorization to establish

procedures (the "Sale Procedures") pursuant to (i) sections 105(a) and 363 of the Bankruptcy

Code, Bankruptcy Rule 6004, and Local Rule 6004-1, for the sale of certain *de minimis* assets

arguably outside the ordinary course of the Debtors' businesses for a Sale Price of $1,500,000 or

less (the "Pharmacy Assets") free and clear of liens, claims, interests, as more fully described in

the Motion; and the Court having jurisdiction to consider the matters raised in the Motion

pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United*

*States District Court for the District of Delaware*, dated February 29, 2012; and the Court having

authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the

Motion and the requested relief being a core proceeding that the Court can determine pursuant to

28 U.S.C. § 157(b)(2); and due and proper notice of the Motion having been given under the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 2001 Bryan Street, Suite 1550, Dallas, TX 75201.

circumstances, and it appearing that no other or further notice need be provided; and the Court

having reviewed and considered the Motion; and the Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and the

Court having found that the relief requested in the Motion being in the best interests of the

Debtors, their creditors, their estates, and all other parties in interest; and upon all of the

proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefor,

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby granted as set forth herein.

2.      The Sale Procedures are hereby approved and may be implemented by the

Debtors in the Chapter 11 Cases.

3.      Local Rule 6004-1 is hereby waived with respect to any sale of Pharmacy Assets

undertaken pursuant to the Procedures.

4.      For purposes of the Procedures, the net benefit estimated to be realized by the

Debtors' estates shall constitute the "Sale Price."  The net benefit is the amount of cash

consideration or fair market value of non-cash consideration estimated to be received by the

Debtors, plus the amount of any liabilities to be assumed by the purchaser (to the extent

quantifiable or reasonably estimable), less expenses to be incurred in connection with the sale,

offsets, or other deductions (to the extent quantifiable or reasonably estimable).  The Sale Price

shall be determined without consideration as to whether the property for sale is free and clear of

all liens, claims, interests, and encumbrances.

---

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Motion.

5.        If the Sale Price of Pharmacy Assets at a single location is less than or equal to

$500,000 or is currently under contract, and the Agent under the Debtors' postpetition financing

facility (the "DIP Agent") has consented to such proposed sale in writing, the Debtors are hereby

authorized to sell such Pharmacy Assets without further notice to any party or hearing.

6.        If the Sale Price for the sale of Pharmacy Assets at a single location is greater than

$500,000 and less than or equal to $1,500,000, the following Procedures shall apply:

    i.        Only if the DIP Agent has consented to such proposed sale in writing, the Debtors shall file a notice with the Court, substantially in the form attached to the Motion as <u>Exhibit B</u> (the "Sale Notice"), specifying (i) the Pharmacy Assets to be sold, (ii) the identity of the purchaser, (iii) any commissions to be paid to third parties (such as brokers), and (iv) the sale price.   The Debtors shall serve the Sale Notice only on the following parties: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the DIP Agent; (iii) counsel for any official committee appointed in the Chapter 11 Cases (collectively, the "<u>Notice Parties</u>"); and (iv) any person or entity with a particularized interest in the Pharmacy Assets to be sold, including any known creditor asserting a lien, claim, interest, or encumbrance on such Pharmacy Assets.

    ii.        Parties in interest will have five days after the service of a Sale Notice (the "<u>Sale Objection Deadline</u>") to object to a proposed sale of Pharmacy Assets.   After the expiration of the Sale Objection Deadline, the Debtors may immediately sell the Pharmacy Assets listed in the Sale Notice and take any actions and execute any agreements or other documentation that are necessary or desirable to close the transaction and obtain the sale proceeds.

    iii.        If any party in interest wishes to object to a proposed sale of Pharmacy Assets, such party must (i) file a written objection (each, an "<u>Objection</u>") with the Court on or before the Sale Objection Deadline and (ii) serve the Objection on the Debtors and each of the other Notice Parties so that it is actually received by such parties on or before the Sale Objection Deadline. Any such Objection shall identify, with specificity, the basis for such Objection.   If an Objection is timely received and filed and cannot be resolved by the Debtors and the objecting parties, the Pharmacy Assets that are the subject of the Objection will not be sold except upon order of the Court; *provided*, *however*, that any Pharmacy Assets set forth in the Sale Notice that is not the subject of an Objection may be immediately sold in accordance with paragraph (b).

7.        If the Sale Price for the sale of a Pharmacy Assets at a single location is greater than $1,500,000, or if the Sale Price is less than $1,500,000 but the Dip Agent has withheld its written consent to such proposed sale and the Debtors wish to consummate the sale nonetheless, the Debtors shall file a motion with the Court requesting approval of the sale pursuant to section 363 of the Bankruptcy Code, among other applicable provisions.

