**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

**ORIGINAL**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FRED'S, INC., *et al.*[1] | ) Case No. 19-11984 (CSS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Re: Docket No. 16** |

**INTERIM ORDER GRANTING DEBTORS' MOTION TO (I) AUTHORIZE
DEBTORS IN POSSESSION TO OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364;
(II) GRANT LIENS AND SUPERPRIORITY CLAIMS TO POSTPETITION
LENDERS PURSUANT TO 11 U.S.C. §§ 364 AND 507;
(III) PROVIDE ADEQUATE PROTECTION TO PREPETITION CREDIT
PARTIES, SUMMIT LENDER, AND CARDINAL VENDORS; (IV) MODIFY
AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364, AND 507;
(V) SCHEDULE FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(B)
AND (C) AND LOCAL RULE 4001-2; AND (VI) GRANT RELATED RELIEF**

This matter is before this Court on the motion (the "***Motion***")[2] of the above-captioned

debtors and debtors in possession (collectively, the "***Debtors***") in these chapter 11 cases (the

"***Chapter 11 Cases***"), requesting entry of an interim order (this "***Interim Order***") and a final

order (a "***Final Order***") pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2),

364(c)(3), 364(d)(1), 364(e), 506, 507(b), and 552 of title 11 of the United States Code (the

"***Bankruptcy Code***") and rules 2002, 4001, 6003, 6004, 7062, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "***Bankruptcy Rules***"), and the local rules for the United States

Bankruptcy Court for the District of Delaware (the "***Local Rules***"):

---

[1]The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fred's Stores of Tennessee, Inc. (9888) ("***FSOT***"); Fred's Inc. (4010) ("***Fred's***"); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687) ("***NPN***"); Reeves-Sain Drug Store, Inc. (4510) ("***Reeves***"); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 43000 New Getwell Road, Memphis, TN 38118.

[2]Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Case 19-11984-CSS    Doc 61    Filed 09/10/19    Page 2 of 67

(i)       authorizing the Debtors to obtain postpetition financing, consisting of a superpriority, secured, asset-based revolving credit facility in the principal amount of up to $35,000,000 (the "*DIP Facility*") from Regions Bank ("*Regions*"), in its separate capacities as administrative and collateral agent (in such capacities, together with its successors in such capacities, the "*DIP Agent*") and as a co-collateral agent, letter of credit issuer and lender, Bank of America, N.A., in its capacity as co-collateral agent, letter of credit issuer and lender, ("*BAML*"), and certain other financial institutions from time to time (together with Regions, BAML and their respective successors and assigns, in their capacity as such, the "*DIP Lenders*"; and together with the DIP Agent, BAML in its capacity as a co-collateral agent, Regions in its capacity as a co-collateral agent, any affiliates of the DIP Lenders that provide deposit accounts, cash management services, or other bank products, and issuers of letters of credit, the "*DIP Credit Parties*");

(ii)      authorizing each Debtor to execute, deliver and perform all of its obligations under the DIP Financing Documents (as defined in paragraph 1(a) below), all in substantially the form annexed to the Motion (with such changes or amendments, if any, as were announced at, or made as a result of, the Interim Hearing (as defined herein) or as otherwise authorized to be made as amendments to the DIP Loan Agreement (as defined in paragraph H below) in accordance with this Interim Order, including paragraph 17 below); to execute, deliver and perform all of its obligations under all instruments, security agreements, assignments, pledges, mortgages, deposit account control agreements, reaffirmations and other documents referred to therein or requested by the DIP Credit Parties to give effect to the terms thereof; and to perform all such other and further acts as may be required or appropriate in connection with the DIP Financing Documents;

- 2 -

RLF1 21993125v.1

(iii)    authorizing the Debtors to use proceeds of advances under the DIP Facility (the "***DIP Loan Proceeds***") as and to the extent permitted in the DIP Financing Documents and in accordance with this Interim Order;

(iv)    granting to the DIP Agent for the respective benefit of the DIP Credit Parties to the extent provided herein (a) automatically perfected security interests in and liens on all of the DIP Collateral (as defined in paragraph K below) and (b) superpriority administrative expense status to the DIP Obligations (as defined in paragraph 1(b) below), in each case subject to the Carve-Out (as defined in paragraph 12 below) and on the terms and subject to the relative priorities set forth in the DIP Financing Documents and this Interim Order;

(v)    providing adequate protection to the Prepetition Credit Parties (as defined in paragraph E(i) below), the Summit Lender (as defined in paragraph E(v) below), and the Cardinal Vendors (as defined on paragraph E(vi) below) to the extent of any diminution in value of, with respect to (a) the Prepetition Credit Parties, their interests in the Prepetition Collateral (as defined in paragraph E(ii) below), (b) with respect to the Summit Lender, its interests in the Summit Collateral (as defined in paragraph E(v) below), and (c) with respect to the Cardinal Vendors, their interests in the Cardinal Collateral (as defined in paragraph E(vi) below);

(vi)    authorizing the Debtors to pay the principal, interest, fees, costs, expenses, disbursements, and other amounts payable under the DIP Financing Documents as such amounts become due and payable;

(vii)    authorizing the Debtors to use Cash Collateral (as defined in paragraph E(iv) below) and all other Prepetition Collateral, subject to the terms of this Interim Order;

(viii)    authorizing the Debtors to use Cash Collateral in the form of Prepetition Receivable Collections (as defined in paragraph 7(d) below) to repay the Prepetition Lender

- 3 -

Debt (as defined in paragraph E(iii) below) until full and final payment thereof;

(ix)    vacating and modifying the automatic stay pursuant to section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the DIP Financing Documents, including the turnover of cash collateral by the Debtors to the Prepetition Credit Parties in repayment of the Prepetition Lender Debt;

(x)    subject only to and effective upon entry of the Final Order,[3] waiving each Debtor's right to seek to surcharge any DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and any right of any Debtor under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(xi)    scheduling a final hearing (the "*Final Hearing*") to consider entry of the Final Order and, in connection therewith, giving and prescribing the manner of notice of the Final Hearing on the Motion, and waiving any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including under Bankruptcy Rule 6004); and

(xii)    granting the Debtors such other and further relief as is just and proper.

This Court scheduled an interim hearing (the "*Interim Hearing*") on September 10, 2019. In accordance with Local Rule 9013-1 notice of the Motion and the Interim Hearing was served by the Debtors on (a) the Office of the United States Trustee for the District of Delaware (the "*U.S. Trustee*"), (b) counsel to Regions, as administrative and collateral agent (in such capacity, the "*Prepetition Agent*") for the Prepetition Lenders (as defined in paragraph E(i) hereof); (c) counsel to the DIP Agent; (d) counsel to BAML; (e) counsel to the Summit Lender; (f) counsel to the Cardinal Vendors; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; (i) the United States Attorney's Office for the District of Delaware and

---

[3] Wherever in this Interim Order reference is made to "subject to the Final Order" or "effective upon entry of the Final Order," such reference means "as and to the extent granted by this Court in the Final Order."

- 4 -

(j) the holders of the thirty (30) largest unsecured claims against the Debtors, on a consolidated basis.

Upon the record made (a) by the Motion and the exhibits attached thereto, (b) in the *Declaration of Mark A. Renzi, Chief Restructuring Officer of Fred's, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "***First Day Declaration***"), (c) the arguments and statements of counsel, and (d) all matters brought to this Court's attention at the Interim Hearing; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing; and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties in interest, and is essential for the preservation and continued operation of the Debtors' businesses and the maximization of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Loan Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THIS COURT HEREBY FINDS AND DETERMINES:**[4]

A.      <u>Petition Date</u>.  On September 9, 2019 (the "***Petition Date***"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code and is continuing to manage its properties and to operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed for any Debtor.

B.      <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over these Chapter 11 Cases,

---

[4]The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*.

the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue for these Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    <u>Committee Formation</u>. As of the date hereof, the U.S. Trustee has not appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

      D.    <u>Notice</u>. Notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order is required.

      E.    <u>Debtors' Stipulations</u>.    After consultation with their attorneys and financial advisors, and without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 23 hereof), each Debtor, on its own behalf and on behalf of its estate, admits, stipulates, acknowledges and agrees as follows:

      (i)    <u>Prepetition Loan Documents</u>.  Pursuant to that certain Credit Agreement dated April 9, 2015 (together with all exhibits, schedules, appendices and addenda thereto and as amended, modified, restated or supplemented prior to the Petition Date, the "***Prepetition Loan Agreement***"), certain financial institutions in their capacity as lenders (collectively, the "***Prepetition Lenders***"), the Prepetition Agent, Regions, and BAML, in their respective capacities as co-collateral agents for the Prepetition Lenders (together with the Prepetition Lenders, the Prepetition Agent, any affiliates of the Prepetition Lenders who provided Bank

Products (as defined in the Prepetition Loan Agreement), the LC Issuers (as defined in the Prepetition Loan Agreement), and each of the successors and assigns of any of the foregoing entities, the "***Prepetition Credit Parties***") established a revolving credit facility (and a letter of credit subfacility) for the Debtors.  The Prepetition Loan Agreement, together with each other agreement, note, instrument, guaranty, mortgage, fixture filing, deed of trust, security deed, financing statement, pledge, assignment, and other document executed at any time in connection therewith, in each case as the same may have been amended, modified, restated or supplemented from time to time, are hereinafter referred to collectively as the "***Prepetition Loan Documents***." All of the Prepetition Loan Documents create legal, valid and binding obligations on the part of each Debtor signatory thereto.

(ii)    <u>Prepetition Collateral</u>.  Pursuant to that certain Security Agreement (as defined in the Prepetition Loan Agreement) executed by the Debtors in favor of the Prepetition Agent, each Debtor granted to the Prepetition Agent, for the benefit of the Prepetition Credit Parties and to secure all Prepetition Lender Debt, first priority liens on and security interests in the Collateral (as defined in the Prepetition Loan Agreement), whether created, acquired or arising prior to, on or after the Petition Date (to the extent in existence on the Petition Date and all proceeds thereof, collectively, the "***Prepetition Collateral***", with such prepetition liens and security interests in favor of the Prepetition Agent being collectively called the "***Prepetition Security Interests***"), in each case as provided in the Prepetition Loan Documents.  The Prepetition Security Interests are legal, valid, binding, enforceable, non-avoidable and duly perfected and are not subject to any attachment, contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, any applicable non-

- 7 -

bankruptcy law or otherwise; and, as of the Petition Date and before giving effect to this Interim Order, the Debtors are not aware of any security interests or liens having priority over the Prepetition Security Interests except those certain liens expressly permitted under the Prepetition Loan Agreement and that on the Petition Date had priority over the Prepetition Security Interests in the Prepetition Collateral.

        (iii)    <u>Prepetition Lender Debt</u>.  As of the Petition Date, certain of the Debtors were jointly and severally indebted and liable under the Prepetition Loan Documents to the Prepetition Credit Parties for revolving credit loans in the approximate principal amount of $15.0 million (the ***"Prepetition Loans"***), for fees, expenses, and other charges associated with depository accounts and other Secured Bank Product Obligations (as defined in the Prepetition Loan Agreement) (collectively, the ***"Prepetition Bank Product Obligations"***), and on a contingent basis in the approximate amount of $8.8 million in face amount of standby letters of credit (the ***"Prepetition LCs"***; together with the Prepetition Loans, the Prepetition Bank Product Obligations, all other liabilities and obligations of Debtors in respect of indemnities, guaranties and other payment assurances made or given to or by any Debtor for the benefit of the Prepetition Credit Parties, all other indebtedness, liabilities and obligations owing at any time under any of the Prepetition Loan Documents, and all interest, fees, costs, legal expenses and all other amounts heretofore or hereafter accruing thereon or at any time chargeable to any Debtor in connection therewith, collectively referred to as the ***"Prepetition Lender Debt"***).  Each Debtor acknowledges and stipulates that the Prepetition Lender Debt is due and owing to the Prepetition Credit Parties, respectively, without any defense, offset, recoupment or counterclaim of any kind; the Prepetition Lender Debt constitutes the legal, valid and binding obligations of each Debtor as and to the extent provided in the Prepetition Loan Documents, as applicable, enforceable in

- 8 -

accordance with the terms of the applicable Prepetition Loan Documents; and none of the Prepetition Lender Debt or any payments made to any Prepetition Credit Party or applied to the Prepetition Lender Debt is subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or other claim of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iv)    Cash Collateral.  All cash and deposits of the Debtors as of the Petition Date, including, without limitation, all amounts on deposit or maintained by any Debtor in any account with any Prepetition Credit Party and all deposits made by any Debtor with any landlord or other Person (as defined in the DIP Loan Agreement), are subject to valid and enforceable rights of setoff and valid, perfected, enforceable liens under the Prepetition Loan Documents and Applicable Law (as defined in the DIP Loan Agreement), and are included in the Prepetition Collateral, and therefore each Debtor's cash and deposits constitute cash collateral of the Prepetition Credit Parties within the meaning of section 363(a) of the Bankruptcy Code.  All cash and deposits of the Debtors, and all proceeds thereof (including, without limitation, all proceeds of the Prepetition Collateral and of other property encumbered by liens and security interests granted under this Interim Order), regardless of whether such proceeds are in existence on the Petition Date or thereafter come into existence, are referred to herein as "***Cash Collateral***."

(v)    Summit Liens.  Prior to the Petition Date, GE Commercial Finance Business Property Corporation (the "***Summit Lender***") was granted a security interest in certain property (the "***Summit Collateral***") of (a) Debtor Summit Properties-Jacksboro, LLC in connection with that certain Promissory Note, Commercial Deed of Trust, Security Agreements, Assignment of Leases and Rents and Fixture Filing dated December 29, 2006, and (b) Debtor Summit Properties-Bridgeport, LLC in connection with that certain Promissory Note,

- 9 -

Commercial Deed of Trust, Security Agreements, Assignment of Leases and Rents and Fixture Filing dated September 7, 2007. As of the Petition Date, the Debtors estimate that Summit Properties-Jacksboro, LLC and Summit Properties-Bridgeport, LLC owe the Summit Lender approximately $700,000 and $700,000, respectively.

(vi)    Cardinal Liens/Lien Subordinations.  Prior to the Petition Date, Cardinal Health 110, LLC ("*Cardinal 110*"), a pharmaceutical supplier of the Debtors, was granted security interests for the benefit of itself and another pharmaceutical supplier, Cardinal Health 112, LLC ("*Cardinal 112*", and together with Cardinal 110, collectively, the "*Cardinal Vendors*"), in certain types of personal property of the Debtors (the "*Cardinal Collateral*") in connection with that certain Prime Vendor Agreement dated April 29, 2017.  Pursuant to that certain Intercreditor Agreement dated April 5, 2018 (as at any time amended, modified, restated, or supplemented, the "*Cardinal Intercreditor Agreement*"), among the Cardinal Vendors and the Prepetition Agent, which was acknowledged by Fred's, FSOT, NPN, and Reeves, the liens of the Cardinal Vendors on the Cardinal Collateral are subordinated to the Prepetition Agent's liens in the Prepetition Collateral, which subordination continues with respect to financing provided in any bankruptcy proceeding.   Any liens asserted by the Cardinal Vendors are hereinafter collectively referred to as the "*Cardinal Liens*."   As of the Petition Date, the Debtors estimate outstanding accounts payable to the Cardinal Vendors owing by the Debtors in the approximate amount of $20.9 million.

F.    Permitted Prior Liens.  Nothing herein shall constitute a finding or ruling by this Court that any alleged lien permitted by the Prepetition Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Lender Debt as of the Petition Date, the "*Permitted Prior Lien*") is valid, senior,

- 10 -

enforceable, prior, perfected, or non-avoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Agent, the Prepetition Credit Parties, or a Committee (as defined in paragraph 7(g) below, if appointed) to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests.

G.    Need for Financing.    The Debtors have an immediate and critical need to obtain credit on an interim basis pursuant to the DIP Facility in order to, among other things, administer the Chapter 11 Cases, permit the orderly continuation of the operation of their businesses, permit the orderly execution of going-out-of-business sales at certain of the Debtors' store locations maintain business relationships with vendors, suppliers and customers, pay payroll obligations, and satisfy other working capital and operational needs so as to maximize the value of their respective businesses and assets as debtors in possession under chapter 11 of the Bankruptcy Code.  The Debtors do not have sufficient available sources of working capital to preserve the value of and operate their businesses in the ordinary course, including through going-out-of-business sales at certain locations and continued operation of the remaining business, without access to the DIP Facility.

H.    Proposed DIP Facility.    The Debtors have requested that the DIP Lenders establish the DIP Facility pursuant to which the Debtors may from time to time obtain loans (the "**DIP Loans**") and procure letters of credit (the "**DIP LCs**"; together with the DIP Loans and any other credit or financing accommodations made or granted to or on behalf of any Debtor under the DIP Loan Agreement, the "**DIP Credit Extensions**") in an aggregate principal amount outstanding at any time not to exceed $35,000,000 (with a subfacility for DIP LCs in an aggregate amount not to exceed at any time $10,000,000), in each case subject to a borrowing

base and commitment limitations, sub-limits, reserves and other conditions to and limitations on availability in the DIP Loan Agreement, with all DIP Credit Extensions and related obligations to be secured by all real and personal property of the Debtors, wherever located and whether created, acquired, existing or arising prior to, on or after the Petition Date. The DIP Lenders are willing to establish the DIP Facility upon the terms and conditions set forth herein and in that certain Postpetition Credit Agreement that has been, or following entry of this Interim Order will be, entered into by the Debtors and the DIP Credit Parties, substantially in the form attached to the Motion (together with all schedules, exhibits and annexes thereto, and as at any time amended, modified, restated or supplemented in accordance with the terms hereof and thereof, the "*DIP Loan Agreement*").

I.    <u>No Credit Available on More Favorable Terms</u>.    The DIP Facility is the best source of debtor-in-possession financing available to the Debtors. Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain postpetition financing from sources other than the DIP Credit Parties and on terms more favorable than the DIP Loan Agreement. The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain: (i) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. As described in the First Day Declaration, financing on a postpetition basis on better terms is not otherwise available without granting the DIP Credit Parties: (1) perfected security interests in and liens on (each as provided herein) all of

- 12 -

the Debtors' existing and after-acquired assets; (2) superpriority claims and liens; (3) the other protections set forth in this Interim Order; and (4) a full refinancing of the Prepetition Lender Debt.

J.    <u>Budget</u>.  The Debtors have prepared and attached to the Motion a 9-week rolling cash flow budget in accordance with the DIP Loan Agreement (as at any time amended, supplemented, updated or extended with the prior written consent of the DIP Agent[5] and in accordance with the terms hereof, the "***Budget***"), which sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby.  The DIP Credit Parties are relying upon the Budget in entering into the DIP Loan Agreement, and the Prepetition Credit Parties are relying upon the Budget in consenting to the terms of this Interim Order.  All references restricting the use of DIP Loan Proceeds to payment on any date of amounts set forth in the Budget shall mean the Budget as in effect on such date, subject to the Permitted Variances (as defined in the DIP Loan Agreement).

K.    <u>Certain Conditions to DIP Facility</u>.  The DIP Credit Parties' willingness to establish the DIP Facility and to make DIP Credit Extensions is conditioned upon, among other things: (i) the Debtors obtaining Court approval to enter into the DIP Loan Agreement (and all documents referred to therein) and the other DIP Financing Documents, to incur all of the obligations of the Debtors thereunder, and to confer upon the DIP Credit Parties all rights, powers and remedies thereunder; (ii) the Debtors' provision of adequate protection, as granted in this Interim Order, of the Prepetition Credit Parties' interests in the Prepetition Collateral

---

[5]Whenever approval, consent or discretion of the DIP Agent or the Prepetition Agent to take or consent to specific action is referred to in this Interim Order, such approval, consent or discretion shall also include the prior written approval or consent of each of Regions and BAML, in their respective capacities as co-collateral agents under the DIP Facility, or the required DIP Lenders or Prepetition Lenders, as applicable, to take such actions or, in the case of the exercise of discretion, as such exercise may be directed by of each of Regions and BAML, in their respective capacities as co-collateral agents under the DIP Facility or the required DIP Lenders or Prepetition Lenders, as applicable.

pursuant to sections 361 and 363 of the Bankruptcy Code; and (iii) the Debtors' grant to the DIP Agent, for the benefit of the DIP Credit Parties and as security for the prompt payment and performance of all of the DIP Obligations (as defined in paragraph 1(b) hereof), security interests in and liens upon all of the "Collateral" as defined in the DIP Loan Agreement, which includes, without limitation, all of each Debtor's real property and personal property consisting of accounts, inventory, equipment (including fixtures), general intangibles (including payment intangibles, intellectual property, and tax refund claims), documents, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property, real property and leasehold interests, contract rights, business interruption insurance, and books and records relating to any assets of such Debtor and all proceeds of the foregoing (including insurance proceeds), whether such assets were in existence on the Petition Date or were thereafter created, acquired or arising and wherever located (all such real and personal property, including, without limitation, all Prepetition Collateral, being collectively hereinafter referred to as the "***DIP Collateral***"). The DIP Collateral shall include Avoidance Claims and Avoidance Proceeds under, as defined in, and to the extent provided in, paragraph 3(e) hereof.

L.    <u>Adequate Protection</u>.

(i) <u>Prepetition Credit Parties</u>.    The Prepetition Credit Parties are entitled to adequate protection as set forth in this Interim Order by reason of (w) the granting of first priority, priming liens on the Prepetition Collateral, for the benefit of the DIP Credit Parties; (x) the use, sale, lease or depreciation or other diminution in value of the Prepetition Credit Parties' interests in the Prepetition Collateral; (y) the subordination of the Prepetition Security Interests to the Carve-Out; and (z) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise pursuant to sections 361(a), 363(c), 364(c), and 364(d)(1) of

- 14 -

the Bankruptcy Code. The adequate protection and other treatment proposed to be provided by the Debtors to the Prepetition Credit Parties pursuant to this Interim Order are authorized by the Bankruptcy Code, will minimize disputes and litigation over use of the Prepetition Collateral, and will facilitate the Debtors' ability to continue their business operations and complete an orderly wind-down of certain of the Debtors' assets through the use of the DIP Facility.

(ii) <u>Cardinal Vendors</u>. The Debtors acknowledge and agree that the Cardinal Vendors are entitled to adequate protection as set forth in this Interim Order by reason of (w) the granting of first priority, priming liens on the Cardinal Collateral, for the benefit of the DIP Credit Parties; (x) the use, sale, lease or depreciation or other diminution in value of the Cardinal Vendors' interests in the Cardinal Collateral; (y) the subordination of the Cardinal Liens to the Carve-Out; and (z) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise pursuant to sections 361(a), 363(c), 364(c), and 364(d)(1) of the Bankruptcy Code. The adequate protection and other treatment proposed to be provided by the Debtors to the Cardinal Vendors pursuant to this Interim Order are authorized by the Bankruptcy Code, will minimize disputes and litigation over use of the Cardinal Collateral, and will facilitate the Debtors' ability to continue their business operations and complete an orderly wind-down of certain of the Debtors' assets through the use of the DIP Facility.

M. <u>Service of Motion and Notice of Interim Hearing</u>. The affidavits and declaration of service on file with this Court demonstrate that the Debtors have served copies of the Motion (together with the annexed copies of the proposed DIP Loan Agreement and Budget annexed thereto) and notice of the Interim Hearing by electronic mail, telecopy transmission, hand delivery, overnight courier, or first class United States mail upon (i) the U.S. Trustee, (ii) counsel to the Prepetition Agent; (iii) counsel to the DIP Agent; (iv) counsel for BAML; (v) counsel to

- 15 -

the Summit Lender; (vi) counsel to the Cardinal Vendors; (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; (ix) the United States Department of Labor; (x) the United States Attorney's Office for the District of Delaware; and (xi) the holders of the thirty (30) largest unsecured claims against the Debtors, on a consolidated basis. The Court finds that the foregoing notice of the Motion, as it relates to this Interim Order and the Interim Hearing, is appropriate, due and sufficient for all purposes under the Bankruptcy Code (including sections 102(1) and 364 thereof), the Bankruptcy Rules (including Bankruptcy Rule 4001(b) and (c)), and the Local Rules, and that no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

N.    <u>Finding of Good Cause</u>.  Good cause has been shown for the entry of this Interim Order and authorization for (i) the DIP Credit Parties to provide the Debtors with the DIP Facility, (ii) the Debtors to accept the DIP Facility, obtain DIP Credit Extensions thereunder, and incur the DIP Obligations pursuant to the DIP Loan Agreement and the other DIP Financing Documents as hereinafter provided during the Interim Period, (iii) the Debtors to execute and deliver each of the DIP Financing Documents, and (iv) the Debtors to provide the Prepetition Credit Parties and the Cardinal Vendors with adequate protection as set forth herein.  Each Debtor's need for financing of the type afforded by the DIP Loan Agreement is immediate and critical.  Entry of this Interim Order will preserve the assets of the Debtors' estates and their value and is in the best interests of the Debtors, their creditors and their estates.  The terms of the DIP Facility are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.

O.    <u>Finding of Good Faith</u>.  Based upon the record presented at the Interim Hearing, the DIP Facility and the DIP Financing Documents have been negotiated in good faith and at

- 16 -

arm's length between the Debtors, on the one hand, and the DIP Credit Parties, on the other. All of the DIP Obligations, including, without limitation, all DIP Credit Extensions and other liabilities and obligations of any Debtor to the DIP Credit Parties under this Interim Order or in respect of credit card debt, overdrafts and related liabilities arising from treasury, depository, credit card, or cash management services, or in connection with any automated clearing house transfers of funds or other Bank Products (as defined in the DIP Loan Agreement), shall be deemed to have been extended by the DIP Credit Parties in "good faith," as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. The DIP Credit Parties shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

P.    <u>Immediate Entry</u>. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules. Absent the immediate grant of the interim relief sought by the Motion, each Debtor's estate will be immediately and irreparably harmed pending the Final Hearing. The Debtors' obtaining and consummating the DIP Facility in accordance with and as contemplated by the terms of this Interim Order and the DIP Financing Documents is in the best interests of each Debtor's estate and is consistent with each Debtor's exercise of its business judgment and fiduciary duties.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1.    **<u>Grant of Motion; Authorization of Interim Financing; Use of Proceeds</u>**.

(a)    The Motion is hereby GRANTED on an interim basis as and to the extent provided herein, and the Court hereby authorizes and approves each Debtor's execution and

- 17 -

delivery of the DIP Loan Agreement in substantially the form annexed to the Motion (with such changes, if any, as were announced at, or as a result of, the Interim Hearing or are otherwise authorized to be made as amendments to the DIP Loan Agreement in accordance with this Interim Order) and all instruments, guaranties, security agreements, assignments, pledges, financing statements, intellectual property filings, mortgages, deeds of trust, and other documents referred to therein or requested by the DIP Credit Parties to give effect to the terms thereof (the DIP Loan Agreement and all such other instruments, agreements and other documents, as at any time amended, modified, restated or supplemented in accordance with the terms hereof and thereof, being collectively called the "*DIP Financing Documents*").

(b)    The Debtors are hereby immediately authorized to obtain DIP Credit Extensions and incur any and all other DIP Obligations (as defined below) from time to time pursuant to the DIP Financing Documents, on the terms set forth therein and in this Interim Order, up to an aggregate principal amount of DIP Credit Extensions outstanding at any time not to exceed $35,000,000 (subject to the borrowing base, commitment limitations, sub-limits, reserves and other conditions and limitations on availability set forth in the DIP Loan Agreement), plus all interest, fees, costs, payments, expenses, and other amounts payable in connection with such DIP Credit Extensions as provided in this Interim Order and the DIP Financing Documents; to incur any and all indebtedness, liabilities and obligations under the DIP Financing Documents; and to pay all principal, interest, fees, costs, payments, expenses and other obligations provided for under the DIP Financing Documents (including, without limitation, obligations to indemnify the DIP Credit Parties and to reimburse them for their reasonable and documented legal fees and other out-of-pocket expenses); provided, however, that, from the date of entry of this Interim Order until the date of entry of the Final Order (the

- 18 -

"*Interim Period*") and subject to all of the terms and conditions in this Interim Order, the DIP Financing Documents, and the Budget, the Debtors may use the DIP Loans and other DIP Credit Extensions to the extent necessary to avoid immediate and irreparable harm, which, for purposes hereof, shall mean DIP Loans used (a) to pay (or in the case of DIP LCs and the Prepetition LCs, to cash collateralize) amounts owed by any Debtor at any time to any DIP Lender under any of the DIP Financing Documents, including, without limitation, costs, fees and expenses at any time due thereunder; (b) to make disbursements specified or authorized to be paid in the Budget and in amounts not to exceed the Permitted Variances provided in the DIP Loan Agreement (all of which shall be deemed to be made to prevent immediate and irreparable harm to the Debtors); (c) to make adequate protection and other payments to the Prepetition Credit Parties and the Cardinal Vendors to the extent authorized or required herein; (d) to pay other fees or expenses that are required or authorized to be paid, prior to the Final Hearing, under any of the DIP Financing Documents or this Interim Order; (e) to fund the Carve-Out; and (f) for any other purposes specified in the Budget, this Interim Order or the DIP Loan Agreement. For purposes hereof, the term "*DIP Obligations*" means all "Obligations" as defined in the DIP Loan Agreement and shall include, without limitation, all DIP Credit Extensions and all interest, costs, expenses, fees (including, without limitation, any documented and actually incurred fees and expenses owing at any time to the DIP Agent), and other charges at any time or times payable by any Debtor to any DIP Credit Party in connection with any DIP Credit Extensions, all reimbursement obligations and other indebtedness in respect of any DIP LCs or Prepetition LCs, and all other indebtedness and obligations at any time or times outstanding under any of the DIP Financing Documents (including, without limitation, indebtedness in respect of Bank Products and indemnities and similar obligations (whether contingent or absolute)). The Debtors shall be

jointly and severally liable for the DIP Obligations in accordance with the DIP Loan Agreement. Neither the DIP Obligations, nor any payment, transfer, or grant of a security interest or lien hereunder or under any of the DIP Financing Documents, shall be stayed, restrained, voidable, or recoverable under any applicable law (including sections 549 or 550 of the Bankruptcy Code) or be subject to any reduction, setoff, recoupment, offset, recharacterization, subordination (equitable, contractual, or otherwise), counterclaim, cross-claim, or defense, or any other challenge under any applicable law.

(c)    In addition to the DIP Credit Extensions described above, the Debtors are authorized to incur credit and debit card debt, overdrafts and related liabilities arising from treasury, depository, and cash management services and other Bank Products provided to or for the benefit of any Debtor by any DIP Credit Party (or any of its affiliates), provided that nothing herein shall require any DIP Credit Party to allow overdrafts to be incurred or to provide any such Bank Products to any Debtor.

(d)    No DIP Credit Party shall have any obligation or responsibility to monitor any Debtor's use of the DIP Loans or other DIP Credit Extensions, and each DIP Credit Party may rely upon each Debtor's representations that the amount of the DIP Credit Extensions requested at any time, and the use thereof, are in accordance with the requirements of this Interim Order, the Budget, the DIP Financing Documents, the Bankruptcy Code and the Bankruptcy Rules.

(e)    As provided in the DIP Loan Agreement and this Interim Order, and subject to paragraph 23 hereof, the Prepetition LCs shall be treated as DIP LCs issued pursuant to the DIP Loan Agreement, shall constitute part of the DIP Credit Extensions, and shall be entitled to all of the benefits and security of the DIP Financing Documents and this Interim

- 20 -

Order. Any cash collateral securing the LC Obligations (as defined in DIP Loan Agreement) shall constitute a part of the DIP Collateral to which the DIP Liens shall attach.

(f)      The Debtors may obtain and use DIP Loan Proceeds only for purposes and in the amounts specified in the DIP Loan Agreement and the Budget (subject to the Permitted Variances). No DIP Loan Proceeds shall be used to (i) make any payment in settlement or satisfaction of any prepetition claim (other than the Prepetition Lender Debt) or administrative or priority claim (other than the DIP Obligations), unless (x) in compliance with the Budget and permitted under the DIP Financing Documents or this Interim Order, or (y) as separately approved by this Court upon notice to the DIP Agent and subject to compliance with the Budget; (ii) except as expressly provided or permitted hereunder or in the Budget or as otherwise approved by the DIP Agent (and approved by this Court, if necessary), make any payment or distribution to or for the benefit of any non-Debtor affiliate, equity holder, or insider of any Debtor, and in no event shall any management, advisory, consulting or similar fees be paid to or for the benefit of any affiliate that is not a Debtor; (iii) make any payment, loan, advance, remittance or other transfer whatsoever to any Debtor or affiliate of any Debtor that is not a "Borrower" under the DIP Loan Agreement; or (iv) make any payment otherwise prohibited by this Interim Order or the DIP Loan Agreement.

(g)      The Budget may be amended, supplemented or updated with the prior written consent of the DIP Agent, and deviations from the Budget may be approved by the DIP Agent (but to be enforceable against the DIP Credit Parties, such deviations must be in writing, which writing may be an electronic communication), in each case without notice to any party in interest and without Court approval.  Notwithstanding any deviation from the Budget, the DIP Credit Parties may, in their discretion and pending resolution of any objection of the DIP Agent

- 21 -

to such deviation, continue to make DIP Credit Extensions consistent with the Budget with or without the proposed change or to the extent the DIP Credit Parties deem it necessary to do so to protect or preserve the DIP Collateral (or the validity, perfection, or priority of the DIP Liens or Prepetition Security Interests thereon) or to enhance the likelihood or timing of repayment of the DIP Obligations and Prepetition Lender Debt

2.  **Execution, Delivery and Performance of DIP Financing Documents**. The DIP Financing Documents may be executed and delivered on behalf of each Debtor by any officer, director, or agent of such Debtor, who by signing shall be deemed to represent himself or herself to be duly authorized and empowered to execute such DIP Financing Documents and amendments for and on behalf of such Debtor; the DIP Credit Parties shall be authorized to rely upon any such person's execution and delivery of any of the DIP Financing Documents and any amendments thereto as having done so with all requisite power and authority to do so; and the execution and delivery of any of the DIP Financing Documents or any amendments thereto by any such person on behalf of such Debtor shall be conclusively presumed to have been duly authorized by all necessary corporate, limited liability company, or other entity action (as applicable) of such Debtor. Upon execution and delivery thereof, each of the DIP Financing Documents and any amendments thereto shall constitute valid and binding obligations of each Debtor, enforceable against each Debtor to the extent and in accordance with their terms for all purposes during its Chapter 11 Case and any subsequently converted case of each Debtor under Chapter 7 of the Bankruptcy Code (a "*Successor Case*"), and after the dismissal of any Chapter 11 Case. Subject to the provisions of paragraph 23 hereof, no obligation of, or payment, transfer or grant of security by, any Debtor under any DIP Financing Documents or pursuant to this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the

- 22 -

Bankruptcy Code or under any applicable non-bankruptcy law (including, without limitation, under sections 502(d), 544, 547, 548, 549 or 550 of the Bankruptcy Code or under any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or be subject to any defense, reduction, setoff, recoupment or counterclaim.   In furtherance of the provisions of paragraph 1 of this Interim Order, each Debtor is authorized to (i) do and perform all acts, (ii) make, execute and deliver all DIP Financing Documents, and (iii) pay all documented and actually incurred fees, costs and expenses, in each case as may be necessary or, in the discretion of the DIP Agent, desirable to give effect to any terms and conditions of the DIP Financing Documents and any amendments thereto, to validate and continue the perfection of the DIP Liens, or as otherwise required or contemplated by the DIP Financing Documents and any amendments thereto.

3.     **DIP Liens**.  As security for the Debtors' timely payment and performance of all DIP Obligations, the DIP Agent shall have, for the benefit of the DIP Credit Parties, and is hereby granted, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens upon all of the DIP Collateral (collectively, the "***DIP Liens***"), in the priorities set forth herein. Subject to the Carve-Out, the DIP Liens shall be:

(a)     Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected, first priority (except to the extent provided otherwise in this sentence) senior liens on and security interests in all DIP Collateral that is not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date (collectively, the "***Unencumbered Property***").

(b)     DIP Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected security interests

- 23 -

and liens upon the DIP Collateral, which security interests and liens shall be junior to (but only to) any properly perfected, valid, enforceable, and unavoidable security interests and liens in existence on the Petition Date with respect to any Prepetition Collateral, except as otherwise provided in paragraph 3(c) hereof.

(c)     <u>Priming DIP Liens</u>.    Pursuant to section 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected security interests and liens upon any Prepetition Collateral, which security interests and liens shall in all respects be prior and senior in priority to (1) the Prepetition Security Interests and the Prepetition Lender Adequate Protection Liens (as defined in paragraph 7(a) below) with respect to such Prepetition Collateral, (2) the Cardinal Liens and Cardinal Adequate Protection Liens (as defined in paragraph 8(a) below) with respect to the Cardinal Collateral, and (3) any security interest or other lien on DIP Collateral that on the Petition Date was unperfected, is invalid, unenforceable or avoidable, or is equitably or contractually subordinated to the DIP Liens or the Prepetition Security Interests.

(d)     <u>Liens Senior to Certain Other Liens</u>. Neither the DIP Liens nor the Adequate Protection Liens (as defined in paragraph 8(a) below) shall be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of any Debtor or its estate under section 551 of the Bankruptcy Code, (B) any lien or security interest of any lessor or landlord under any agreement or applicable state law to the extent any such lien has been waived in favor of any of the Prepetition Security Interests, (C) except to the extent the DIP Financing Documents expressly allow a postpetition lien to have priority over the DIP Liens, any liens granted by any Debtor to other Persons or otherwise arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any Cardinal Vendor, or, subject to entry of the Final Order, any Governmental Authority (as defined

- 24 -

in the DIP Loan Agreement) for any liability of any Debtor, or (D) any intercompany or affiliate liens or security interests of any Debtor; (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code or otherwise; or (iii) subject to sections 510, 549 or 550 of the Bankruptcy Code.  In no event shall any Person who pays (or, through the extension of credit to any Debtor, causes to be paid) any of the DIP Obligations be subrogated, in whole or in part, to any rights, remedies, interests, claims, privileges, liens or priorities granted to or in favor of, or conferred upon, any DIP Credit Party by the terms of any DIP Financing Documents or this Interim Order unless such Person contemporaneously causes Payment in Full[6] of all of the DIP Obligations and the Prepetition Lender Debt.

(e)    <u>Avoidance Claims and Proceeds</u>.  The DIP Liens shall extend to (i) proceeds realized from the successful prosecution or settlement of any Debtor's claims and causes of action pursuant section 549 and, (ii) subject to entry of the Final Order, all of each Debtor's claims and causes of action pursuant to sections 502(b), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code (the "***Avoidance Claims***"), and proceeds (the "***Avoidance Proceeds***") realized from the successful prosecution or settlement of the Avoidance Claims.  In no event shall any Debtor be authorized to grant a security interest in or lien upon any Avoidance Proceeds (other than DIP Liens) or with respect to any Avoidance Claims.

(f)    <u>Continuation of Liens</u>.  Subject to paragraph 23 hereof, the Prepetition Security Interests, the Prepetition Lender Adequate Protection Liens (as defined in paragraph 7(a) below), and, subject to entry of the Final Order, the DIP Liens that prime the Prepetition

---

[6]The term "***Payment in Full***" (i) when used in reference to any Prepetition Lender Debt, shall have the meaning ascribed to "Payment in Full" in the Prepetition Loan Agreement, provided that Payment in Full of the Prepetition Lender Debt shall not occur unless and until the Challenge Deadline (as defined in paragraph 22 below) expires without any Challenge (as defined in paragraph 22 below) having been timely asserted; and (ii) when used in reference to the DIP Obligations, shall have the meaning ascribed to "Payment in Full" in the DIP Loan Agreement.

Security Interests, are continuing liens and the Prepetition Collateral and DIP Collateral are and will continue to be encumbered by such liens in light of the integrated nature of the DIP Facility, the DIP Financing Documents, and the Prepetition Loan Documents.

4.    **Superpriority Claims**. All DIP Obligations shall constitute allowed superpriority claims (the "***Superpriority Claims***") against each Debtor (without the need to file any proof of claim) pursuant to section 364(c)(1) of the Bankruptcy Code and subject only to the Carve-Out (defined below), and shall have priority in right of payment over (i) all other obligations, liabilities and indebtedness of such Debtor, whether now in existence or hereafter incurred by such Debtor, (ii) all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and (iii) all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507, 546, 552(b), 726, 1113, or 1114 of the Bankruptcy Code. Such Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and shall be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof including (1) all Prepetition Collateral, (2) subject to entry of the Final Order, Avoidance Proceeds and, (3) DIP Collateral.

5.    **Repayment**.

(a)    <u>Repayment of Prepetition Lender Debt</u>.  Subject to paragraph 23 hereof, the Prepetition Lender Debt shall be paid as and to the extent provided in paragraph 7 of this Interim Order, as part of the adequate protection to be provided to the Prepetition Credit Parties. Subject to entry of the Final Order, and as and to the extent provided therein, the DIP Lenders shall fund under the DIP Facility (to the extent that Payment in Full of the Prepetition Lender Debt has not theretofore occurred pursuant to paragraph 7 of this Interim Order) one or more DIP

- 26 -

Loans in an amount sufficient to cause Payment in Full of, or cash collateralize, all of the Prepetition Lender Debt, and in such event the Debtors shall be deemed to have requested a funding of one or more DIP Loans to the extent requested by the DIP Agent.

(b)    _Repayment of DIP Obligations_.  The DIP Obligations shall be due and payable, and shall be paid, as and when provided in the DIP Financing Documents and as provided herein, without defense, offset, recoupment or counterclaim.  Without limiting the generality of the foregoing, in no event shall any Debtor be authorized to offset or recoup any amounts owed, or allegedly owed, by any Prepetition Credit Party or any DIP Credit Party to any Debtor or any Debtor's subsidiaries or affiliates against any of the DIP Obligations without the prior written consent of each Prepetition Credit Party or DIP Credit Party that would be affected by any such offset or recoupment, and no such consent shall be implied from any action, inaction or acquiescence by any Prepetition Credit Party or DIP Credit Party.

6.    **Cash Collateral**.

(a)    _Collection Accounts_.  To the extent required by the DIP Financing Documents, each Debtor shall cause all Cash Collateral (other than DIP Loan Proceeds) to be promptly deposited in an account or accounts designated by the DIP Agent (each, a "**_Collection Account_**").  Prior to the deposit of Cash Collateral to any Collection Account, each Debtor shall be deemed to hold such proceeds in trust for the benefit of the DIP Credit Parties and the Prepetition Credit Parties.  The DIP Agent shall be entitled to apply such Cash Collateral to the payment of the Prepetition Lender Debt and the DIP Obligations, in each case in such order of application as the DIP Agent may elect from time to time.

(b)    _Use of Cash Collateral_.  The Debtors may use DIP Loan Proceeds constituting Cash Collateral for all purposes for which they may be used under the DIP Loan

- 27 -

Agreement and this Interim Order. Any Cash Collateral securing the Prepetition LCs as of the Petition Date (the "*LC Cash Collateral*") shall continue to secure all of the DIP LCs. The Debtors may use Cash Collateral not consisting of DIP Loan Proceeds and any LC Cash Collateral solely (i) to fund the Carve-Out, (ii) to pay Prepetition Lender Debt and DIP Obligations, and (iii) in the case of any obligations in respect of DIP LCs and other contingent DIP Obligations, to provide cash collateral in accordance with the DIP Loan Agreement for any such contingent obligations. The Debtors may not use any LC Cash Collateral for any purpose other than to secure LC Obligations and other DIP Obligations under the DIP Facility.

7.    **Adequate Protection of Prepetition Credit Parties**. As adequate protection of its interests in the Prepetition Collateral, the Prepetition Agent, on behalf of the Prepetition Credit Parties, is entitled, pursuant to sections 105, 361, 363 and 364 of the Bankruptcy Code, to claims and other protections (the "*Prepetition Lender Adequate Protection Claims*") in an amount equal to the Collateral Diminution. As used in this Interim Order, the term "*Collateral Diminution*" shall mean an amount equal to the aggregate diminution in the value in any Prepetition Credit Party's interest in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date for any reason, including, without limitation, any such diminution resulting from the use of Cash Collateral; the priming of any Prepetition Security Interests in the Prepetition Collateral by the DIP Liens pursuant to this Interim Order; the depreciation, sale, loss, use, or collection by any Debtor (or any other decline in value) of such Prepetition Collateral; the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; or the subordination of liens and priority claims in connection with the Carve-Out, in each case to the fullest extent provided under the Bankruptcy Code. The Prepetition Agent is hereby granted, as adequate protection but subject to the rights of third parties preserved under

- 28 -

paragraph 23 hereof, the following for the benefit of the Prepetition Credit Parties:

(a)    <u>Prepetition Lender Adequate Protection Liens</u>.  The Prepetition Agent, for the benefit of the Prepetition Credit Parties, is hereby granted by this Interim Order (effective and perfected upon the date of entry of this Interim Order and without the necessity of the execution, filing or recording by any Debtor, the Prepetition Agent or any other Prepetition Credit Party of any security agreement, pledge agreement, mortgage, deeds of trust, financing statement or other agreement), replacement security interests in and liens on all of the DIP Collateral (the "***Prepetition Lender Adequate Protection Liens***").   The Prepetition Lender Adequate Protection Liens shall be junior and subordinate to (i) the Carve-Out, (ii) the DIP Liens, and (iii) any valid, perfected, enforceable, and unavoidable security interest in or lien upon any Prepetition Collateral that, on the Petition Date, was senior to and had priority over the Prepetition Security Interests in such Prepetition Collateral. The Prepetition Lender Adequate Protection Liens shall not be subject to sections 506(c) (effective upon entry of the Final Order), 510(c), 549, or 550 of the Bankruptcy Code, and no lien avoided and preserved for the benefit of any estate pursuant to section 510 of the Bankruptcy Code shall be made *pari passu* with or senior to any Prepetition Lender Adequate Protection Liens.

(b)    <u>Priority of Prepetition Lender Adequate Protection Claims</u>.   The Prepetition Lender Adequate Protection Claims are allowed as priority administrative claims pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and, subject to the Carve-Out and the Superpriority Claims, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, including, without limitation, (i) any administrative claim in any

- 29 -

Successor Case, and (ii) any intercompany claim between or among the Debtors for reimbursement, contribution, indemnification, or otherwise to the extent constituting an administrative expense claim of any Debtor.

(c)    Interest Payments.  Until Payment in Full of the Prepetition Lender Debt, the Prepetition Agent, for the benefit of the Prepetition Credit Parties, shall be entitled to receive as additional adequate protection cash payments of interest each month, in arrears, on the first day of the month, at the applicable non-default rate of interest under the Prepetition Loan Documents (including, for the avoidance of doubt, payment of all prepetition accrued and unpaid interest under the Prepetition Loan Documents); provided, however, that the Prepetition Credit Parties reserve all rights to seek payment of interest on the principal amount of the Prepetition Lender Debt at the default rate under the Prepetition Loan Documents, including, for any month in which interest was paid postpetition at the non-default rate, the difference between interest calculated at the default rate and interest calculated at the non-default rate as of the date of payment.

(d)    Application of Prepetition Receivable Collections.  All proceeds and collections on or after the Petition Date in respect of any accounts receivable or payment intangibles of any Debtor, and all other proceeds received by any Debtor, that arose from any sale, lease or other disposition of any DIP Collateral or the rendition of any services by any Debtor (collectively, the "*Prepetition Receivable Collections*") shall be promptly turned over to the Prepetition Agent to be applied by it to pay (or, in the case of contingent obligations, to cash collateralize) the Prepetition Lender Debt in accordance with the terms of the Prepetition Loan Documents until Payment in Full of the Prepetition Lender Debt; provided, however, that Prepetition Receivables Collections shall not include proceeds from the sale of real estate in

- 30 -

Jacksboro, Texas and Bridgeport, Texas used to repay mortgage debt owed by Debtors Summit Properties-Jacksboro, LLC and Summit Properties-Bridgeport, LLC, respectively. The Prepetition Agent shall be entitled to assume that all deposits to the Collection Account and all collections received by any Debtor and turned over to Prepetition Agent after the Petition Date constitute Prepetition Receivable Collections until such time as Prepetition Agent has received and applied to the Prepetition Lender Debt an amount equal to the aggregate value of all Prepetition Collateral consisting of accounts receivable and payment intangibles on the books and records of Debtors as of the Petition Date.

(e)    Use of Prepetition Inventory.    In consideration of each Debtor's use, consumption, sale or other disposition of any inventory (together with packaging materials and labels, collectively, "*Inventory*") that was in existence on the Petition Date (collectively, "*Prepetition Inventory*"), to the extent the use, consumption, sale or other disposition creates an account receivable therefor owing to any Debtor, the Debtors shall pay to the Prepetition Agent, concurrently with any use, consumption, sale or other disposition thereof, the gross book value (in the manner reported to the Prepetition Agent on the Debtors' prepetition borrowing base certificates, which value reflects lower of cost or market adjustments consistent with past practices) of such Prepetition Inventory, and the Prepetition Agent shall be authorized to apply all such payments to the Prepetition Lender Debt (in such order of application as the Prepetition Agent may elect in its discretion consistent with the Prepetition Loan Agreement) until Payment in Full of the Prepetition Lender Debt. Based upon representations of the Debtor representatives at or prior to the Interim Hearing, the total gross book value of all Prepetition Inventory as of the Petition Date was approximately $42.5 million (the "*Prepetition Inventory Value*"), and, therefore, the aggregate of all payments made to the Prepetition Agent pursuant to the provisions

- 31 -

of this subparagraph shall not exceed such value. For purposes of implementing this measure of adequate protection, it shall be assumed that each Debtor's use, consumption, sale or other disposition of any Inventory after the Petition Date constitutes a use of Prepetition Inventory until the aggregate amount of the payments received by the Prepetition Agent under this subparagraph equals the Prepetition Inventory Value. The DIP Credit Parties are authorized to make DIP Loans in amounts sufficient to satisfy the Debtors' payment obligations under this subparagraph and to disburse such DIP Loans directly to the Prepetition Agent for application to the Prepetition Lender Debt. All such DIP Loans shall be entitled to all of the benefits and security of the DIP Financing Documents and this Interim Order.

(f)    Application of Non-Ordinary Course Proceeds. All Non-Ordinary Course Proceeds (as defined in the DIP Loan Agreement) will be presumed to constitute and arise from DIP Collateral existing on the Petition Date and shall be applied (or, despite any prior application, reapplied) to pay, or in the case of contingent obligations, to cash collateralize, the Prepetition Lender Debt or the DIP Obligations in such order of application as the Prepetition Agent and the DIP Agent shall elect, in their sole discretion, until Payment in Full of the Prepetition Lender Debt and the DIP Obligations  If Non-Ordinary Course Proceeds are applied to the Prepetition Lender Debt, then such application shall be as provided in the Prepetition Loan Agreement; and if Non-Ordinary Course Proceeds are applied to the DIP Obligations, then such application shall be as provided in the DIP Loan Agreement.

(g)    Fees and Expenses of Professionals for Prepetition Credit Parties. As additional adequate protection, and notwithstanding any limitations in the Budget, the Debtors shall reimburse the Prepetition Credit Parties for (i) the documented and actually incurred fees and expenses of professional retained by them (the "***Prepetition Professionals***"), including, but

- 32 -

not limited to, the documented and actually incurred fees and disbursements of legal counsel, financial advisors, appraisers and other third-party consultants, incurred by them prior to the Petition Date and reimbursable to the Prepetition Credit Parties pursuant to the Prepetition Loan Documents, and (ii) on a current basis, the documented and actually incurred fees and expenses of the Prepetition Professionals, incurred by the Prepetition Credit Parties on or subsequent to the Petition Date and reimbursable to them under and pursuant to the Prepetition Loan Documents. The Debtors shall pay the documented and actually incurred fees, expenses and disbursements set forth in this paragraph 7(g) no later than ten (10) Business Days after the receipt by the Notice Parties (as defined below) of invoices therefor (the "*Invoiced Fees*") (which invoices may be redacted for protection of any applicable privilege or the work product doctrine) and without the necessity of filing formal fee applications, regardless of whether such amounts arose or were incurred before or after the Petition Date; provided, however, that the Debtors, the Official Committee of Unsecured Creditors (or, if more than one statutory committee is appointed, such committees being jointly and severally referred to as the "*Committee*"), and the U.S. Trustee may challenge the reasonableness of any portion of the Invoiced Fees (the "*Disputed Invoiced Fees*") if, within ten (10) days after receipt by the Notice Parties of the relevant invoices therefor, (i) the Debtors pay in full all of the Invoiced Fees other than the Disputed Invoiced Fees and (ii) the Debtors, the Committee, or the U.S. Trustee notifies the Prepetition Agent and each affected Prepetition Lender of the objection in writing which, if unable to be resolved consensually within a reasonable time, shall be followed by the filing with this Court of a motion or other pleading requesting a determination of allowance or disallowance of the Disputed Invoiced Fees) setting forth the specific basis for each objection to the Disputed Invoiced Fees. The Debtors shall pay any Disputed Invoiced Fees promptly upon approval by

this Court, to the extent of such approval. As used herein, the term *"Notice Parties"* shall mean primary counsel of record for the Debtors, primary counsel of record for the Committee, primary counsel of record for the DIP Agent, counsel of record for BAML, and the U.S. Trustee, each as specified in Paragraph 40 below.

(h)    <u>Reservation of Rights</u>.  Nothing herein shall be deemed to be a waiver by any Prepetition Credit Party of its right to request additional or further protection of its interests in any Prepetition Collateral, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner for any Debtor or the conversion or dismissal of any of these Chapter 11 Cases, to object to any proposed sale or other disposition of any Debtor's assets under section 363 of the Bankruptcy Code or otherwise, to accept or reject any plan of reorganization or liquidation, or to request any other relief in these Chapter 11 Cases; nor shall anything herein or in any of the DIP Financing Documents constitute an admission by a Prepetition Credit Party regarding the quantity, quality or value of any collateral securing the Prepetition Lender Debt or constitute a finding of adequate protection with respect to the interests of the Prepetition Agent in any DIP Collateral.  The Prepetition Credit Parties shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of section 507(b) of the Bankruptcy Code in connection with any use, sale, encumbering or other disposition of any of the DIP Collateral, to the extent that the protections afforded by this Interim Order to the Prepetition Security Interests proves to be inadequate.

(i)    <u>Reporting and Information Rights</u>.    Until Payment in Full of the Prepetition Lender Debt, the Prepetition Agent shall be entitled to the same reporting, notification and other information rights as the DIP Agent under the DIP Financing Documents.

8.    **Adequate Protection of Cardinal Vendors.** As adequate protection of their

- 34 -

interests in the Cardinal Collateral, the Cardinal Vendors are entitled, pursuant to sections 105, 361, 363 and 364 of the Bankruptcy Code, to claims and other protections in an amount equal to the Cardinal Collateral Diminution in respect of the Cardinal Liens (the "*Cardinal Adequate Protection Claims*," together with the Prepetition Lender Adequate Protection Claims, the "*Adequate Protection Claims*"). As used in this Interim Order, "*Cardinal Collateral Diminution*" shall mean an amount equal to the aggregate diminution in the value of the Cardinal Vendors' interest in the Cardinal Collateral from and after the Petition Date for any reason, including, without limitation, any such diminution resulting from the use of Cash Collateral; the priming of the Cardinal Liens in the Cardinal Collateral by the DIP Liens pursuant to this Interim Order; the depreciation, sale, loss, use, or collection by any Debtor (or any other decline in value) of such Cardinal Collateral; the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; or the subordination of liens and priority claims in connection with the Carve-Out, in each case to the fullest extent provided under the Bankruptcy Code.  The Cardinal Vendors are hereby granted, as adequate protection but subject to the rights of third parties preserved under paragraph 23 hereof, the following:

(a)    Cardinal Adequate Protection Liens.  The Cardinal Vendors are hereby granted by this Interim Order (effective and perfected upon the date of entry of this Interim Order, without the necessity of the execution, filing or recording by any Debtor or the Cardinal Vendors of any security agreements, pledge agreements, mortgages, deeds of trust, financing statements or other agreements) replacement security interests in and liens on all of the DIP Collateral consisting of the same types of the Debtors' property to which the Cardinal Liens attached prepetition (the "*Cardinal Adequate Protection Liens*" and collectively with the Prepetition Lender Adequate Protection Liens, the "*Adequate Protection Liens*") provided that

- 35 -

the Cardinal Adequate Protection Liens will attach to Avoidance Proceeds only upon entry of the Final Order. The Cardinal Adequate Protection Liens shall be junior and subordinate to (i) the Carve-Out, (ii) the DIP Liens, (iii) any valid, perfected, enforceable, and unavoidable security interest in or lien upon any Prepetition Collateral that, on the Petition Date, was senior to and had priority over the Cardinal Liens in such Prepetition Collateral, and (iv) the Prepetition Security Interests, and the Adequate Protection Liens in the DIP Collateral. The Cardinal Adequate Protection Liens shall not be subject to sections 506(c) (effective upon entry of the Final Order), 549, or 550 of the Bankruptcy Code, and no lien avoided and preserved for the benefit of any estate pursuant to section 510 of the Bankruptcy Code shall be made pari passu with or senior to any Cardinal Adequate Protection Liens.

(b)    <u>Priority of Cardinal Adequate Protection Claims</u>.  The Cardinal Adequate Protection Claims are to be allowed as priority administrative claims pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and, subject to the Carve-Out and the Superpriority Claims, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, including, without limitation, the rights of each Debtor and any successor trustee in these Chapter 11 Cases or any Successor Case.

9.    **Payments Free and Clear**.  All payments or proceeds remitted (a) to the DIP Agent on behalf of any DIP Credit Party or (b) to the Prepetition Agent on behalf of any Prepetition Credit Parties, in each case pursuant to the provisions of this Interim Order or any subsequent order of this Court, shall be received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim, charge, assessment or other

- 36 -

liability arising out of or based on, directly or indirectly, section 506(c) (subject to entry of the Final Order) or the "equities of the case" exception of 552(b) of the Bankruptcy Code (subject to entry of the Final Order), subject, with respect to payments on account of the Prepetition Lender Debt, only to any timely challenges by third parties permitted by paragraph 23 hereof.

10.    **Section 506(c) Claims**.  Subject to entry of the Final Order, no costs or expenses of administration shall be imposed upon any DIP Credit Party, any Prepetition Credit Party or any of the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of such DIP Credit Party or Prepetition Credit Party, as the case may be, and no such consent shall be implied from any action, inaction or acquiescence by any DIP Credit Party or Prepetition Credit Party, as applicable.

11.    **Fees and Expenses of Estate Professionals**.  So long as no Event of Default (as defined in paragraph 18 below) has occurred and is continuing, each Debtor is authorized to use DIP Loan Proceeds to pay such compensation and expense reimbursement (collectively, "*Estate Professional Fees*") of professional persons (including, without limitation, attorneys, financial advisors, accountants, investment bankers, appraisers, and consultants) retained with Court approval by any Debtor (the "*Debtor Professionals*"), by the Committee (the "*Committee Professionals*"), or by any examiner or other Person appointed by or retained with the approval of this Court (the Debtor Professionals, the Committee Professionals, and such other professional persons retained by the examiner or other Persons appointed by or retained with the approval of this Court are referred to collectively as the "*Estate Professionals*"), to the extent that such compensation and expense reimbursement is authorized and approved by this Court; provided, however, that, notwithstanding anything herein or in any other order of this Court to the contrary, no DIP Loan Proceeds or any portion of the Carve-Out shall be used to pay Estate Professional

- 37 -

Fees incurred for any Prohibited Purpose (as defined in paragraph 13 hereof). If any Estate Professional Fees at any time paid to any Estate Professional are subject to refund, rebate or disgorgement, then such funds shall be remitted to the DIP Agent for application to the DIP Obligations.

        12.    **Carve-Out**.

        (a)    <u>Priority and Extent of Carve-Out</u>.    Subject to the terms, conditions, and limitations contained in this Paragraph 12, the DIP Liens, the Superpriority Claims, the Pre-Petition Security Interests, the Adequate Protection Liens, and the Adequate Protection Claims shall be subject and subordinate to the following (collectively, the "***Carve-Out***"):

        (i) all fees required to be paid to the Clerk of this Court pursuant to 28 U.S.C. § 156(c) and to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) (collectively, the "***Statutory Fees***"); plus

        (ii) the allowed fees and expenses actually incurred by Debtor Professionals and Committee Professionals on or after the Petition Date in a cumulative aggregate sum of:

        (x) for the period prior to the delivery of a Carve-Out Trigger Notice (as defined below), an amount not to exceed the lesser of (A) the aggregate weekly amounts budgeted to be funded in advance for each Debtor Professional and Committee Professional for such week in accordance with the Budget, and (B) the actual amount of allowed Estate Professional Fees for each Estate Professional incurred on or after the Petition Date up to, through and including the date a Carve-Out Trigger Notice is delivered (the "***Pre-Trigger Professional Fees***") subject in all respects to the terms of this Interim Order, the Final Order,

- 38 -

and any other interim or other compensation order entered by the Bankruptcy Court; provided, however, that to the extent that any DIP Obligations remain outstanding, solely for purposes of calculating the amount of the Carve-Out, Pre-Trigger Professional Fees shall not exceed $5,250,000 in the aggregate (the "*Pre-Trigger Cap*"); and

(y) beginning the first day after the delivery by the DIP Agent of a Carve-Out Trigger Notice (which for the avoidance of doubt may be by electronic mail) to the Notice Parties, the fees and expenses incurred by the Debtor Professionals in an aggregate amount not to exceed $500,000. Nothing in this Interim Order shall be construed (1) to impair the ability of any interested party to object to the fees or expenses of any Estate Professional, (2) as a consent to the allowance of any Estate Professional Fee of any Estate Professional, (3) as an undertaking by any of the DIP Credit Parties to be responsible for payment of any Estate Professional Fees in connection with the Chapter 11 Cases or any Successor Cases, or (4) to obligate any DIP Credit Party or Pre-Petition Credit Party to pay (or constitute a guarantee of payment of) any Estate Professional Fees. In no event shall the Carve-Out, or the funding of any DIP Loans or use of Cash Collateral to satisfy the Carve-Out, result in any reduction in the amount of any DIP Obligations or Pre-Petition Lender Debt, the security therefor, or the obligations of the Debtors to pay same in accordance with the Pre-Petition Loan Documents or the DIP Financing Documents, as applicable. The DIP Agent shall be entitled to maintain a reserve (the "*Reserve*") against the Borrowing Base under (and as defined in) the DIP Loan Agreement in the amount of $1,700,000

- 39 -

(the "*Initial Reserve*") on the Petition Date.  From and after the Petition Date, the amount of the Reserve shall be the lesser of: (A) the sum of (1) at any given time, the amount of budgeted fees and expenses of Debtor Professionals and Committee Professionals (as set forth in the Budget) for the current week, *plus* (2) the amounts of any prior weekly budgeted fees and expenses of Debtor Professionals and Committee Professionals (as set forth in the Budget) that the Debtors have failed to fund into the Carve-Out Account in accordance with paragraph 12(c) below, *plus* (3) $1,000,000, and (B) the sum of $6,250,000 minus the amount that the Debtors have funded into the Carve-Out Account in accordance with paragraph 12(c) below.

(b)     The Carve-Out Trigger Notice: The term "*Carve-Out Trigger Notice*" shall mean a written notice delivered by the DIP Agent to the Notice Parties (which notice may be sent by email), which notice shall specify that it is a "Carve-Out Trigger Notice" and may be delivered at any time (x) concurrently with the closing of a sale or disposition of any Debtor's assets that is expected to provide sufficient funds to cause Payment in Full of all outstanding DIP Obligations (other than contingent obligations under the DIP Loan Agreement), (y) after or concurrently with the effective date of a Chapter 11 plan of reorganization or liquidation (whether proposed by one or more Debtors or any other interested party), or (z) after the occurrence of any Event of Default under (and as defined in) the DIP Loan Agreement.

(c)     Funding Carve-Out Account. The Debtors shall maintain a segregated account for the payment of allowed Estate Professional Fees of Debtor Professionals and Committee Professionals (the "*Carve-Out Account*"). Subject to the Budget and the terms and conditions of the DIP Financing Documents, the Debtors shall fund the Carve-Out Account,

- 40 -

including through borrowings under the DIP Credit Agreement, in accordance with the Budget on a weekly basis, in advance, until the delivery of a Carve Out Trigger Notice. Promptly after each such deposit into the Carve-Out Account, the Debtors shall provide the DIP Agent with evidence of each such deposit and the then-current balance in the Carve-Out Account at the time of, and after giving effect to, such deposit. Each deposit to the Carve-Out Account (whenever made) and amounts otherwise paid to Estate Professionals after issuance of a Carve-Out Trigger Notice shall reduce the Carve-Out (and the DIP Credit Parties' obligations with respect thereto) on a dollar-for-dollar basis. Upon the delivery of a Carve Out Trigger Notice, the Debtors shall deposit into the Carve-Out Account $500,000 plus amounts estimated to be equal to the unpaid Statutory Fees described in 12(a)(i) of this Interim Order, whereupon the Carve-Out and the DIP Credit Parties' obligations with respect thereto shall be deemed satisfied. The DIP Agent shall retain a first priority, perfected security interest in all funds in the Carve-Out Account to the extent of any surplus remaining after payment of all allowed Estate Professional Fees and Statutory Fees pursuant to the Carve-Out as set forth in this Paragraph 12, with such excess to be remitted to the DIP Agent as soon as reasonably practicable. The Debtors shall first use funds in the Carve-Out Account to pay any Estate Professional Fees or Statutory Fees that have been authorized by the Court to be paid, and shall not request advances under the DIP Loans to pay any such fees or expenses unless and until the funds in the Carve-Out Account have been exhausted. All funds deposited to the Carve-Out Account shall be used solely to pay the Estate Professional Fees and Statutory Fees comprising the Carve-Out until those items are paid in full, and thereafter any balance shall be remitted to the DIP Agent for application to the DIP Obligations, and thereafter any balance shall be remitted to the Pre-Petition Agent for application to the Pre-Petition Lender Debt. In no event shall the Carve-Out, or the funding of any DIP

RLF1 21993125v.1

Loans or use of any Cash Collateral to satisfy all or any part of the Carve-Out, result in any reduction in the amount of any DIP Obligations or Pre-Petition Lender Debt, the security therefor, or the joint and several obligations of the Debtors to pay same in accordance with the DIP Financing Documents or Pre-Petition Loan Documents, as applicable; and any funding of the Carve-Out with DIP Loan Proceeds shall be added to, and made a part of, the DIP Obligations, secured by all of the DIP Collateral and entitled to all of the benefits and protections granted by this Interim Order and the DIP Financing Documents.

13.    **Excluded Estate Professional Fees**.  Notwithstanding anything to the contrary in this Interim Order, neither the Carve-Out nor any proceeds of any DIP Credit Extensions or DIP Collateral (including, without limitation, Cash Collateral) shall be used to pay any Estate Professional Fees (including, without limitation, expense reimbursement to Estate Professionals) in connection with any of the following (each a *"Prohibited Purpose"*): (a) objecting to, seeking subordination or recharacterization of, contesting the validity or enforceability of, or asserting any defense, counterclaim, recoupment or offset to this Interim Order, any DIP Obligations or Prepetition Lender Debt, or the Prepetition Loan Documents, or the perfection or priority of any Prepetition Security Interest, provided that the Committee may be reimbursed up to $50,000 (the *"Investigation Budget"*) for fees and expenses incurred in connection with the investigation of, but not the commencement or pursuit of litigation, objection or any challenge to, any Prepetition Security Interests, Prepetition Lender Debt, or Prepetition Loan Documents; (b) asserting or prosecuting any claim, demand, or cause of action against any DIP Lender, the DIP Agent, or any Prepetition Credit Party (or any of their respective officers, directors, agents, employees, attorneys or affiliates), including, without limitation, any action, suit or other proceeding for breach of contract or tort or pursuant to sections 105, 506, 510, 544, 547, 548, 549, 550, 552 or

- 42 -

553 of the Bankruptcy Code, or under any other applicable law (state, federal or foreign), or otherwise; (c) seeking to modify any of the rights or remedies granted to the DIP Agent, any DIP Lender, or any Prepetition Credit Party under this Interim Order or any of the DIP Financing Documents; or (d) objecting to, contesting, delaying, preventing, or otherwise interfering in any way with the exercise of rights or remedies by any DIP Credit Party with respect to any DIP Obligations or DIP Collateral.

14.   **Preservation of Rights**.

(a)   Protection from Subsequent Financing Order.  Without the prior written consent of the DIP Credit Parties, there shall not be entered in any of these Chapter 11 Cases or in any Successor Case any order that authorizes the obtaining of credit or the incurrence of indebtedness by any Debtor (or any trustee or examiner) that is (i) secured by a security interest, mortgage or collateral interest or other lien on all or any part of the DIP Collateral that is equal or senior to the DIP Liens, the Adequate Protection Liens, or the Prepetition Security Interests or (ii) entitled to claims with priority administrative status that is equal or senior to the Superpriority Claims or the Adequate Protection Claims; provided, however, that nothing herein shall prevent the entry of an order that specifically provides for the Payment in Full of all of the DIP Obligations and Prepetition Lender Debt at closing from the proceeds of such credit or indebtedness, and the termination of any funding commitments under the DIP Facility.

(b)   Rights Upon Dismissal, Conversion or Consolidation.  If any of the Chapter 11 Cases are dismissed, converted or substantively consolidated with another case, then neither the entry of this Interim Order nor the dismissal, conversion or substantive consolidation of any of the Chapter 11 Cases shall affect the rights or remedies of any DIP Credit Party under the DIP Financing Documents or the rights or remedies of any DIP Credit Party or Prepetition

- 43 -

Credit Party under this Interim Order, and all of the respective rights and remedies hereunder and thereunder of each DIP Credit Party and each Prepetition Credit Party shall remain in full force and effect as if such Chapter 11 Case had not been dismissed, converted, or substantively consolidated. Until Payment in Full of all DIP Obligations and Prepetition Lender Debt has occurred, it shall constitute an Event of Default if any Debtor seeks, or if there is entered, any order dismissing any of the Chapter 11 Cases. If an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, the Adequate Protection Claims, the DIP Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until Payment in Full of all DIP Obligations and satisfaction of all Adequate Protection Claims, (ii) such Superpriority Claims, Adequate Protection Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest to the extent provided in this Interim Order, (iii) the other rights granted to the DIP Credit Parties and Prepetition Credit Parties by this Interim Order shall not be affected, and (iv) subject to entry of the Final Order, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)     Survival of Interim Order.  The provisions of this Interim Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases or any Successor Case; and all provisions in the DIP Financing Documents and the Prepetition Loan Documents that by their terms survive Payment in Full of the DIP Obligations and the Prepetition Lender Debt shall continue in full force and effect

- 44 -

notwithstanding such Payment in Full.

(d)    No Discharge.  None of the DIP Obligations shall be discharged by the entry of any order confirming a plan of reorganization or liquidation in any of these Chapter 11 Cases, and, pursuant to section 1141(d)(4) of the Bankruptcy Code, each Debtor is hereby deemed to have waived such discharge until Payment in Full of the DIP Obligations has occurred.

(e)    No Challenge to Credit Bid Rights.  No Debtor shall object to any DIP Credit Party or any Prepetition Credit Party credit bidding in any sale of DIP Collateral up to the full amount of the outstanding DIP Obligations and Prepetition Lender Debt (including in each case any accrued interest, fees and expenses), regardless of whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

(f)    No Marshaling/Lien Preservation.  Subject to entry of a Final Order, no DIP Credit Party or Prepetition Credit Party shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any DIP Collateral; and in no event shall any DIP Lien be subject to any prepetition or postpetition lien or security interest that is avoided and preserved for the benefit of any Debtor's estate pursuant to section 551 of the Bankruptcy Code.

(g)    No Requirement to File Claim for DIP Obligations.  Notwithstanding anything to the contrary contained in any prior or subsequent order of this Court, including, without limitation, any bar order establishing a deadline for the filing of proofs of claims or requests for payment of administrative expense treatment under section 503(b) of the Bankruptcy Code, no DIP Credit Party shall be required to file any proof of claim or request for payment of

- 45 -

administrative expenses with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Loan Agreement and the other DIP Financing Documents applicable thereto without the necessity of filing any such proof of claim or request for payment of administrative expenses; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity or enforceability of any of the DIP Financing Documents or of any of the DIP Obligations or prejudice or otherwise adversely affect any DIP Credit Party's rights, remedies, powers or privileges under any of the DIP Financing Documents, this Interim Order or applicable law.

15.    **Automatic Perfection of Liens**.  The DIP Liens and the Adequate Protection Liens shall be deemed valid, binding, enforceable and duly perfected upon entry of this Interim Order.  No Prepetition Credit Party, DIP Credit Party or Cardinal Vendor shall be required to file any UCC-1 financing statement, mortgage, deed of trust, assignment, pledge, security deed, notice of lien or any similar document or instrument or take any other action (including taking possession of any of the DIP Collateral) in order to validate the perfection of any DIP Liens or the Adequate Protection Liens, but all of such filings and other actions are hereby authorized by this Court.  The DIP Credit Parties shall be deemed to have "control" over all deposit accounts of any of the Debtors for all purposes of perfection under the Uniform Commercial Code or any other similar laws.  If the Prepetition Agent or DIP Agent shall, in its respective discretion, choose to file or record any such mortgage, deed of trust, assignment, pledge, security deed, notice of lien, financing statement, or other similar document or instrument, or take any other action to evidence the perfection of any part of the DIP Liens or the Adequate Protection Liens, each Debtor and its respective officers are authorized to execute, file and record any documents or instruments as the Prepetition Agent or DIP Agent shall request, and all such documents and

- 46 -

instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order. The DIP Agent may, in its discretion, file a certified copy of this Interim Order in any filing office in any jurisdiction in which any Debtor is organized or has or maintains any DIP Collateral or an office, and each filing office is ~~directed~~ authorized to accept such certified copy of this Interim Order for filing and recording. Any provision of any lease, license, contract or other agreement that requires the consent or approval of one or more counterparties in order for a Debtor to pledge, grant, sell, assign or otherwise transfer any such interest or the proceeds thereof is hereby found to be (and shall be deemed to be) inconsistent with the provisions of the Bankruptcy Code and shall have no force and effect with respect to the transactions granting DIP Liens or Adequate Protection Liens on such interest or the proceeds of any such transfer, assignment and/or sale thereof by any Debtor, in accordance with the DIP Financing Documents or this Interim Order.

16.    **No Superior Rights of Reclamation**.  Subject to entry of the Final Order, based on the continuation of the Prepetition Security Interests, the relation back of the DIP Liens, and the integrated nature of the DIP Facility and the Prepetition Loan Documents, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens.

17.    **Reimbursement of Expenses**.  All reasonable costs and expenses incurred by the DIP Agent, Regions and BAML, in their respective capacities as co-collateral agents ("*Co-Collateral Agents*", and each a "*Co-Collateral Agent*") (and, to the extent provided in the DIP Loan Agreement, the other DIP Credit Parties) shall form a part of the DIP Obligations and shall be paid by the Debtors in accordance with the terms of the DIP Financing Documents.  In no event shall any invoice or other statement submitted by any DIP Credit Party to any Notice Party

- 47 -

or any other interested person (or any of their respective Professionals) with respect to fees or expenses incurred by any professional retained by such DIP Credit Party operate to waive the attorney/client privilege, the work-product doctrine or any other evidentiary privilege or protection recognized under applicable law.

18.    **Amendments and Waivers**.  The Debtors and the DIP Credit Parties are hereby authorized to execute, deliver and implement, in accordance with the terms of the applicable DIP Financing Documents and without further order of this Court, any amendments to, modifications of, or waivers with respect to any of such DIP Financing Documents (and any fees, expenses, or other amounts payable in connection therewith) on the following conditions: (i) the amendment, modification, or waiver must not constitute a material change to the terms of such DIP Financing Documents, (ii) copies of the amendment, modification, or waiver must be served upon the Notice Parties and (iii) the amendment, modification or waiver does not adversely affect the rights of, or obligations owed to, any Governmental Authority. In the case of an amendment, modification, or waiver that effects a material change to the DIP Financing Documents, the Debtors shall provide notice (which shall be provided through electronic mail) to the Notice Parties, each of whom shall have five (5) days from the date of such notice to object in writing to such amendment, modification or waiver.  For purposes hereof, a "material change" shall mean a change to a DIP Financing Document that operates to (a) shorten the term of the DIP Facility or the maturity of the DIP Obligations, (b) increase the aggregate amount of the commitments of the DIP Lenders under the DIP Facility, (c) increase the rate of interest other than as currently provided in or contemplated by such DIP Financing Documents, (d) add specific Events of Default, or (e) enlarge the nature and extent of remedies available to the DIP Agent following the occurrence of an Event of Default.  Without limiting the generality of the foregoing, no

amendment of a DIP Financing Document that postpones or extends any date or deadline therein or herein (including, without limitation, the expiration of the term of the DIP Facility), nor any waiver of an Event of Default, nor any amendment of any sublimit with respect to letters of credit or swingline loans, shall constitute a "material change" and may be effectuated by Debtors and the DIP Credit Parties without the need for further approval of this Court. If all Notice Parties indicate that they have no objection to the amendment, modification or waiver (or if no objections are timely received), the Debtors may proceed to execute the amendment, modification or supplement, which shall become effective immediately upon execution. If a Notice Party timely objects to such amendment, modification or waiver, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or waiver. Any material modification, amendment or waiver that becomes effective in accordance with this paragraph 17 shall be filed with the Court.

19. **Events of Default; Remedies**.

(a) <u>Event of Default</u>. The occurrence of any of the following events, unless waived by the DIP Agent in writing and in accordance with the terms of the DIP Loan Agreement, shall constitute an event of default (an "***Event of Default***") of this Interim Order: (i) the failure of the Debtors to perform or meet any of the terms, provisions, covenants, or obligations under this Interim Order, or (ii) the occurrence of an "Event of Default" under (and as defined in) the DIP Loan Agreement.

(b) <u>Default Remedies</u>. Upon the occurrence and during the continuation of an Event of Default, (i) each DIP Credit Party shall be authorized to discontinue honoring any pending or future request for DIP Credit Extensions (or may honor and fund such requests, in their sole respective discretion); (ii) the DIP Agent may, in its discretion, terminate the DIP

- 49 -

Facility; (iii) the DIP Agent may, in its discretion, file with this Court and serve upon the Notice Parties a written notice (each, a "*Default Notice*") describing the Events of Default; and (iv) upon expiration of the Remedies Notice Period (as defined below) without any Remedies Objection (as defined below) having been filed, the DIP Agent and the Prepetition Agent shall be deemed to have received complete relief from the automatic stay of section 362 of the Bankruptcy Code to exercise all rights, powers, and remedies available to it under the DIP Financing Documents, the Prepetition Loan Documents, this Interim Order, the Final Order, and applicable law (collectively, the "*Default Remedies*"), without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order. The automatic stay otherwise applicable to the DIP Agent is hereby modified so that five (5) Business Days (as defined in the DIP Loan Agreement) after the sending by the DIP Agent to the Notice Parties of a Default Notice (the "*Remedies Notice Period*"), the DIP Agent shall be entitled to exercise its Default Remedies to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve-Out. The term "*Remedies Objection*" shall mean an objection filed with this Court prior to the expiration of the Remedies Notice Period by a Notice Party (or any other interested party in these Chapter 11 Cases) to the exercise of Default Remedies by the DIP Agent and/or the Prepetition Agent; [provided that the sole basis for any such objection shall be that no Event of Default has occurred or continues to exist.] Unless the Court orders otherwise, the automatic stay, as to the DIP Agent, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. During the pendency of a Remedies Objection, the DIP Credit Parties and the Prepetition Credit Parties shall forbear from exercising any remedies hereunder, but, unless they elect to do so in their sole discretion (which election will not constitute a waiver of any Event of Default), the DIP Credit

- 50 -

Parties shall not be obligated to provide any DIP Credit Extensions. Upon expiration of the Remedies Notice Period, the DIP Agent shall be permitted to exercise all Default Remedies without further order of or application or motion to the Court. Except as provided above in this paragraph 18(b), no Debtor shall be entitled to seek any relief (including, without limitation, relief under section 105 of the Bankruptcy Code) to the extent that such relief would impair, limit, delay or restrict the rights and remedies of the DIP Agent or Prepetition Agent as set forth in this Interim Order, any of the DIP Financing Documents or any of the Prepetition Loan Documents, as applicable, or applicable law. The DIP Agent's or Prepetition Agent's delay or failure to exercise rights and remedies under any DIP Financing Documents, any Prepetition Loan Documents, this Interim Order or applicable law shall not constitute a waiver of any of its rights and remedies hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed by the DIP Agent or Prepetition Agent, as applicable, in accordance with the terms of the DIP Financing Documents or the Prepetition Loan Documents, as applicable.

(c)  <u>Rights Cumulative</u>.  The rights, remedies, powers and privileges conferred upon any DIP Credit Party pursuant to this Interim Order shall be in addition to and cumulative with those contained in the DIP Financing Documents and created under applicable law.

20.  **<u>Loan Administration</u>**.

(a)  <u>Cash Dominion and Control</u>.  Subject to any Cash Management Order (as defined in the DIP Loan Agreement) entered in these cases, from and after entry of this Interim Order and until the Payment in Full of all Prepetition Lender Debt and DIP Obligations, the DIP Agent will have exclusive dominion and control over all Collection Accounts (as defined in the DIP Loan Agreement), and the DIP Agent shall be authorized to implement, and the Debtors

- 51 -

shall strictly comply with, the cash collection and payment provisions of the DIP Loan Agreement governing the collection of accounts, including, without limitation, sections 5.2 and 8.12 of the DIP Loan Agreement.

(b)    Inspection Rights; Budget Updates. As set forth in the DIP Financing Documents, representatives of the DIP Agent and Prepetition Agent shall be authorized, with prior notice to the Debtors, to visit the business premises of any Debtor and its subsidiaries to (i) inspect any DIP Collateral, (ii) inspect and make copies of any books and records of any Debtor, and (iii) verify or obtain supporting details concerning the financial information to be provided by any Debtor hereunder or under any of the DIP Financing Documents, and the Debtors shall facilitate the exercise of such inspection rights. The Debtors shall provide to the DIP Agent, the Prepetition Agent, the U.S. Trustee, and the Committee (if appointed) an updated Budget every four (4) weeks covering the next 13-week period, which shall be subject to the approval requirements set forth in the DIP Financing Documents.  In addition, each week, the Debtors shall provide the DIP Agent, and the Prepetition Agent with a variance report pursuant to the terms set forth in the DIP Financing Documents.

(c)    DIP Agent's Professionals.  The DIP Agent, each Co-Collateral Agent, and, to the extent provided in the DIP Loan Agreement, the DIP Credit Parties each is authorized to retain attorneys, appraisers, auditors, financial advisors, consultants, and other professionals (the "**DIP Credit Party Professionals**") in accordance with the DIP Loan Agreement, and all such DIP Credit Party Professionals shall be afforded reasonable access to the DIP Collateral and each Debtor's business premises and records for purposes of monitoring the businesses of Debtors, verifying each Debtor's compliance with the terms of the DIP Financing Documents and this Interim Order, and analyzing or appraising all or any part of the DIP Collateral. The

- 52 -

Debtors shall be liable for the documented and actually incurred fees and expenses of such DIP Credit Party Professionals to the extent provided in the DIP Financing Documents and paragraph 16 above.

21.    **Modification of Automatic Stay**.  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified and lifted to the extent necessary to implement the provisions of this Interim Order and the DIP Financing Documents, thereby permitting the DIP Agent and the Prepetition Agent to receive collections and proceeds of the DIP Collateral for application to the DIP Obligations or Prepetition Lender Debt as and to the extent provided herein, and the DIP Agent and the Prepetition Agent to file or record any UCC-1 financing statements, mortgages, deeds of trust, assignments, pledges, security deeds and other instruments and documents evidencing or validating the perfection of any DIP Liens or Adequate Protection Liens, and to enforce any DIP Liens and Adequate Protection Liens as and to the extent authorized by this Interim Order.

22.    **Effect of Appeal**.  Consistent with section 364(e) of the Bankruptcy Code, absent a stay pending appeal if any or all of the provisions of this Interim Order are hereafter modified, vacated or stayed on appeal:

(a)    such stay, modification or vacation shall not affect the validity of any obligation, indebtedness or liability incurred or liens granted by the Debtors to any DIP Credit Party, Prepetition Credit Party, or Cardinal Vendor prior to the effective date of such stay, modification or vacation, or the validity, enforceability or priority of any liens, rights or claims authorized or created under the original provisions of this Interim Order or pursuant to any of the DIP Financing Documents; and

(b)    any DIP Obligations prior to the effective date of such stay, modification

- 53 -

or vacation shall be governed in all respects by the original provisions of this Interim Order and the DIP Financing Documents, and each DIP Credit Party shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Liens and priorities granted to or for its benefit herein or pursuant to the applicable DIP Financing Documents, with respect to any such indebtedness, obligation or liability. All DIP Credit Extensions shall be deemed to have been made in reliance upon this Interim Order, and, therefore, the indebtedness resulting from such DIP Credit Extensions prior to the effective date of any stay, modification or vacation of this Interim Order cannot, as a result of any subsequent order in any of these Chapter 11 Cases, or any Successor Case of a Debtor, be extinguished or subordinated or deprived of the benefit or priority of the DIP Liens and the Superpriority Claims granted to the DIP Credit Parties under this Interim Order or the DIP Financing Documents.

23.    **Effect of Stipulations on Third Parties; Deadline for Challenges**.

(a)    Each Debtor's admissions, stipulations, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph E hereof, shall be binding upon such Debtor and any successor thereto (including, without limitation, any Chapter 7 trustee or Chapter 11 trustee appointed or elected for such Debtor) under all circumstances and for all purposes.

(b)    Each Debtor's admissions, stipulations, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph E hereof, shall be binding upon all other parties in interest (including, without limitation, the Committee, any examiner, or post-confirmation trustee or other fiduciary) under all circumstances and for all purposes unless and to the extent (a) such other party in interest (including the Committee) obtains requisite standing to do so and has timely and properly filed, in accordance with this

- 54 -

paragraph 22, an adversary proceeding or contested matter by no later than the Challenge Deadline (as defined below) (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Lender Debt or any Prepetition Security Interest or (B) otherwise asserting any defenses, claims, causes of action, counterclaims or offsets against any Prepetition Credit Party or its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in any way relating to any transactions, events, actions or failure to act under or in connection with any of the Prepetition Loan Documents (collectively, a "*Challenge*") and (b) this Court rules in favor of the plaintiff with respect to any such timely and properly filed Challenge. As used herein, the term "*Challenge Deadline*" means the earliest to occur of (A) the date that this Court enters an order confirming any chapter 11 plan of reorganization or liquidation proposed by any Debtor or other interested party, [(B) the date of entry of an order approving the sale of all or substantially all of the assets of any Debtor,] and (C) (i) in the case of a party in interest with requisite standing other than the Committee, 75 days after the date of entry of this Interim Order, (ii) in the case of the Committee, 60 days after the filing of notice of appointment of the Committee, or (iii) in each case of clauses (i) and (ii), any such later date agreed to in writing by the Prepetition Agent, in its sole discretion, or ordered by this Court for cause shown, after notice and an opportunity to be heard, provided that such motion for an order to extend the Challenge Deadline is filed with this Court prior to the expiration of the applicable Challenge Deadline as set forth in clause (i) or (ii) of this sentence. Notwithstanding the foregoing, if, prior to the Challenge Deadline as defined above, any of the Chapter 11 Cases is converted to a case under Chapter 7, or if a Chapter 11 trustee is appointed in any of the Chapter 11 Cases, the Challenge Deadline applicable solely to such trustee(s) shall be deemed extended for a period of fifteen (15) days and the admissions,

- 55 -

stipulations, agreements and releases in this Interim Order shall not be binding on any such trustee until the expiration of the extended Challenge Deadline. Nothing contained in this paragraph 23 increases the Investigation Budget. If within 14 days prior to the Challenge Deadline the Committee files a motion (to be heard by this Court not later than fourteen (14) days after the filing of the motion or as soon thereafter as this Court's calendar will permit, and none of the Debtors or Prepetition Credit Parties shall object to such motion being heard upon an expedited basis) in which the Committee seeks standing from this Court to pursue a Challenge and attaches to such motion a proposed complaint setting forth the basis for such Challenge, then, with respect only to such proposed challenge, the expiration of the Challenge Deadline shall be tolled until this Court rules on the motion seeking standing; provided that the Committee shall not be authorized to prosecute any such Challenge (including by way of discovery or motion) unless and until this Court shall have granted the Committee's motion seeking standing to pursue such Challenge.

(c)    If no such Challenge is timely and properly filed as of the applicable Challenge Deadline against a Prepetition Credit Party or this Court does not rule in favor of the plaintiff with respect to any Challenge, then for all purposes in these Chapter 11 Cases and in any Successor Case, (i) each Debtor's admissions, stipulations, agreements and releases in this Interim Order, including, without limitation, those contained in paragraph E of this Interim Order shall be binding on, in addition to the Debtors and their successors, all other parties in interest, including the Committee, any examiner, and only post-confirmation trustee or other fiduciary; (ii) the Prepetition Lender Debt owing to each Prepetition Credit Party shall constitute a fully secured allowed claim that is not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in each Chapter 11 Case and any Successor

- 56 -

Case; (iii) the Prepetition Security Interests in favor of each Prepetition Credit Party shall be deemed to have been, as of the Petition Date and thereafter, legal, valid, binding, perfected, first priority security interests and liens that are not subject to recharacterization, subordination, avoidance, nullification, or other defense, and shall not be subject to any other or further claim or challenge by the Committee or any other party in interest seeking to exercise the rights of any Debtor's estate, including, without limitation, any trustee, examiner, other fiduciary or any other successor in interest to a Debtor; and (iv) each Debtor (for itself, its estate and its successors and assigns) shall be deemed to have forever waived and released any and all claims (including, without limitation, all "Claims" as such term is defined in the Bankruptcy Code), counterclaims, actions, causes of action, defenses or setoff rights that such Debtor may have against such Prepetition Credit Party or any of its officers, directors, agents, employees, attorneys and affiliates and that arise out of or relate to any of the Prepetition Loan Documents or any action, inaction, or transactions thereunder, whether disputed or undisputed, at law or in equity, or known or unknown, including, without limitation, any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law. Even if a Challenge is properly filed on or before the applicable Challenge Deadline, each Debtor's admissions, stipulations, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph E of this Interim Order, shall nonetheless remain binding and preclusive as provided in paragraph 23(a) and, except as to those specific admissions, stipulations, agreements and releases were expressly challenged in such Challenge and as to which the plaintiff prevails on the merits, the first sentence of this paragraph 23(c). Nothing contained in this Interim Order shall vest or confer any Person, including the Committee, with

standing or authority to commence or prosecute, or participate in, any Challenge.  Upon a successful Challenge brought pursuant to this paragraph 23, the Court may fashion any appropriate remedy.

24.    **Indemnification**.

(a)    The indemnity provisions in the Prepetition Loan Documents and the DIP Financing Documents shall be valid and enforceable against the Debtors, and shall continue in full force and effect until Payment in Full of the Prepetition Lender Debt and the DIP Obligations and (ii) in the case of the Prepetition Loan Documents, expiration of the Challenge Period with no Challenge having been timely and properly filed against a Prepetition Credit Party or this Court having ruled or resolved such Challenge in favor of the respective Prepetition Credit Party in the event of such Challenge.

(b)    At any time requested by any (i) DIP Credit Party from and after the date of assertion of any Claims or Extraordinary Expenses (as defined in the DIP Loan Agreement) in respect of which the indemnities under the DIP Loan Agreement apply, or (ii) Prepetition Credit Party from and after the assertion of claims, losses, damages, liabilities or related expenses, in respect of which the indemnities under the Prepetition Loan Agreement apply, the Debtors shall deposit into an indemnity account with the DIP Agent or Prepetition Agent, as applicable, such amount as may reasonably be determined by the DIP Agent or Prepetition Agent, as applicable, to be the amount of any such asserted claim or demand, which indemnity account shall be subject to first priority liens of the DIP Agent, for the benefit of the DIP Credit Parties, and of the Prepetition Agent, for the benefit of the Prepetition Credit Parties, to be released only upon Payment in Full of the DIP Obligations or Prepetition Lender Debt, as applicable.

25.    **Debtors' Waivers**.  At all times during the Chapter 11 Cases, and whether or not

- 58 -

an Event of Default has occurred, each Debtor irrevocably waives any right that it may have to seek authority to (i) use Cash Collateral except to the extent expressly permitted in this Interim Order or a Final Order; (ii) obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code that do not provide for Payment in Full at closing of all DIP Obligations and Prepetition Lender Debt, other than from a DIP Credit Party on the terms and conditions set forth herein and in the DIP Financing Documents; (iii) challenge the application of any payments authorized by this Interim Order or a Final Order to the Prepetition Credit Parties pursuant to section 506(b) of the Bankruptcy Code or assert that the value of the Collateral is less than the amount of the Prepetition Lender Debt; (iv) propose or support a plan of reorganization or liquidation that does not provide for the Payment in Full of all DIP Obligations and the Prepetition Lender Debt on the effective date of such plan; or (v) seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of any DIP Credit Party or any Prepetition Credit Party as provided in this Interim Order or any of the DIP Financing Documents, as applicable, or a DIP Credit Party's or Prepetition Credit Party's exercise of such rights or remedies.

26. **Cardinal Intercreditor Agreement**. Pursuant to section 510 of the Bankruptcy Code, the provisions of the Cardinal Intercreditor Agreement shall continue in full force and effect during the pendency of the Chapter 11 Cases or any Successor Case, and all DIP Credit Parties, Prepetition Credit Parties and Cardinal Vendors shall be bound by the terms and provisions in the Cardinal Intercreditor Agreement except to the extent of any inconsistency with the provisions of this Interim Order, in which event the provisions of this Interim Order shall govern and control. All of the types and items of property that are included within the Cardinal

Collateral and that are created, acquired or arise after the Petition Date shall constitute Cardinal Collateral for all purposes of the Cardinal Intercreditor Agreement and this Interim Order.

27.    **Service of Interim Order**.  Promptly after the entry of this Interim Order, the Debtors shall mail, by first class mail, a copy of this Interim Order, the Motion (and all exhibits attached to the Motion), and a notice of the Final Hearing, to (without duplication) (i) the U.S. Trustee; (ii) counsel to the Prepetition Agent; (iii) counsel to the DIP Agent; (iv) counsel to BAML; (v) counsel to the Cardinal Vendors; (vi) the Internal Revenue Service; (vii) the Securities and Exchange Commission; (viii) the holders of the thirty (30) largest unsecured claims against the Debtors, on a consolidated basis; (ix) all parties known by a Debtor to hold or assert a material lien on any assets of a Debtor; and (x) any parties that have filed requests for notices under Rule 2002 of the Bankruptcy Rules, and shall file a certificate of service regarding same with the Clerk of this Court. Such service shall constitute good and sufficient notice of the Final Hearing and of the final relief sought in the Motion.

28.    **No Deemed Control; Exculpation; Release**.

(a)    Subject to entry of a Final Order in making any DIP Credit Extension as and when permitted by this Interim Order or the DIP Financing Documents, no DIP Credit Party and no Prepetition Credit Party shall be deemed to be in control of any Debtor or its operations or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar state or federal statute) with respect to the operation or management of such Debtor.

(b)    Nothing in this Interim Order, the DIP Financing Documents, or any other document related to the DIP Facility shall in any way be construed or interpreted to impose or

- 60 -

allow the imposition upon any DIP Credit Party or any Prepetition Credit Party any liability for any claims arising from the prepetition or postpetition activities of any Debtor in the operation of its business or in connection with its restructuring efforts. So long as a DIP Credit Party or Prepetition Credit Party complies with its obligations under the DIP Financing Documents and Applicable Law (i) such DIP Credit Party or Prepetition Credit Party shall not, in any way or manner, be liable or responsible for (A) the safekeeping of the DIP Collateral, (B) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (C) any diminution in the value thereof, or (D) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other Person; and (ii) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Debtors.

      (c)     Subject to the provisions of paragraph 23 hereof with respect to the Prepetition Credit Parties, each Debtor hereby forever, unconditionally and irrevocably releases, discharges and acquits the Prepetition Credit Parties and the DIP Credit Parties and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns (collectively, the "*Releasees*") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever to the extent arising out of, connected with, or relating to any and all acts, omissions, or events that have occurred (or, in the case of omissions, not occurred) prior to the entry of this Interim Order (collectively, the "*Released Claims*") whether or not any such Released Claims are known or unknown, foreseen or unforeseen, liquidated or unliquidated, arising in law or in equity or upon contract or tort or under any state or federal law or otherwise,

- 61 -

to the extent that any such Released Claims arise out of or relate in any way to the Prepetition Loan Documents, the DIP Financing Documents, and/or the transactions contemplated thereunder, any actions taken pursuant thereto, or omissions thereunder, including, without limitation, (A) any so-called "lender liability" or equitable subordination claims or defenses, (B) any and all claims and causes of action arising under the Bankruptcy Code, and (C) any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the DIP Liens, DIP Obligations, Prepetition Security Interests, or Prepetition Lender Debt. Each Debtor further waives and releases any defense, right of counterclaim, right of setoff or recoupment, or deduction with respect to the payment of any of the Prepetition Lender Debt or any of the DIP Obligations that it now has or may claim to have against any of the Releasees, to the extent arising out of, connected with, or relating to any and all acts, omissions, or events that have occurred (or, in the case of omissions, not occurred) prior to the entry of this Interim Order.

29. **Authorization to File Master Proof of Claim**. The Prepetition Agent shall not be required to file any proof of claim with respect to any of the Prepetition Lender Debt, all of which shall be due and payable in accordance with the applicable Prepetition Loan Documents, without the necessity of filing any such proof of claim; and the failure to file any such proof of claim shall not affect the validity or enforceability of any of the Prepetition Loan Documents or prejudice or otherwise adversely affect any Prepetition Credit Party's rights, remedies, powers or privileges under any of the Prepetition Loan Documents, this Interim Order, or applicable law. Notwithstanding the foregoing sentence, the Prepetition Agent is authorized and empowered (but shall not be required) to (i) file (and amend and/or supplement as it sees fit) a proof of claim and/or aggregate proof of claim in each Chapter 11 Case or any Successor Case on behalf of the Prepetition Credit Parties (with respect to a proof of claim filed by the Prepetition Agent with

- 62 -

respect to the Prepetition Lender Debt), (ii) file (and amend and/or supplement as it sees fit) a single proof of claim in the jointly administered lead case for any claim of the Prepetition Credit Parties in which case such proof of claim will be deemed to have been filed against each of the Debtors (a "***Master Proof of Claim***"), and (iii) collect and receive any monies or other property payable or distributable on account of any such claims and to share such payments or property with the Prepetition Credit Parties in accordance with the Prepetition Loan Documents and this Interim Order. Upon the filing of a Master Proof of Claim, each Prepetition Credit Party on whose behalf such Master Proof of Claim was filed shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against any Debtor under the applicable Prepetition Loan Documents, and the claim of each Prepetition Credit Party (and each of its respective successors and assigns) named in such Master Proof of Claim shall be treated as if each such entity had filed a separate proof of claim in each Chapter 11 Case. The Prepetition Agent shall not be required to amend a proof of claim or a Master Proof of Claim filed by it to reflect a change in the holder of a claim set forth therein or a reallocation among such holders of the claims asserted therein and resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect any right of any Prepetition Credit Party (or its successors in interest) to vote separately on any plan of reorganization or liquidation proposed in any of these Chapter 11 Cases or to file its own proof of claim, which claim, if filed, shall be in addition to, and not in lieu of, any other proof of claim filed by the Prepetition Agent. The Prepetition Agent shall not be required to attach to a Master Proof of Claim any instruments, agreements or other documents evidencing the obligations owing by any Debtor to any Prepetition Credit Party, which instruments, agreements or other

documents will be provided upon written request made to counsel for the Prepetition Agent .

30.    **Binding Effect; Successors and Assigns**.  The provisions of this Interim Order shall be binding upon all parties in interest in these Chapter 11 Cases and any Successor Case, including, without limitation, the DIP Credit Parties, the Prepetition Credit Parties, and the Debtors and their respective successors and assigns (including any Chapter 11 or Chapter 7 trustee hereafter appointed for the estate of any Debtor, any examiner appointed pursuant to section 1104 of the Bankruptcy Code, the Committee or any other fiduciary appointed as a legal representative of any Debtor or with respect to any property of the estate of any Debtor), and shall inure to the benefit of the DIP Credit Parties and the Prepetition Credit Parties and their respective successors and assigns. In no event shall any DIP Credit Party or Prepetition Credit Party have any obligation to make DIP Credit Extensions to, or permit the use of the DIP Collateral (including Cash Collateral) by, any Chapter 7 trustee, Chapter 11 trustee or similar responsible person appointed or elected for the estate of any Debtor.

31.    **Insurance**.  To the extent the Prepetition Agent is listed as loss payee or lender's loss payee under any Debtor's insurance policies, the DIP Agent shall also deemed to be the loss payee or lender's loss payee under such Debtor's insurance policies and, subject to this Interim Order, shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies.

32.    **DIP Collateral Rights**.  Except as expressly permitted in this Interim Order and the DIP Financing Documents, if any Person holds a lien on or security interest in DIP Collateral that is junior or subordinate to the DIP Liens in such DIP Collateral and such Person receives or is paid the proceeds of such DIP Collateral, or receives any other payment with respect thereto from any other source, in each case in a manner prohibited by any of the DIP Financing

- 64 -

Documents or this Interim Order prior to Payment in Full of all DIP Obligations, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for such DIP Credit Parties, and shall immediately turn over such proceeds to the DIP Agent for application in accordance with this Interim Order and the DIP Financing Documents.

33.    **Conditions Precedent**.  No DIP Credit Party shall have any obligation to make any DIP Credit Extensions under the DIP Financing Documents unless the conditions precedent to making such extensions of credit under the DIP Financing Documents have been satisfied in full or waived in accordance with the DIP Financing Documents.

34.    **No Impact on Certain Contracts or Transactions**.  No rights of any Person in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 or 561 of the Bankruptcy Code, whatever such rights might or might not be, are affected by the provisions of this Interim Order.

35.    **Effectiveness; Enforceability**.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be valid, take full effect, and be enforceable immediately upon entry hereof; there shall be no stay of execution or effectiveness of this Interim Order; and any stay of the effectiveness of this Interim Order that might otherwise apply is hereby waived for cause shown.

36.    **Inconsistencies**.  To the extent that any provisions in the DIP Financing Documents are expressly inconsistent with any of the provisions of this Interim Order, the

provisions of this Interim Order shall govern and control.

37.    **Headings**. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

38.    **Objections Overruled**. Any and all objections to the relief requested in the Motion, to the extent not otherwise withdrawn, waived, or resolved by this Interim Order or by consent at or before the Interim Hearing, and all reservations of rights included therein, are hereby OVERRULED and DENIED.

39.    **Final Hearing**. The Final Hearing shall be held at 10:00 a.m., on September 27, 2019, at Courtroom No. ___, United States Bankruptcy Court for the District of Delaware. The Final Hearing may be adjourned or postponed without further notice except announcement in open court. If no objection to the Motion or this Interim Order is timely filed and asserted at the Final Hearing, then this Interim Order may continue in effect in accordance with its terms subject to such modifications as this Court may make at the Final Hearing and that are reasonably acceptable to the DIP Credit Parties. If any or all of the provisions of this Interim Order are modified, vacated or stayed as the result of any objection timely filed and asserted at the Final Hearing, then, without limiting the provisions of paragraph 21 hereof, any DIP Obligations incurred prior to the effective date of such modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Credit Parties shall be entitled to the protections afforded under section 364(e) of the Bankruptcy Code and to all the rights, remedies, privileges, and benefits, including, without limitation, the DIP Liens and Superpriority Claims granted herein and pursuant to the DIP Financing Documents with respect to all such DIP Obligations.

40.    **Objection Deadline**. If any party in interest shall have an objection to any of the

- 66 -

provisions of this Interim Order, such party may assert such objection at the Final Hearing, if a written statement setting forth the basis for such objection is filed with this Court and concurrently served upon: (a) Benjamin A. Hackman, Office of the United States Trustee, 844 N. King Street, Room 2207, Lockbox 35, Wilmington, Delaware 19801; (b) proposed counsel to the Debtors, Kasowitz Benson Torres LLP, 1633 Broadway, New York, New York 10019, Attn.: Adam L. Shiff (ashiff@kasowitz.com) and Robert M. Novick (rnovick@kasowitz.com); (b) proposed co-counsel to the Debtors, Morris, Nichols, Arsht & Tunnell, 1201 N Market St #1600, Wilmington, DE 19801 Attn.: Derek Abbott (dabbott@mnat.com); (d) counsel for the DIP Agent and Prepetition Agent, Parker Hudson Rainer & Dobbs LLP, 303 Peachtree Street NE, Suite 3600, Atlanta, Georgia 30308, Attn: Eric W. Anderson (eanderson@phrd.com) and Bryan Bates (bbates@phrd.com); (e) co-counsel for the DIP Agent, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: John H. Knight (knight@rlf.com); (f) counsel for BAML, Choate, Hall & Stewart LLP, 2 International Place, Boston, MA 02110, Attn: John F. Ventola (jventola@choate.com) and Emily J. Holt (eholt@choate.com); and (g) counsel to the Committee (if appointed), in each case so that such objections and responses are filed on or before 4:00 p.m. (ET) on September 20, 2019. If an objecting party shall fail to appear at the Final Hearing and assert the basis for such objection before this Court, such objection shall be deemed to have been waived and abandoned by such objecting party.

Dated: _____9/10_____, 2019
          Wilmington, Delaware

The Honorable Christopher S. Sontchi
Chief United States Bankruptcy Judge

RLF1 21993125v.1