**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| _____ )| |
| In re: | ) Chapter 11 |
| | ) |
| FRED'S, INC., *et al.*, | ) Case No. 19-11984 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Re: Docket Nos. 13, 59 |
| | ) |
| | ) Obj. Deadline: 9/20/19, 4:00 p.m. |
| | ) Hearing Date: 9/27/19, 10:00 a.m. |
| _____ )| |

**OBJECTION OF GEORGIA POWER COMPANY TO THE
DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING,
OR DISCONTINUING UTILITY SERVICES, (II) DEEMING UTILITY COMPANIES
ADEQUATELY ASSURED OF FUTURE PERFORMANCE, (III) ESTABLISHING
PROCEDURES FOR DETERMINING ADDITIONAL ASSURANCE OF PAYMENT,
AND (IV) SETTING A FINAL HEARING RELATED HERETO**

Georgia Power Company ("Georgia Power"), hereby objects to the *Debtors' Motion For Entry of Interim and Final Orders (I) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Utility Services, (II) Deeming Utility Companies Adequately Assured of Future Performance, (III) Establishing Procedures For Determining Additional Adequate Assurance of Payment, and (IV) Setting a Final Hearing Related Hereto* (the "Utility Motion")(Docket No. 13), and sets forth the following:

**Introduction**

The Debtors' Utility Motion improperly seeks to shift the Debtors' obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested by Georgia Power under Section 366(c)(2) to setting the form and amount of the adequate assurance

ME1 31476243v.1

of payment acceptable to the Debtors.  This Court should not permit the Debtors to shift their statutory burden.

The Debtors seek to have this Court approve their form of adequate assurance of payment, which is a bank account containing $426,026.54 that equals approximately thirteen (13) days of the Debtors' average monthly utility charges (the "Bank Account").  The Court should reject the Debtors' proposed Bank Account because: (1) Outside of bankruptcy court's that ignore the plain language of Section 366, this "form" of security is not a recognized form of security by any public utility commission, (2) Georgia Power bills the Debtors on a monthly basis and provides the Debtors with generous payment terms pursuant to applicable state law, tariffs and/or regulations, and an account containing approximately 13 days of estimated utility charges is not sufficient in amount or in form to provide Georgia Power with adequate assurance of payment; (3) Section 366(c) of the Bankruptcy Code specifically defines the forms of adequate assurance of payment in Section 366(c)(1), none of which include a segregated bank account; and (4) Even if this Court were to improperly consider the Bank Account as a form of adequate assurance of payment for Georgia Power, the Court should reject it as an insufficient form of adequate assurance of payment for the reasons set forth in Section A.1. of this Objection.

Georgia Power is seeking a two-month cash deposit in the amount of $312,041 from the Debtors, which is an amount that Georgia Power is authorized to obtain pursuant to applicable state law.  Based on all the foregoing, this Court should deny the Utility Motion as to Georgia Power because the amount of Georgia Power's post-petition deposit request is reasonable under the circumstances and should not be modified.

ME1 31476243v.1

## Facts

### Procedural Facts

1.      On September 9, 2019 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.      The Debtors' chapter 11 bankruptcy cases are being jointly administered.

### The Utility Motion

3.      On the Petition Date, the Debtors filed the Utility Motion.

4.      Because Georgia Power was not properly or timely served with the Utility Motion and the Debtors never attempted to contact Georgia Power regarding its adequate assurance request prior to the filing of the Utility Motion, even though the Utility Service List attached to the Utility Motion reflects that Georgia Power is the Debtors' largest utility provider, Georgia Power had no opportunity to respond to the Utility Motion or otherwise be heard at the *ex parte* hearing on the Utility Motion that took place on September 10, 2019, despite the fact that Section 366(c)(3) (presuming this was the statutory basis for the relief sought by the Debtors) requires that there be "notice and a hearing" to Georgia Power.

5.      On September 10, 2019, the Court entered the *Interim Order (I) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Utility Services, (II) Deeming Utility Companies Adequately Assured of Future Performance, (III) Establishing Procedures For Determining Additional Adequate Assurance of Payment, and (IV) Setting a Final Hearing Related Thereto* (the "Interim Utility Order")(Docket No. 59). The Interim Utility Order set (i) an

3

objection deadline of September 20, 2019 and (ii) the final hearing on the Utility Motion to take place on September 27, 2019 at 10:00 a.m.

6.      Through the Utility Motion, the Debtors seek to avoid the applicable legal standards under Sections 366(c)(2) and (3) by seeking Court approval for their own form of adequate assurance of payment, which is the Bank Account containing $426,026.54 that supposedly equals 44% of the Debtors' estimated monthly utility charges.  Utility Motion at ¶ 14.  The Debtors claim that they spend approximately $990,000 for utility services.  Utility Motion at ¶ 9.  As such, the $426,026.54 contained in the Bank Account would actually reflect 43% (approximately 13 days) of the Debtors' estimated utility charges.

7.      The proposed Bank Account is not acceptable to Georgia Power and should not be considered relevant by this Court because Sections 366(c)(2) and (3) do not allow the Debtors to establish the form or amount of adequate assurance of payment.  Under Sections 366(c)(2) and (3), this Court and the Debtors are limited to modifying, if at all, the amount of the security sought by Georgia Power under Section 366(c)(2).

8.      The Utility Service List attached to the Interim Utility Order reflects that the Debtors propose that the Bank Account would contain $49,721.40 on behalf of Georgia Power.  As such, the Bank Account would only contain approximately 9.56 days ($49,721/$156,021 of average monthly utility charges x 30 days) of utility charges for Georgia Power.

9.      The Debtors claim that they have established a good payment history with their utility providers, have made payments on a regular and timely basis, and to the best of their knowledge, there are no material defaults or arrearages of any significance with respect to the Debtors' undisputed utility service invoices.  Utility Motion at ¶ 11.    However, Section

4

366(c)(3)(B)(ii) expressly provides that in making an adequate assurance of payment determination, a court may not consider a debtor's timely payment of prepetition utility charges.

10.    The Utility Motion does not address why the Bank Account would be underfunded with only approximately 9.56 days of utility charges for Georgia Power when the Debtors know that Georgia Power is required by applicable state laws, regulations or tariffs to bill the Debtors monthly.   Moreover, presumably the Debtors want Georgia Power to continue to bill them monthly and provide them with the same generous payment terms that they received prepetition. Accordingly, if the Bank Account is relevant, which Georgia Power disputes, the Debtors need to explain: (A) what they are proposing to deposit approximately 9.56 days of average utility charges from Georgia Power into the Bank Account on behalf of Georgia Power; and (B) how such an insufficient amount could even begin to constitute adequate assurance of payment for Georgia Power's monthly bills.

11.    Furthermore, the Utility Motion does not address why this Court should consider modifying, if at all, the amount of Georgia Power's adequate assurance request pursuant to Section 366(c)(2).   Rather, without providing any specifics, the Utility Motion merely states that the Bank Account, "constitutes sufficient Adequate Assurance for the Utility Companies and fully satisfies the requirements of Bankruptcy Code section 366."  Utility Motion at ¶ 16.

### The Debtors' Post-Petition Financing

12.    On the Petition Date, the Debtors filed the *Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing Debtors In Possession To Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 362, 363, and 364; (II) Granting Liens and Superpriority Claims To Postpetition Lenders Pursuant To 11 U.S.C. §§ 364 and 507; (III) Providing Adequate*

*Protection To Prepetition Credit Parties, Summit Lender, and Cardinal Vendors; (IV) Modifying Automatic Stay Pursuant To 11 U.S.C. §§ 361, 362, 363, 364, and 507; (V) Scheduling Final Hearing Pursuant To Bankruptcy Rules 4001(B) and (C) and Local Rule 4001-2; and (VI) Granting Related Relief* (the "Financing Motion")(Docket No. 16).

13.     Through the Financing Motion, the Debtors are seeking authorization to obtain post-petition financing consisting of a superpriority, secured, asset-based revolving credit facility in the principal amount of $35 million.  Financing Motion at page 10.

14.     Through the Financing Motion, the Debtors also sought a carve-out for the payment of approved fees of the Debtors' professionals of up to $5.25 million incurred prior to the delivery of a Carve-Out Trigger Notice, plus an additional $500,000 incurred subsequent to the delivery of a Carve-Out Trigger Notice (the "Carve-Out"). Financing Motion at pages 12-14.

15.     The DIP Loan Agreement provides for each of the following DIP Milestones:  (i) on or before October 15, 2019, the Court shall have entered the Final Financing Order; and (ii) on or before October 30, 2019, the GOB Sales shall have been completed with respect to all of the remaining stores of the Debtors.  Financing Motion at pages 14-15.

16.     Attached as Exhibit "C" to the Financing Motion is a nine-week budget through November 9, 2019 (the "Budget").  It is unclear from the Budget whether the Debtors have budgeted sufficient sums for the timely payment of post-petition utility charges.

17.     On September 10, 2019, the Court entered the *Interim Order Granting Debtors' Motion To (I) Authorize Debtors In Possession To Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 362, 363, and 364; (II) Grant Liens and Superpriority Claims To Postpetition Lenders Pursuant To 11 U.S.C. §§ 364 and 507; (III) Provide Adequate Protection To*

6

*Prepetition Credit Parties, Summit Lender, and Cardinal Vendors; (IV) Modify Automatic Stay Pursuant To 11 U.S.C. §§ 361, 362, 363, 364, and 507; (V) Schedule Final Hearing Pursuant To Bankruptcy Rules 4001(B) and (C) and Local Rule 4001-2; and (VI) Grant Related Relief* (the "Interim Financing Order")(Docket No. 61).

18.    The Interim Financing Order approved the Carve-Out.  Interim Financing Order at pages 38-39.

## Facts Concerning Georgia Power

19.    Georgia Power provided the Debtors with prepetition utility goods and/or services and has continued to provide the Debtors with utility goods and/or services since the Petition Date.

20.    Under Georgia Power's billing cycle, the Debtors receive approximately one month of utility goods and/or services before Georgia Power issues a bill for such charges.  Once a bill is issued, the Debtors have approximately 20 days to pay the applicable bill.  If the Debtors fail to timely pay the bill, a past due notice is issued and, in most instances, a late fee may be subsequently imposed on the account.  If the Debtors fail to pay the bill after the issuance of the past due notice, Georgia Power issues a notice that informs the Debtors that they must cure the arrearage within a certain period of time or their service will be disconnected.  Accordingly, under Georgia Power's billing cycle, the Debtors could receive at least two months of unpaid charges before the utility could cease the supply of goods and/or services for a post-petition payment default.

21.    In order to avoid the need to bring witnesses and have lengthy testimony regarding Georgia Power's regulated billing cycle, Georgia Power requests that this Court, pursuant to Rule

ME1 31476243v.1

201 of the Federal Rules of Evidence, take judicial notice of Georgia Power's billing cycle. Pursuant to the foregoing request and based on the voluminous size of the applicable documents, Georgia Power's link to its tariffs, state laws, and regulations is as follows:

https://www.georgiapower.com/business/billing-and-rates.html

22.    Subject to a reservation of Georgia Power's right to supplement its post-petition deposit request if additional accounts belonging to the Debtors are subsequently identified, Georgia Power's post-petition deposit request is as follows:

| Number of Accts. | Est. Prepet. Debt | Dep. Request |
| --- | --- | --- |
| 60 | $230,330.92 | $312,041 (2-month) |

23.    Georgia Power held a prepetition deposits totaling $137,285 that it recouped against prepetition debt pursuant to Section 366(c)(4) of the Bankruptcy Code.  No prepetition deposit remains after recoupment.

### Discussion

### A.    THE UTILITY MOTION SHOULD BE DENIED AS TO GEORGIA POWER.

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;

(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

8

As set forth by the United States Supreme Court, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner.").   A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition. *In re* Lucre, 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005).  If a debtor believes the **<u>amount</u>** of the utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **<u>amount</u>** of the utility's request under Section 366(c)(2).

In this case, the Debtors filed the Utility Motion to improperly shift the focus of their obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested under Section 366(c)(2) to setting the form and amount of the adequate assurance of payment acceptable to the Debtors.  Accordingly, this Court should not reward the Debtors for their failure to comply with the requirements of Section 366(c) and deny the Utility Motion as to Georgia Power.

9

1.    **The Debtors' Proposed Bank Account Is Not Relevant And Even If It Is Considered, It Is Unsatisfactory Because It Does Not Provide Georgia Power With Adequate Assurance of Payment.**

This Court should not even consider the Bank Account as a form of adequate assurance of payment because: (1) It is not relevant because Section 366(c)(3) provides that a debtor can only modify "the amount of an assurance of payment under paragraph (2)"; and (2) The Bank Account is not a form of adequate assurance of payment recognized by Section 366(c)(1)(A). Moreover, even if the Court were to consider the Bank Account, the Bank Account is an improper and otherwise unreliable form of adequate assurance of future payment for the following reasons:

1.    Unlike the statutory approved forms of adequate assurance of payment, the Bank Account is not something held by Georgia Power.  Accordingly, Georgia Power would not have any control over how long the Bank Account will remain in place.

2.    In order to access the Bank Account, Georgia Power would have to incur the expense to draft, file and serve a default pleading with the Court and possibly litigate the demand if the Debtors refuse to honor a disbursement request.

3.    It is underfunded from the outset because Georgia Power issues monthly bills and by the time a default notice is issued the Debtors will have received approximately 60 days of utility service.

4.    The Debtors are not required to replenish the Bank Account following pay-outs.

5.    The Debtors fail to state whether draws from the Bank Account would be limited to two-week amounts.

6.    The Debtors should not reduce the amount of Bank Account on account of the termination of utility services to a Debtor account until the Debtors confirm that all post-petition charges on a closed account are paid in full.

7.    The Debtors secured lenders may have a lien on the Bank Account.

10

Accordingly, the Court should not approve the Bank Account as adequate assurance as to Georgia Power because the Bank Account is: (a) not the **form** of adequate assurance requested by Georgia Power; (b) not a form recognized by Section 366(c)(1)(A); and (c) an otherwise unreliable form of adequate assurance.

> **2.    The Utility Motion Should Be Denied As To Georgia Power Because the Debtors Have Not Set Forth Any Basis For Modifying Georgia Power's Requested Deposit.**

In the Utility Motion, the Debtors fail to address why this Court should modify the amount of Georgia Power's request for adequate assurance of payment.  Under Section 366(c)(3), the Debtors have the burden of proof as to whether the amount of Georgia Power's adequate assurance of payment request should be modified. *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof).  However, the Debtors do not provide the Court with any evidence or factually supported documentation to explain why the amount of Georgia Power's adequate assurance request should be modified.  Accordingly, the Court should deny the relief requested by Debtors in the Utility Motion and require the Debtors to comply with the requirements of Section 366(c) with respect to Georgia Power.

> **B.    THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY GEORGIA POWER PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.**

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate assurance of payment in certain cases.  Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

11

(i) a cash deposit;
(ii) a letter of credit;
(iii) a certificate of deposit;
(iv) a surety bond;
(v) a prepayment of utility consumption; or
(vi) another form of security that is mutually agreed upon between the utility and
the debtor or the trustee.

Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

Georgia Power bills the Debtors on a monthly basis for the charges already incurred by the Debtors in the prior month. Georgia Power then provides the Debtors with approximately 20 days to pay a bill before a late fee may be charged, and also provide written notice before utility service can be terminated for non-payment pursuant to applicable state laws, tariffs and/or regulation. Based on the foregoing state-mandated billing cycle, the minimum period of time the Debtors could receive service from Georgia Power before termination of service for non-payment of post-petition bills is approximately two (2) months. Moreover, even if the Debtors timely pay their post-petition utility bills, Georgia Power still has potential exposure of approximately 60 days based on its billing cycle. Furthermore, the amount of Georgia Power's deposit request is

ME1 31476243v.1

the amount that the applicable public service commission, which is a neutral third-party entity, permits Georgia Power to request from its customers. Georgia Power is not taking the position that the deposit that it is entitled to obtain under applicable state law is binding on this Court, but, instead is introducing that amount as evidence of amount that its regulatory entity permits Georgia Power to request from its customers.

Moreover, in contrast to the improper treatment proposed to the Debtors' utilities, the Debtors have made certain that post-petition professionals are favored creditors over Georgia Power by ensuring that the post-petition bills/expenses of Debtors' counsel are paid, even in the event of a post-petition default on the use of DIP financing and cash collateral, by seeking a $500,000 professionals carve-out for the payment of their fees/expenses after a default and a guarantee of payment for fees incurred up to a default. Therefore, despite the fact that Georgia Power continues to provide the Debtors with crucial post-petition utility services on the same generous terms that were provided prepetition, with the possibility of non-payment, the Debtors are seeking to deprive Georgia Power of any adequate assurance of payment for which it is entitled to for continuing to provide the Debtors with post-petition utility goods/services. Against this factual background, it is reasonable for Georgia Power to seek and be awarded the full security it has requested herein.

*[**Remainder of Page Intentionally Left Blank**]*

13

**WHEREFORE**, Georgia Power respectfully requests that this Court enter an order:

1.      Denying the Utility Motion as to Georgia Power;

2.      Awarding Georgia Power the post-petition adequate assurance of payment

pursuant to Section 366 in the amount and form satisfactory to Georgia Power,

which is the form and amount requested herein; and

3.      Providing such other and further relief as the Court deems just and appropriate.

Dated: September 18, 2019          **McCARTER & ENGLISH, LLP**

/s/ *William F. Taylor, Jr.*
William F. Taylor, Jr. (#2936)
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE  19801
Telephone: (302) 984-6300
E-mail: wtaylor@mccarter.com

*-and-*

LAW FIRM OF RUSSELL R. JOHNSON III, PLC
Russell R. Johnson III (VSB No. 31468)
John M. Craig (VSB No. 32977)
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862
E-mail: russell@russelljohnsonlawfirm.com
        john@russelljohnsonlawfirm.com

*Counsel for Georgia Power Company*

ME1 31476243v.1