**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRED'S, INC., *et al.*,[1] | ) | Case No. 19-11984 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Re: D.I. 35 & 81** |

**FINAL ORDER APPROVING PROCEDURES FOR THE SALE OF
*DE MINIMIS* PHARMACY AND REAL PROPERTY ASSETS
<u>FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES</u>**

Upon the motion dated September 9, 2019 (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), for entry of an order (this "<u>Final Order</u>") granting authorization to establish procedures (the "<u>*De Minimis* Sale Procedures</u>") pursuant to (i) sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rule 6004, and Local Rule 6004-1, for the sale of certain *de minimis* assets, including (i) those Pharmacy Assets[3] described in the Motion and (ii) non-residential real property interests owned by the Debtors (the "<u>Real Property Assets</u>," and together with the Pharmacy Assets, collectively the "<u>Assets</u>"), arguably outside the ordinary course of the Debtors' businesses, for a Sale Price of $1,500,000 or less free and clear of liens, claims, interests, as more fully described in the Motion; and the Court having entered an order granting the relief requested in the Motion on an interim basis [D.I. 81];

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 2001 Bryan Street, Suite 1550, Dallas, TX 75201.

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Motion.

[3] For the avoidance of doubt, all payments received by the Debtors on or after the closing date of a Pharmacy Asset sale contemplated hereunder from any patient, third-party payor, or other source for any prescription filled by the applicable buyer on or after the closing date of such sale shall be considered a Pharmacy Asset and remitted by the Debtors to the applicable buyer in accordance with the applicable purchase agreements.

and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion having been given under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The relief requested in the Motion is hereby granted as set forth herein.

2. The *De Minimis* Sale Procedures are hereby approved and may be implemented by the Debtors in the Chapter 11 Cases.

3. Local Rule 6004-1 is hereby waived with respect to any sale of Assets undertaken pursuant to the Procedures.

4. For purposes of the Procedures, the net benefit estimated to be realized by the Debtors' estates shall constitute the "<u>Sale Price</u>." The net benefit is the amount of cash consideration or fair market value of non-cash consideration estimated to be received by the Debtors, <u>plus</u> the amount of any liabilities to be assumed by the purchaser (to the extent

quantifiable or reasonably estimable), less expenses to be incurred in connection with the sale, offsets, or other deductions (to the extent quantifiable or reasonably estimable). The Sale Price shall be determined without consideration as to whether the property for sale is free and clear of all liens, claims, interests, and encumbrances.

5. If the Sale Price for (i) Pharmacy Assets at a single location or (ii) any Real Property Asset, is less than or equal to $500,000 or is currently under contract, and the Agent under the Debtors' postpetition financing facility (the "DIP Agent") has consented to such proposed sale in writing, the Debtors are hereby authorized to sell such Assets without further notice to any party or hearing, with the proceeds of such sale to be first applied to the Obligations and the Pre-Petition Lender Debt in accordance with the Post-Petition Credit Agreement (as "Obligations" and "Pre-Petition Lender Debt" are defined in the Post-Petition Credit Agreement) until all such Obligations and the Pre-Petition Lender Debt are satisfied in full, and thereafter to satisfy any junior liens, claims, interests, or encumbrances had on the Assets sold in the order of priority that existed prior to the Petition Date.

6. If the Sale Price for (i) the sale of Pharmacy Assets at a single location or (ii) the sale of any Real Property Asset, is greater than $500,000 and less than or equal to $1,500,000, the following Procedures shall apply:

    i. Only if the DIP Agent has consented to such proposed sale in writing, the Debtors shall file a notice with the Court, substantially in the form attached to the Motion as Exhibit B (the "Sale Notice"), specifying (i) the applicable Assets to be sold, (ii) the identity of the purchaser, (iii) any commissions to be paid to third parties (such as brokers), and (iv) the sale price. The Debtors shall serve the Sale Notice only on the following parties: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the DIP Agent; (iii) counsel to the Creditors' Committee (Attn: Jeffrey Cohen) (collectively, the "Notice Parties"); (iv) any person or entity with a particularized interest in the Assets to be sold, including any known creditor asserting a lien, claim, interest, or encumbrance on such Assets; and (v) solely with respect to the sale of any

          Pharmacy Assets, counsel to Cardinal Health 110, LLC and Cardinal Health 112, LLC (collectively, "Cardinal").

   ii.    Parties in interest will have five days after the service of a Sale Notice (the "Sale Objection Deadline") to object to a proposed sale of Assets. After the expiration of the Sale Objection Deadline, the Debtors may immediately sell the Assets listed in the Sale Notice and take any actions and execute any agreements or other documentation that are necessary or desirable to close the transaction and obtain the sale proceeds.

   iii.   If any party in interest wishes to object to a proposed sale of Assets, such party must (i) file a written objection (each, an "Objection") with the Court on or before the Sale Objection Deadline and (ii) serve the Objection on the Debtors and each of the other Notice Parties so that it is actually received by such parties on or before the Sale Objection Deadline. Any such Objection shall identify, with specificity, the basis for such Objection. If an Objection is timely received and filed and cannot be resolved by the Debtors and the objecting parties, the Assets that are the subject of the Objection will not be sold except upon order of the Court; *provided, however*, that any Assets set forth in the Sale Notice that is not the subject of an Objection may be immediately sold in accordance with paragraph (b).

7.     If the Sale Price for the sale of (i) Pharmacy Assets at a single location or (ii) any Real Property Asset, is greater than $1,500,000, or if the Sale Price is less than $1,500,000 but the DIP Agent has withheld its written consent to such proposed sale and the Debtors wish to consummate the sale nonetheless, the Debtors shall file a motion with the Court requesting approval of the sale pursuant to section 363 of the Bankruptcy Code, among other applicable provisions. Any sale to an insider, as that term is defined in section 101(31) of the Bankruptcy Code, must be sought by motion to the Court.

8.     The Debtors shall be permitted to compensate any broker engaged by the Debtors in connection with any sale or attempted sale of Assets; *provided, however,* that if an Objection to the payment of any broker's fees is timely received and filed by the Sale Objection Deadline (if applicable), then the portion of such broker's fees to which the Objection is directed shall not be paid until such Objection is consensually resolved or until the Court approves such payment.

No broker may be retained or compensated on a dual agency basis.  All brokers representing the Debtors must be disinterested.

9. The *De Minimis* Sale Procedures satisfy section 363(f) of the Bankruptcy Code and Assets sold pursuant to the *De Minimis* Sale Procedures shall be free and clear of all liens, claims, interests, and encumbrances.

10. Any holder of a lien, claim, interest, or encumbrance on any (i) Pharmacy Assets to be sold at a single location or (ii) Real Property Asset, with a Sale Price greater than $500,000 and less than or equal to $1,500,000, will receive a Sale Notice and will have an opportunity to object to any sale in which they claim an interest.  If a holder of a lien, claim, interest, or encumbrance receives the Sale Notice and does not object within the prescribed time period, then such holder will be deemed to have consented to the proposed sale and the property may then be sold free and clear of the holder's interests pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, or encumbrances to be satisfied from the proceeds of the sale with such proceeds to be first applied to the Obligations and the Pre-Petition Lender Debt in accordance with the Post-Petition Credit Agreement until all such Obligations and the Pre-Petition Lender Debt are satisfied in full, and thereafter to satisfy any junior liens, claims, interests, or encumbrances had on the Assets sold in the order of priority that existed prior to the Petition Date.

11. Those who purchase Assets in accordance with the Procedures shall be afforded the protections under section 363(m) of the Bankruptcy Code.

12. All sales of Assets shall comply with applicable non-bankruptcy law and obligations.

13. Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Final Order is hereby waived, and the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

14. The requirements set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

15. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

16. Proper, timely, adequate, and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion or the entry of this Final Order shall be required.

17. The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: September 26th, 2019
Wilmington, Delaware

CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE