ORIGINAL

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRED'S, Inc., *et al.*,[1] | Case No. 19-11984 (CSS) |
| Debtors. | Jointly Administered |
| | **Re: D.I. 180** |

## ORDER (I) AUTHORIZING THE SALE OF CERTAIN PHARMACY ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363 AND (II) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion") of the above captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"): (a) authorizing the sale (the "Transaction") of certain Script Assets, Inventory and Inventory Documentation (each as defined in the Asset Purchase Agreement by and among the Debtors and Walgreen Co. (the "Buyer"), in substantially the form attached hereto as **Exhibit 1** (the "Agreement"))[2] located at the pharmacies (the "Pharmacies") listed in the Pharmacy Asset Sale Schedule attached hereto as **Exhibit 2**, free and clear of liens, claims, interests, and encumbrances (collectively, the "Encumbrances") upon payment therefor in accordance with the terms of the Agreement, with any such Encumbrances to attach to the proceeds thereof with the same validity and priority (under the Bankruptcy Code) as such Encumbrances had immediately prior to the consummation of the Transaction; and (b) granting related relief, all as more fully described in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Stores, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 2001 Bryan Street, Suite 1550, Dallas, Texas 75201.

1

1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors provided due and proper notice that is adequate and appropriate under the particular circumstances; and the Court having held a hearing to consider the relief requested in the Motion and any objections or other responses to the relief requested therein (the "Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and upon consideration of the record of the Hearing, and all proceedings had before the Court, the arguments of counsel made, and the evidence proffered and adduced, at the Hearing; and it appearing that due notice of the Motion and the form of this Order has been provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that the legal and factual bases set forth in the Motion and presented at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and any objections or other responses to the relief requested herein having been withdrawn, resolved, or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND THAT**:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

---

[2]    Capitalized terms used but not defined herein have the meaning assigned to such terms in the Agreement.

B.      The statutory and other legal predicates for the relief sought in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1.

C.      A fair and reasonable opportunity to object to and to be heard with respect to the Motion, the Transaction, and the relief requested in the Motion has been given, as required by the Bankruptcy Code and the Bankruptcy Rules, to all Persons[3] entitled to notice, including the following: (a) all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 and (b) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in any of the Pharmacy Assets.

D.      The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for this Court to grant the relief requested in the Motion. The Debtors' entry into and performance under the Agreement: (a) constitutes a sound and reasonable exercise of the Debtors' business judgment and is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; (b) provides value to and is beneficial to the Debtors' estates; and (c) is reasonable and appropriate under the circumstances. Business justifications for the Transaction include the following:  (a) the Agreement constitutes the highest and best offer received for the Pharmacy Assets; (b) the Agreement present the best opportunity to maximize the value of the Pharmacy Assets;  (c) unless the Transaction is consummated expeditiously in accordance with the terms of the Agreement, recoveries to the Debtors' creditors may be materially diminished; and (d) the value of the Debtors' estates will be maximized through the sale of the Pharmacy Assets pursuant to the Agreement.

---

[3]     "Person" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, or any other entity, including any governmental authority (meaning any federal, state, local, or foreign government or governmental or regulatory

E.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  If any inconsistency arises between this Order and the Agreement, this Order shall control.

F.      The Debtors and their advisors (i) engaged in a robust and extensive marketing and sale process for the Pharmacy Assets prior to the Petition Date, and (ii) determined that the Buyer's offer to purchase the Pharmacy Assets pursuant to the Agreement represents the highest and best offer the Debtors have received for the Pharmacy Assets.  The marketing and sale process was non-collusive, pursued diligently and in good faith, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Pharmacy Assets.  The marketing and sale process conducted by the Debtors obtained the highest and best value for the Pharmacy Assets for the Debtors and their estates, and any other transaction would not have yielded as favorable an economic result.  Accordingly, the total consideration provided by the Buyer, upon the terms and conditions set forth in the Agreement (including the form and total consideration to be realized by the Debtors pursuant to the Agreement), is the highest and best offer received by the Debtors and constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value and reasonable market value for the Pharmacy Assets.

G.      Under the facts and circumstances of these chapter 11 cases, the purchase price for the Pharmacy Assets is fair and reasonable.

H.      The Agreement was proposed, negotiated, and will be entered into based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code.

---

authority, agency, board, bureau, commission, court, department, or other governmental entity) or any group of any of the foregoing.

4

I.    The Buyer is a Buyer in good faith with respect to the Pharmacy Assets, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  The Debtors were free to deal with any other party interested in buying or selling some or all of the Pharmacy Assets on behalf of the Debtors' estates.  Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code or that would prevent the application of section 363(m) of the Bankruptcy Code.  The Buyer has not acted in a collusive manner with any entity and the marketing and sale process for the Pharmacy Assets was not controlled by any agreement among bidders.  The Buyer's prospective performance and payment of amounts owing under the Agreement is in good faith and for valid business purposes and uses.  The Buyer is not an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between the Buyer and the Debtors.

J.    The Agreement and the Transaction contemplated therein were negotiated, proposed, and entered into by the Debtors and the Buyer in good faith, without collusion and from arm's-length bargaining positions.

K.    The Buyer is not, and will not be, a mere continuation of, or a successor to, and is not holding itself out as a mere continuation of, or successor to, the Debtors in any respect, and there is no continuity of enterprise between the Debtors and the Buyer.  The Transaction does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors.  Neither the Buyer nor any of its Affiliates[4] and their respective successors, assigns,

---

[4]    "Affiliate" means, with respect to any specified Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person,

members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any Affiliates thereof) and/or any Debtor's estate, including any obligation under any labor practice agreement, except as expressly provided in the Agreement or herein.

L.    All of the requirements of section 363 of the Bankruptcy Code have been met with respect to the sale of the Pharmacy Assets pursuant to the Agreement.

M.    The Debtors may sell the Pharmacy Assets, upon payment therefor in accordance with the terms of the Agreement, free and clear of all Encumbrances, including all liens (including, to the extent permitted under the Bankruptcy Code, those related to the so-called "bulk sales," "bulk transfer" and similar laws), claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), rights (including reclamation rights, rights of first refusal, rights of first offer, or consent rights), liabilities, judgments, servitudes, encumbrances, options, purchase options, mortgages, subleases, charges, hypothecations, indentures, security interests, security agreements, loan agreements, instruments, conditional sale or other title retention agreements, pledges, demands, offsets not taken prepetition, rights of recovery, decrees of any court or foreign or domestic governmental entity, and other interests of any kind or nature whatsoever against the Debtors or the Pharmacy Assets, including any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims or claims for taxes of or against the Debtors, and any derivative, vicarious, transferee, or successor liability claims, rights or causes

---

where "control" means the power, directly or indirectly, to direct or cause the direction of the management and policies of another Person, whether through the ownership of voting securities, by contract, or otherwise.

of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise arising under or out of, in connection with, or in any way related to the Debtors, the Debtors' interests in the Pharmacy Assets, the operation of the Debtors' businesses before the Closing (throughout this Order, as defined in the Agreement), or the transfer of the Debtors' interests in the Pharmacy Assets to the Buyer, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Without limiting the generality of the foregoing, "Encumbrances" shall include any and all liabilities or obligations whatsoever arising under or out of, in connection with, or in any way relating to: (a) any of the Debtors' employee benefit plans, including any Encumbrances related to unpaid contributions or current or potential withdrawal or termination liability; (b) the Worker Adjustment and Retraining Notification Act of 1988; or (c) any of the Debtors' current and former employees. Those holders of Encumbrances who did not object (or who ultimately withdrew their objections, if any) to the Transaction or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances who did object that have an interest in the Pharmacy Assets fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Encumbrances that constitute interests in the Pharmacy Assets, if any, attach solely to the

proceeds of the Transaction ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force, and effect that such holders had prior to the Transaction, subject to any defenses that may be available to the Debtors. All Persons having Encumbrances of any kind or nature whatsoever against the Debtors or the Pharmacy Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Encumbrances against the Buyer or any of its assets, property, Affiliates, successors, assigns, or the Pharmacy Assets.

N. The Buyer has not agreed to assume and shall have no obligations with respect to any Encumbrances. The Buyer would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors and their estates and their creditors, if the Transaction of the Pharmacy Assets were not free and clear of all Encumbrances, or if the Buyer would, or in the future could, be liable for any such Encumbrances, including, as applicable, any liabilities related to the operation of the Pharmacies by the Debtors that will not be assumed by the Buyer, as described in the Purchase Agreement.

O. The total consideration to be provided to the Debtors by the Buyer, upon the terms and conditions set forth in the Agreement (including the form and total consideration to be realized by the Debtors pursuant to the Agreement), reflects the Buyer's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Pharmacy Assets free and clear of all Encumbrances upon payment therefor in accordance with the terms of the Agreement (including any potential derivative, vicarious, transferee, or successor liability claims).

P. The transfer of the Pharmacy Assets to the Buyer in accordance with the terms of the Agreement will be a legal, valid, and effective transfer of the Pharmacy Assets, and,

upon payment therefor in accordance with the terms of the Agreement, will vest the Buyer with all right, title, and interest of the Debtors in and to the Pharmacy Assets free and clear of all Encumbrances.

Q.    The Debtors (a) have full corporate or limited liability company (as applicable) power and authority to execute the Agreement and all other documents contemplated thereby, and the Transaction has been duly and validly authorized by all necessary corporate action of the Debtors, (b) have all of the corporate or limited liability company (as applicable) power and authority necessary to consummate the transactions contemplated by the Agreement, and (c) upon entry of this Order, other than any consents or approvals identified in the Agreement (including with respect to antitrust matters), need no consent or approval from any other Person to consummate the Transaction.

R.    The Pharmacy Assets constitute property of the Debtors' estates and good title is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors are the sole and rightful owners of the Pharmacy Assets, and no other Person has any ownership right, title, or interests therein.

S.    The Agreement is a valid and binding contract between the Debtors and the Buyer and shall be enforceable pursuant to its terms.  The Agreement, the Transaction and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

T.    The Transaction of the Pharmacy Assets must be approved and consummated promptly in order to preserve the value of the Pharmacy Assets.  Therefore, time is

of the essence in consummating the Transaction, and the Debtors and Buyer intend to close the Transaction as soon as reasonably practicable. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Transaction as contemplated by the Agreement. Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regards to the transactions contemplated by this Order.

U.     The legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein.

**NOW THEREFORE, IT IS ORDERED THAT:**

1.     The Motion is granted as set forth herein.

2.     Any responses or objections to, unless otherwise adjourned, or reservations of rights regarding, the entry of this Order or the relief granted herein or requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice. All holders of Encumbrances or other persons and entities that failed to timely object, or withdrew their objections, to the Motion or this Order are deemed to consent to the relief granted herein for all purposes, including pursuant to sections 363(f)(2) of the Bankruptcy Code.

3.     Each holder of any Encumbrances against the Debtors, their estates, or any of the Pharmacy Assets: (a) has, subject to the terms and conditions of this Order, consented to the Transaction or is deemed to have consented to the Transaction; (b) could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such Encumbrance; or (c) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.

4.      Notice of the Hearing was fair and equitable under the circumstances and complied in all respects with the Bankruptcy Code and the Bankruptcy Rules.

5.      The Agreement and the ancillary documents thereto and the consummation thereof, and the Transaction itself shall not be avoided under section 363(n) or chapter 5 of the Bankruptcy Code.   The consideration provided by the Buyer under the Agreement is fair and reasonable.   Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.

6.      The Agreement, any schedules or exhibits thereto, and all transactions contemplated therein, and all of the terms and conditions thereof are hereby approved and are incorporated herein by reference, and the Debtors are authorized to take any and all actions necessary or appropriate to consummate the Agreement.   The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be approved in its entirety.

7.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors, as well as their officers, employees and agents, are authorized to execute, deliver and perform their obligations under and comply with the terms of the Agreement and to consummate the Transaction, pursuant to, and in accordance with, the terms and conditions of the Agreement and this Order.   The provisions of this Order shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate and implement the provisions of this Order.

8.      The Debtors, their Affiliates and their respective officers, employees and agents, are authorized to execute and deliver, and authorized to perform under, consummate and

implement all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and to take all further actions as may be: (a) reasonably requested by the Buyer for the purpose of assigning, transferring, and conveying to the Buyer or reducing to possession, the applicable Pharmacy Assets; or (b) necessary or appropriate to the performance of the obligations contemplated by the Agreement, all without further order of the Court.

9.      All Persons that are currently, or are on or after the Closing, in possession of some or all of the applicable Pharmacy Assets are hereby directed to surrender possession of such Pharmacy Assets to the Buyer as of the Closing or at such time as the Buyer requests.

10.      Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept this Order and any and all other documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

11.      Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the Pharmacy Assets in accordance with the terms of the Agreement.  The Pharmacy Assets shall be transferred to the Buyer (or its Affiliates), and upon payment therefor in accordance with the terms of the Agreement, such transfers shall:  (a) be valid, legal, binding, and effective, (b) vest the Buyer with all right, title, and interest of the Debtors in the Pharmacy Assets, and (c) be free and clear of all Encumbrances in accordance with section 363(f) of the Bankruptcy Code, with all Encumbrances that represent interests in property to attach to the net proceeds of the Transaction, in the same amount and order of their priority, with the same validity, force, and effect which they have against the Pharmacy Assets,

and subject to any claims and defenses the Debtors may possess with respect thereto, in each case immediately prior to the Closing; with the proceeds of such sale to be first applied to the Obligations and the Pre-Petition Lender Debt in accordance with the Post-Petition Credit Agreement (as "Obligations" and "Pre-Petition Lender Debt" are defined in the Post-Petition Credit Agreement) until all such Obligations and the Pre-Petition Lender Debt are satisfied in full, and thereafter to satisfy any junior liens, claims, interests, or encumbrances had on the Assets sold in the order of priority that existed prior to the Petition Date

12.      Except as otherwise provided in the Agreement, all Persons (and their respective successors and assigns) including all debtholders, equityholders, governmental, tax and regulatory authorities, lenders, employees, former employees, pension plans, multiemployer pension plans, labor unions, trade creditors, and any other creditors holding Encumbrances against the Debtors or the Pharmacy Assets, are hereby forever barred, estopped and permanently enjoined from asserting or pursuing such Encumbrances against the Buyer, their Affiliates, successors or assigns, their property or the Pharmacy Assets, including taking any of the following actions with respect to an Encumbrance (other than any liability expressly assumed under the Agreement):    (a) commencing or continuing in any manner any action or other proceeding against the Buyer, its Affiliates, successors or assigns, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, its Affiliates, successors or assigns, assets, or properties; (c) creating, perfecting, or enforcing any Encumbrances against the Buyer, its successors or assigns, assets or properties; (d) asserting an Encumbrance as a setoff (provided the setoff was not taken prepetition) or right of subrogation of any kind against any obligation due the Buyer or its successors or assigns; (e) commencing or continuing any action in any manner or place that does

not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof; or (f) to the extent provided in Section 525 of the Bankruptcy Code, revoking, terminating, failing, or refusing to renew any license, permit, or authorization to operate any of the Pharmacy Assets or conduct any of the business operated with such assets. No such Persons shall assert or pursue against the Buyer or its Affiliates, successors or assigns any such Encumbrance.

       13.     This Order (a) shall be effective as a determination that, as of the transfer of the Pharmacy Assets and payment therefor in accordance with the Agreement, all Encumbrances have been unconditionally released, discharged, and terminated as to the Buyer and the Pharmacy Assets, and that the conveyances and transfers described herein have been effected, and (b) is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any asset; and each of the foregoing Persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. For the avoidance of doubt, nothing in the Order or the APA shall effect any tax exemption under Section 1146(a) of the Bankruptcy Code.

       14.     Following the transfer of the Pharmacy Assets and payment therefor in accordance with the Agreement, no holder of any Encumbrance shall interfere with the Buyer's

title to or use and enjoyment of the Pharmacy Assets based on or related to any such Encumbrance or based on any actions the Debtors may take in these chapter 11 cases.

15.    Except as expressly set forth in the Agreement, the Buyer and its successors and assigns shall have no liability for any Encumbrance, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee or successor or otherwise, of any kind, nature or character whatsoever, including Encumbrance arising under:   (a) any employment or labor agreements or the termination thereof; (b) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including any pension plan of or related to any of the Debtors or any Debtor's Affiliates or predecessors or any current or former employees of any of the foregoing, or the termination of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law (including claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Notification Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) the Multiemployer Pension Plan Amendments Act of 1980, (xi) state and local discrimination laws, (xii) state and local unemployment compensation laws or any other similar state and local laws, (xiii) state workers' compensation laws, (xiv) any other state, local, or federal employee benefit laws, regulations or

rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment or termination of employment with any or all Debtors or any predecessors); (f) any antitrust laws; (g) any product liability or similar laws, whether state or federal or otherwise; (h) any environmental laws, rules, or regulations, including under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (i) any bulk sales or similar laws; (j) any federal, state, or local tax statutes, regulations or ordinances, including the Internal Revenue Code of 1986, as amended; and (k) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory, or any other theory of successor liability.

16.    The Debtors are hereby authorized to take all actions necessary to implement and effectuate the terms of this Order and the relief granted pursuant to this Order, the Transaction, and the Agreement.

17.    Notwithstanding the applicability, or the possible applicability, of Bankruptcy Rules 4001, 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.  This Order constitutes a final order.

18.    The terms and provisions of the Agreement and this Order shall be binding in all respects upon, or shall inure to the benefit of, the Debtors, their estates and their creditors (whether known or unknown), the Buyer and its Affiliates, successors and assigns, and any affected third parties, including all Persons asserting an Encumbrance (collectively, the "Bound Parties"), notwithstanding any subsequent appointment of any trustee, examiner, receiver, party, entity, or other fiduciary under any chapter of the Bankruptcy Code or any other law with respect to any of the Bound Parties, and all such provisions and terms shall likewise be binding on such

trustee, examiner, receiver, party, entity, or other fiduciary, and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, or any trustee, examiner or receiver, party, entity, or other fiduciary.  The provisions of this Order and the terms and provisions of the Agreement, and any actions taken pursuant hereto or thereto as of the date of the entry of such Order shall survive the entry of any order that may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agreement, as well as the rights and interests granted pursuant to this Order and the Agreement, shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns, including any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

19.    Nothing contained in any chapter 11 plan hereinafter confirmed in these chapter 11 cases, or any order confirming such plan, or any other order in these chapter 11 cases (including any order approving the wind-down or dismissal of these chapter 11 cases or any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from the provisions of the Agreement or the terms of this Order.  This Order shall survive any dismissal of any of these chapter 11 cases.

20.    The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment or supplement does not materially change the terms of the Agreement or any related agreements, documents, or other instruments.

17

21.     This Court shall retain jurisdiction (to the greatest extent allowed by applicable law) with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order, the Agreement, all amendments thereto, and any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Order or the Agreement (and such other related agreements, documents or other instruments) and to enforce the injunctions set forth herein.

Wilmington, Delaware
Dated: _____10/16_____, 2019

THE HONORABLE CHRISTOPHER S. SONTCHI
CHIEF UNITED STATES BANKRUPTCY JUDGE