8.        The Debtors shall be permitted to compensate any broker engaged by the Debtors in connection with any sale or attempted sale of Pharmacy Assets; *provided, however,* that if an Objection to the payment of any broker's fees is timely received and filed by the Sale Objection Deadline (if applicable), then the portion of such broker's fees to which the Objection is directed shall not be paid until such Objection is consensually resolved or until the Court approves such payment.

9.        The Sale Procedures satisfy section 363(f) of the Bankruptcy Code and Pharmacy Assets sold pursuant to the Sale Procedures shall be free and clear of all liens, claims, interests, and encumbrances.

10.       Any holder of a lien, claim, interest, or encumbrance on any Pharmacy Assets to be sold at a single location, with a Sale Price greater than $500,000 and less than or equal to $1,500,000, will receive a Sale Notice and will have an opportunity to object to any sale in which they claim an interest.  If a holder of a lien, claim, interest, or encumbrance receives the Sale Notice and does not object within the prescribed time period, then such holder will be deemed to have consented to the proposed sale and the property may then be sold free and clear of the holder's interests pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, or encumbrances to be satisfied from the proceeds of the sale with such proceeds to be first applied to the Obligations and the Pre-Petition Lender Debt in accordance with the Post-

Petition Credit Agreement (as "Obligations" and "Pre-Petition Lender Debt" are defined in the

Post-Petition Credit Agreement) until all such Obligations and the Pre-Petition Lender Debt are

satisfied in full, and thereafter to satisfy any junior liens, claims, interests, or encumbrances had

on the Pharmacy Assets sold in the order of priority that existed prior to the Petition Date.

11.      Those who purchase Pharmacy Assets in accordance with the Procedures shall be

afforded the protections under section 363(m) of the Bankruptcy Code.

12.      The requirements set forth in Bankruptcy Rule 6003 are satisfied.

13.      Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h) or

Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the

terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

14.      The Debtors are authorized to take all such actions as are necessary or appropriate

to implement the terms of this Order.

15.      Proper, timely, adequate, and sufficient notice of the Motion has been provided in

accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other

or further notice of the Motion or the entry of this Order shall be required.

16.      The Court shall retain exclusive jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated: _____, 2019
      Wilmington, Delaware




                    _____
                    UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

**Notice of Sale**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FRED'S, INC., *et al.*,[1] | Case No. 19-_____ (   ) |
| Debtors. | Joint Administration Requested |

**NOTICE OF SALE OF CERTAIN OF THE DEBTORS' *DE MINIMIS* PHARMACY
ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, INTERESTS, AND ENCUMBRANCES
PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE**

      **PLEASE TAKE NOTICE** that, on [•], 2019, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the attached order (the "Order") granting approval of certain procedures (the "Procedures") for (i) the sale of certain *de minimis* pharmacy assets ("Pharmacy Assets"), free and clear of all liens, claims, interests [D.I. [•]] in the chapter 11 cases of Fred's Inc. and its subsidiaries that are debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors").

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Order, unless a written objection ("Objection") is filed with the Court and served in the manner provided for in the Order by _____ _____, 2019, the Pharmacy Assets listed on Appendix A attached hereto will be sold free and clear of all liens, claims, encumbrances, or interests pursuant to, among other provisions, section 363 of title 11 of the United States Code, in accordance with the Order.

      **PLEASE TAKE FURTHER NOTICE** that, if an Objection is timely filed and served in accordance with the Order, the Debtors and the objecting party will use good faith efforts to resolve the Objection.  If the Debtors and the objecting party are unable to consensually resolve the Objection, the Debtors shall not proceed with the sale of Pharmacy Assets that are the subject of the Objection pursuant to the Procedures, but may seek Court approval of the proposed transaction.

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 2001 Bryan Street, Suite 1550, Dallas, TX 75201.

Dated:  September [•], 2019
        Wilmington, Delaware

_____

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Matthew B. Harvey (No. 5186)
Joseph C. Barsalona II (No. 6102)
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email:  dabbott@mnat.com
        aremming@mnat.com
        mharvey@mnat.com
        jbarsalona@mnat.com

- and -

Adam L. Shiff (*pro hac vice* motion pending)
Robert M. Novick (*pro hac vice* motion pending)
Matthew B. Stein (*pro hac vice* motion pending)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800
Email:  AShiff@kasowitz.com
        RNovick@kasowitz.com
        MStein@kasowitz.com

**PROPOSED COUNSEL FOR DEBTORS AND
DEBTORS IN POSSESSION**

**APPENDIX A**

| Pharmacy Assets(s) to be Sold | Name and Address of Purchaser | Proposed Purchase Price and Commissions to Third Parties | Location of Pharmacy Assets to be Sold | Location of Sale (if different than location of Pharmacy Assets) |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |