## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FRED'S, INC., *et al.*[1] | ) | Case No. 19-11984 (CSS) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Re: Docket Nos. 16, 61** |

### FINAL ORDER GRANTING DEBTORS' MOTION TO
### (I) AUTHORIZE DEBTORS IN POSSESSION TO OBTAIN
### POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105,
### 362, 363, AND 364; (II) GRANT LIENS AND SUPERPRIORITY CLAIMS
### TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. §§ 364 AND 507;
### (III) PROVIDE ADEQUATE PROTECTION TO PREPETITION CREDIT
### PARTIES, SUMMIT LENDER, AND CARDINAL VENDORS; (IV) MODIFY
### AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364, AND 507;
### AND (V) GRANT RELATED RELIEF

This matter is before this Court on the motion (the "***Motion***")[2] of the above-captioned

debtors and debtors in possession (collectively, the "***Debtors***") in these chapter 11 cases (the

"***Chapter 11 Cases***"), requesting entry of an interim order and a final order (this "***Final Order***")

pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e),

506, 507(b), and 552 of title 11 of the United States Code (the "***Bankruptcy Code***") and rules

2002, 4001, 6003, 6004, 7062, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"***Bankruptcy Rules***"), and the local rules for the United States Bankruptcy Court for the District

of Delaware (the "***Local Rules***"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fred's Stores of Tennessee, Inc. (9888) ("***FSOT***"); Fred's Inc. (4010) ("***Fred's***"); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687) ("***NPN***"); Reeves-Sain Drug Store, Inc. (4510) ("***Reeves***"); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 2001 Bryan Street, Suite 1550, Dallas, TX, 75201.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

(i)        authorizing the Debtors to obtain postpetition financing, consisting of a superpriority, secured, asset-based revolving credit facility in the principal amount of up to $35,000,000 (the "*DIP Facility*") from Regions Bank ("*Regions*"), in its separate capacities as administrative and collateral agent (in such capacities, together with its successors in such capacities, the "*DIP Agent*") and as a co-collateral agent, letter of credit issuer and lender, Bank of America, N.A., in its capacity as co-collateral agent, letter of credit issuer and lender ("*BAML*"), and certain other financial institutions from time to time (together with Regions, BAML and their respective successors and assigns, in their capacity as such, the "*DIP Lenders*"; and together with the DIP Agent, BAML in its capacity as a co-collateral agent, Regions in its capacity as a co-collateral agent, any affiliates of the DIP Lenders that provide deposit accounts, cash management services, or other bank products, and issuers of letters of credit, the "*DIP Credit Parties*");

(ii)       authorizing each Debtor to execute, deliver and perform all of its obligations under the DIP Financing Documents (as defined in paragraph 1(a) below), all in substantially the form annexed to the Motion (with such changes or amendments, if any, as were announced at, or made as a result of, the Final Hearing (as defined herein) or as otherwise authorized to be made as amendments to the DIP Loan Agreement (as defined in paragraph H below) in accordance with this Final Order, including paragraph 18 below); to execute, deliver and perform all of its obligations under all instruments, security agreements, assignments, pledges, mortgages, deposit account control agreements, reaffirmations and other documents referred to therein or requested by the DIP Credit Parties to give effect to the terms thereof; and to perform all such other and further acts as may be required or appropriate in connection with the DIP Financing Documents;

(iii)      authorizing the Debtors to use proceeds of advances under the DIP Facility (the

"***DIP Loan Proceeds***") as and to the extent permitted in the DIP Financing Documents and in accordance with the Interim Order (as defined below), this Final Order and the Budget (as defined in paragraph J below);

(iv)    granting to the DIP Agent for the respective benefit of the DIP Credit Parties to the extent provided herein (a) automatically perfected security interests in and liens on all of the DIP Collateral (as defined in paragraph K below) and (b) superpriority administrative expense status to the DIP Obligations (as defined in paragraph 1(b) below), in each case subject to the Carve-Out (as defined in paragraph 12 below) and on the terms and subject to the relative priorities set forth in the DIP Financing Documents, the Interim Order and this Final Order;

(v)    providing adequate protection to the Prepetition Credit Parties (as defined in paragraph E(i) below), the Summit Lender (as defined in paragraph E(v) below), and the Cardinal Vendors (as defined on paragraph E(vi) below) to the extent of any diminution in value of, with respect to (a) the Prepetition Credit Parties, their interests in the Prepetition Collateral (as defined in paragraph E(ii) below), (b) with respect to the Summit Lender, its interests in the Summit Collateral (as defined in paragraph E(v) below), and (c) with respect to the Cardinal Vendors, their interests in the Cardinal Collateral (as defined in paragraph E(vi) below);

(vi)    authorizing the Debtors to pay the principal, interest, fees, costs, expenses, disbursements, and other amounts payable under the DIP Financing Documents as such amounts become due and payable;

(vii)    authorizing the Debtors to use Cash Collateral (as defined in paragraph E(iv) below) and all other Prepetition Collateral, subject to the terms of the Interim Order and this Final Order;

(viii)    authorizing the Debtors to use Cash Collateral in the form of Prepetition

Receivable Collections (as defined in paragraph 7(d) below) to repay the Prepetition Lender

Debt (as defined in paragraph E(iii) below) until full and final payment thereof;

(ix)    vacating and modifying the automatic stay pursuant to section 362 of the

Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of

the Interim Order, this Final Order and the DIP Financing Documents, including the turnover of

cash collateral by the Debtors to the Prepetition Credit Parties in repayment of the Prepetition

Lender Debt;

(x)    waiving each Debtor's right to seek to surcharge any DIP Collateral pursuant to

section 506(c) of the Bankruptcy Code and any right of any Debtor under the "equities of the

case" exception in section 552(b) of the Bankruptcy Code;

(xi)    scheduling a final hearing (the "***Final Hearing***") to consider entry of this Final

Order and, in connection therewith, giving and prescribing the manner of notice of the Final

Hearing on the Motion, and waiving any applicable stay with respect to the effectiveness and

enforceability of the Interim Order and this Final Order (including under Bankruptcy Rule 6004);

and

(xii)    granting the Debtors such other and further relief as is just and proper.

The Court having held an interim hearing (the "***Interim Hearing***") on September 10,

2019, and entered an interim order (D.E. No. 61) (the "***Interim Order***") that, among other things,

scheduled the Final Hearing to consider entry of this Final Order and the grant of the relief

sought in the Motion on a final basis, as set forth in the Motion and the DIP Financing

Documents;

In accordance with Local Rule 9013-1, notice of the final relief requested in the Motion

and the Final Hearing having been served by the Debtors on (i) the Office of the United States

Trustee for the District of Delaware (the "*U.S. Trustee*"), (ii) counsel to Regions, as

administrative and collateral agent (in such capacity, the "*Prepetition Agent*") for the Prepetition

Lenders (as defined in paragraph E(i) hereof); (iii) counsel to the DIP Agent; (iv) counsel to

BAML; (v) counsel to the Summit Lender; (vi) counsel to the Cardinal Vendors; (vii) the

Internal Revenue Service; (viii) the Securities and Exchange Commission; (ix) the United States

Attorney's Office for the District of Delaware; (x) the holders of the thirty (30) largest unsecured

claims against the Debtors, on a consolidated basis; and (xi) all parties entitled to notice pursuant

to Local Rule 9013-1;

Upon the record made (a) by the Motion and the exhibits attached thereto, (b) in the

*Declaration of Mark A. Renzi, Chief Restructuring Officer of Fred's, Inc., in Support of Chapter*

*11 Petitions and First Day Motions* (the "*First Day Declaration*"), (c) the arguments and

statements of counsel, and (d) all evidence presented and matters brought to this Court's

attention at the Interim Hearing and the Final Hearing; and all objections, if any, to the relief

requested in the Motion having been withdrawn, resolved or overruled by the Court; and it

appearing to the Court that approval of the relief requested in the Motion is necessary to avoid

immediate and irreparable harm to the Debtors and their estates and is fair and reasonable and in

the best interests of the Debtors, their estates, and all parties in interest, and is essential for the

preservation and continued operation of the Debtors' businesses and the maximization of the

value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Loan

Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due

deliberation and consideration, and for good and sufficient cause appearing therefor:

**THIS COURT HEREBY FINDS AND DETERMINES**:[3]

A.      Petition Date.  On September 9, 2019 (the "***Petition Date***"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code and is continuing to manage its properties and to operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed for any Debtor.

B.      Jurisdiction and Venue. This Court has jurisdiction over these Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue for these Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Committee Formation. On September 18, 2019, the U.S. Trustee appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "***Committee***").

D.      Notice. Notice of the Motion and the Final Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order is required.

E.      Debtors' Stipulations.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of any other party (but subject to the limitations

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*.

thereon contained in paragraph 23 hereof), each Debtor, on its own behalf and on behalf of its estate, admits, stipulates, acknowledges and agrees as follows:

        (i)      <u>Prepetition Loan Documents</u>.  Pursuant to that certain Credit Agreement dated April 9, 2015 (together with all exhibits, schedules, appendices and addenda thereto and as amended, modified, restated or supplemented prior to the Petition Date, the "***Prepetition Loan Agreement***"), certain financial institutions in their capacity as lenders (collectively, the "***Prepetition Lenders***"), the Prepetition Agent, Regions, and BAML, in their respective capacities as co-collateral agents for the Prepetition Lenders (together with the Prepetition Lenders, the Prepetition Agent, any affiliates of the Prepetition Lenders who provided Bank Products (as defined in the Prepetition Loan Agreement), the LC Issuers (as defined in the Prepetition Loan Agreement), and each of the successors and assigns of any of the foregoing entities, the "***Prepetition Credit Parties***") established a revolving credit facility (and a letter of credit subfacility) for the Debtors.  The Prepetition Loan Agreement, together with each other agreement, note, instrument, guaranty, mortgage, fixture filing, deed of trust, security deed, financing statement, pledge, assignment, and other document executed at any time in connection therewith, in each case as the same may have been amended, modified, restated or supplemented from time to time, are hereinafter referred to collectively as the "***Prepetition Loan Documents***." All of the Prepetition Loan Documents create legal, valid and binding obligations on the part of each Debtor signatory thereto.

        (ii)      <u>Prepetition Collateral</u>.  Pursuant to that certain Security Agreement (as defined in the Prepetition Loan Agreement) executed by the Debtors in favor of the Prepetition Agent, each Debtor granted to the Prepetition Agent, for the benefit of the Prepetition Credit Parties and to secure all Prepetition Lender Debt, first priority liens on and security interests in

the Collateral (as defined in the Prepetition Loan Agreement), whether created, acquired or arising prior to, on or after the Petition Date (to the extent in existence on the Petition Date and all proceeds thereof, collectively, the "***Prepetition Collateral***", with such prepetition liens and security interests in favor of the Prepetition Agent being collectively called the "***Prepetition Security Interests***"), in each case as provided in the Prepetition Loan Documents.  The Prepetition Security Interests are legal, valid, binding, enforceable, non-avoidable and duly perfected and are not subject to any attachment, contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, any applicable non-bankruptcy law or otherwise; and, as of the Petition Date and before giving effect to this Final Order, the Debtors are not aware of any security interests or liens having priority over the Prepetition Security Interests except those certain liens expressly permitted under the Prepetition Loan Agreement and that on the Petition Date had priority over the Prepetition Security Interests in the Prepetition Collateral.

(iii)    <u>Prepetition Lender Debt</u>.  As of the Petition Date, certain of the Debtors were jointly and severally indebted and liable under the Prepetition Loan Documents to the Prepetition Credit Parties for revolving credit loans in the approximate principal amount of $15.0 million (the "***Prepetition Loans***"), for fees, expenses, and other charges associated with depository accounts and other Secured Bank Product Obligations (as defined in the Prepetition Loan Agreement) (collectively, the "***Prepetition Bank Product Obligations***"), and on a contingent basis in the approximate amount of $8.8 million in face amount of standby letters of credit (the "***Prepetition LCs***"; together with the Prepetition Loans, the Prepetition Bank Product Obligations, all other liabilities and obligations of Debtors in respect of indemnities, guaranties

and other payment assurances made or given to or by any Debtor for the benefit of the

Prepetition Credit Parties, all other indebtedness, liabilities and obligations owing at any time

under any of the Prepetition Loan Documents, and all interest, fees, costs, legal expenses and all

other amounts heretofore or hereafter accruing thereon or at any time chargeable to any Debtor

in connection therewith, collectively referred to as the "***Prepetition Lender Debt***").  Each Debtor

acknowledges and stipulates that the Prepetition Lender Debt was due and owing to the

Prepetition Credit Parties on the Petition Date, and any remaining unpaid balance after

application of payments subsequently made is due and owing to the Prepetition Credit Parties,

respectively, without any defense, offset, recoupment or counterclaim of any kind; as of the

Petition Date the Prepetition Lender Debt constituted (and to the extent unpaid, remains) the

legal, valid and binding obligations of each Debtor as and to the extent provided in the

Prepetition Loan Documents, as applicable, enforceable in accordance with the terms of the

applicable Prepetition Loan Documents; and none of the Prepetition Lender Debt or any

payments made to any Prepetition Credit Party or applied to the Prepetition Lender Debt is

subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim,

defense or other claim of any kind pursuant to the Bankruptcy Code or applicable non-

bankruptcy law.

(iv)    <u>Cash Collateral</u>.  All cash and deposits of the Debtors as of the Petition

Date, including, without limitation, all amounts on deposit or maintained by any Debtor in any

account with any Prepetition Credit Party and all deposits made by any Debtor with any landlord

or other Person (as defined in the DIP Loan Agreement), are subject to valid and enforceable

rights of setoff and valid, perfected, enforceable liens under the Prepetition Loan Documents and

Applicable Law (as defined in the DIP Loan Agreement), and are included in the Prepetition

Collateral, and therefore each Debtor's cash and deposits constitute cash collateral of the Prepetition Credit Parties within the meaning of section 363(a) of the Bankruptcy Code. All cash and deposits of the Debtors, and all proceeds thereof (including, without limitation, all proceeds of the Prepetition Collateral and of other property encumbered by liens and security interests granted under the Interim Order and this Final Order), regardless of whether such proceeds are in existence on the Petition Date or thereafter come into existence, are referred to herein as "***Cash Collateral***."

(v)     <u>Summit Liens</u>. Prior to the Petition Date, GE Commercial Finance Business Property Corporation (together with any successor in interest, as may applicable from time to time, the "***Summit Lender***") was granted a security interest in certain property (the "***Summit Collateral***") of (a) Debtor Summit Properties-Jacksboro, LLC in connection with that certain Promissory Note, Commercial Deed of Trust, Security Agreements, Assignment of Leases and Rents and Fixture Filing dated December 29, 2006, and (b) Debtor Summit Properties-Bridgeport, LLC in connection with that certain Promissory Note, Commercial Deed of Trust, Security Agreements, Assignment of Leases and Rents and Fixture Filing dated September 7, 2007. As of the Petition Date, the Debtors estimate that Summit Properties-Jacksboro, LLC and Summit Properties-Bridgeport, LLC owe the Summit Lender approximately $700,000 and $700,000, respectively.

(vi)     <u>Cardinal Liens/Lien Subordinations</u>.  Prior to the Petition Date, Cardinal Health 110, LLC ("***Cardinal 110***"), a pharmaceutical supplier of the Debtors, was granted security interests for the benefit of itself and another pharmaceutical supplier, Cardinal Health 112, LLC ("***Cardinal 112***", and together with Cardinal 110, collectively, the "***Cardinal Vendors***"), in certain types of personal property of the Debtors (the "***Cardinal Collateral***") in

connection with that certain Prime Vendor Agreement dated April 29, 2017.  Pursuant to that

certain Intercreditor Agreement dated April 5, 2018 (as at any time amended, modified, restated,

or supplemented, the "***Cardinal Intercreditor Agreement***"), among the Cardinal Vendors and the

Prepetition Agent, which was acknowledged by Fred's, FSOT, NPN, and Reeves, the liens of the

Cardinal Vendors on the Cardinal Collateral are subordinated to the Prepetition Agent's liens in

the Prepetition Collateral, which subordination continues with respect to financing provided in

any bankruptcy proceeding.  Any liens asserted by the Cardinal Vendors are hereinafter

collectively referred to as the "***Cardinal Liens***."  As of the Petition Date, the Debtors estimate

outstanding accounts payable to the Cardinal Vendors owing by the Debtors in the approximate

amount of $20.9 million.

      F.    <u>Permitted Prior Liens.</u>  Nothing herein shall constitute a finding or ruling by this

Court that any alleged lien permitted by the Prepetition Loan Documents (solely to the extent

any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to

the Prepetition Lender Debt as of the Petition Date, the "***Permitted Prior Lien***") is valid, senior,

enforceable, prior, perfected, or non-avoidable. Moreover, nothing herein shall prejudice the

rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Agent, the

Prepetition Credit Parties, or the Committee to challenge the validity, priority, enforceability,

seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security

interests.

      G.    <u>Need for Financing</u>.  The Debtors have an immediate and critical need to obtain

credit pursuant to the DIP Facility in order to, among other things, administer the Chapter 11

Cases, permit the orderly continuation of the operation of their businesses, permit the orderly

execution of going-out-of-business sales at certain of the Debtors' store locations, maintain

business relationships with vendors, suppliers and customers, pay payroll obligations, and satisfy other working capital and operational needs so as to maximize the value of their respective businesses and assets as debtors in possession under chapter 11 of the Bankruptcy Code.  The Debtors do not have sufficient available sources of working capital to preserve the value of and operate their businesses in the ordinary course, including through going-out-of-business sales at certain locations, without access to the DIP Facility.

H.      Proposed DIP Facility.  The Debtors have requested that the DIP Lenders establish the DIP Facility pursuant to which the Debtors may from time to time obtain loans (the "**DIP Loans**") and procure letters of credit (the "**DIP LCs**"; together with the DIP Loans and any other credit or financing accommodations made or granted to or on behalf of any Debtor under the DIP Loan Agreement, the "**DIP Credit Extensions**") in an aggregate principal amount outstanding at any time not to exceed $35,000,000 (with a subfacility for DIP LCs in an aggregate amount not to exceed at any time $8,779,672.00), in each case subject to a borrowing base and commitment limitations, sub-limits, reserves and other conditions to and limitations on availability in the DIP Loan Agreement, with all DIP Credit Extensions and related obligations to be secured by all real and personal property of the Debtors, wherever located and whether created, acquired, existing or arising prior to, on or after the Petition Date.  The DIP Lenders are willing to establish the DIP Facility upon the terms and conditions set forth herein and in that certain Postpetition Credit Agreement that has been entered into by the Debtors and the DIP Credit Parties, substantially in the form attached to the Motion (together with all schedules, exhibits and annexes thereto, and as at any time amended, modified, restated or supplemented in accordance with the terms hereof and thereof, the "**DIP Loan Agreement**").

I.      No Credit Available on More Favorable Terms.  The DIP Facility is the best

source of debtor-in-possession financing available to the Debtors. Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain postpetition financing from sources other than the DIP Credit Parties and on terms more favorable than the DIP Loan Agreement. The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain: (i) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. As described in the First Day Declaration, financing on a postpetition basis on better terms is not otherwise available without granting the DIP Credit Parties: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets; (2) superpriority claims and liens; (3) the other protections set forth in the Interim Order and this Final Order; and (4) a full refinancing of the Prepetition Lender Debt.

J.    Budget.  The Debtors prepared and attached to the Motion a 9-week rolling cash flow budget in accordance with the DIP Loan Agreement (the "***Preliminary Budget***"). A revised budget (the "***Budget***"), which at any time may be amended, supplemented, updated or extended with the prior written consent of the DIP Agent[4] and in accordance with the terms hereof, and which sets forth, among other things, the projected cash receipts and disbursements for the

---

[4] Whenever approval, consent or discretion of the DIP Agent or the Prepetition Agent to take or consent to specific action is referred to in this Final Order, such approval, consent or discretion shall also include the prior written approval or consent of each of Regions and BAML, in their respective capacities as co-collateral agents under the DIP Facility, or the required DIP Lenders or Prepetition Lenders, as applicable, to take such actions or, in the case of the exercise of discretion, as such exercise may be directed by each of Regions and BAML, in their respective capacities as co-collateral agents under the DIP Facility or the required DIP Lenders or Prepetition Lenders, as applicable.

periods covered thereby, is attached to this Final Order as **Exhibit A**. The DIP Credit Parties relied upon the Preliminary Budget in entering into the DIP Loan Agreement, and the Prepetition Credit Parties are relying upon the Budget in consenting to the terms of this Final Order.  All references restricting the use of DIP Loan Proceeds to payment on any date of amounts set forth in the Budget shall mean the Budget as in effect on such date, subject to the Permitted Variances (as defined in the DIP Loan Agreement).

K.     Certain Conditions to DIP Facility.  The DIP Credit Parties' willingness to establish the DIP Facility and to make DIP Credit Extensions is conditioned upon, among other things: (i) the Debtors obtaining Court approval to enter into the DIP Loan Agreement (and all documents referred to therein) and the other DIP Financing Documents, to incur all of the obligations of the Debtors thereunder, and to confer upon the DIP Credit Parties all rights, powers and remedies thereunder; (ii) the Debtors' provision of adequate protection, as granted in the Interim Order and this Final Order, of the Prepetition Credit Parties' interests in the Prepetition Collateral pursuant to sections 361 and 363 of the Bankruptcy Code; and (iii) the Debtors' grant to the DIP Agent, for the benefit of the DIP Credit Parties and as security for the prompt payment and performance of all of the DIP Obligations (as defined in paragraph 1(b) hereof), security interests in and liens upon all of the "Collateral" as defined in the DIP Loan Agreement, which includes, without limitation, all of each Debtor's real property and personal property consisting of accounts, inventory, equipment (including fixtures), general intangibles (including payment intangibles, intellectual property, and tax refund claims), documents, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property, real property and leasehold interests, contract rights, business interruption insurance, and books and records relating to any assets of such Debtor and all proceeds of the

foregoing (including insurance proceeds), whether such assets were in existence on the Petition Date or were thereafter created, acquired or arising and wherever located (all such real and personal property, including, without limitation, all Prepetition Collateral, being collectively hereinafter referred to as the "***DIP Collateral***").  The DIP Collateral shall not include the Debtors' and estates' claims and causes of action pursuant to section 544, 545, 547, 548, 550, 551 and 553 of the Bankruptcy Code (respectively, "***Avoidance Claims***" and "***Avoidance Proceeds***").  DIP Collateral shall include, and Avoidance Claims and Avoidance Proceeds shall not include, claims under section 549 of the Bankruptcy Code, and claims under sections 550 and 551 of the Bankruptcy Code related to such claims, and proceeds thereof.

      L.     <u>Adequate Protection</u>.

      (i) <u>Prepetition Credit Parties</u>.  The Prepetition Credit Parties are entitled to adequate protection as set forth in the Interim Order and this Final Order by reason of (w) the granting of first priority, priming liens on the Prepetition Collateral, for the benefit of the DIP Credit Parties; (x) the use, sale, lease or depreciation or other diminution in value of the Prepetition Credit Parties' interests in the Prepetition Collateral; (y) the subordination of the Prepetition Security Interests to the Carve-Out; and (z) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise pursuant to sections 361(a), 363(c), 364(c), and 364(d)(1) of the Bankruptcy Code. The adequate protection and other treatment proposed to be provided by the Debtors to the Prepetition Credit Parties pursuant to this Final Order are authorized by the Bankruptcy Code, will minimize disputes and litigation over use of the Prepetition Collateral, and will facilitate the Debtors' ability to continue their business operations and complete an orderly wind-down of certain of the Debtors' assets through the use of the DIP Facility.

(ii) <u>Cardinal Vendors</u>. The Debtors acknowledge and agree that the Cardinal Vendors are entitled to adequate protection as set forth in the Interim Order and this Final Order by reason of (w) the granting of first priority, priming liens on the Cardinal Collateral, for the benefit of the DIP Credit Parties; (x) the use, sale, lease or depreciation or other diminution in value of the Cardinal Vendors' interests in the Cardinal Collateral; (y) the subordination of the Cardinal Liens to the Carve-Out; and (z) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise pursuant to sections 361(a), 363(c), 364(c), and 364(d)(1) of the Bankruptcy Code. The adequate protection and other treatment proposed to be provided by the Debtors to the Cardinal Vendors pursuant to the Interim Order and this Final Order are authorized by the Bankruptcy Code, will minimize disputes and litigation over use of the Cardinal Collateral, and will facilitate the Debtors' ability to continue their business operations and complete an orderly wind-down of certain of the Debtors' assets through the use of the DIP Facility.

M.    <u>Service of Motion, Interim Order and Notice of Final Hearing</u>.  The affidavits and declaration of service on file with this Court demonstrate that the Debtors have served copies of the Motion (together with the annexed copies of the proposed DIP Loan Agreement and the Preliminary Budget annexed thereto), a copy of the Interim Order, and notice of the Final Hearing by electronic mail, telecopy transmission, hand delivery, overnight courier, or first class United States mail upon (i) the U.S. Trustee, (ii) counsel to the Prepetition Agent; (iii) counsel to the DIP Agent; (iv) counsel for BAML; (v) counsel to the Summit Lender; (vi) counsel to the Cardinal Vendors; (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; (ix) the United States Department of Labor; (x) the United States Attorney's Office for the District of Delaware; and (xi) the holders of the thirty (30) largest unsecured claims

against the Debtors, on a consolidated basis.  The Court finds that the foregoing notice of the

Motion, as it relates to this Final Order and the Final Hearing, is appropriate, due and sufficient

for all purposes under the Bankruptcy Code (including sections 102(1) and 364 thereof), the

Bankruptcy Rules (including Bankruptcy Rule 4001(b) and (c)), and the Local Rules, and that no

further notice of the relief sought at the Final Hearing and the relief granted herein is necessary

or required.

   N. <u>Finding of Good Cause</u>.  Good cause has been shown for the entry of this Final

Order and authorization for (i) the DIP Credit Parties to provide the Debtors with the DIP

Facility, (ii) the Debtors to accept the DIP Facility, obtain DIP Credit Extensions thereunder, and

incur the DIP Obligations pursuant to the DIP Loan Agreement and the other DIP Financing

Documents as hereinafter provided, (iii) the Debtors to execute and deliver each of the DIP

Financing Documents, and (iv) the Debtors to provide the Prepetition Credit Parties and the

Cardinal Vendors with adequate protection as set forth herein.  Each Debtor's need for financing

of the type afforded by the DIP Loan Agreement is immediate and critical.  Entry of this Final

Order will preserve the assets of the Debtors' estates and their value and is in the best interests of

the Debtors, their creditors and their estates.  The terms of the DIP Facility are fair and

reasonable, reflect each Debtor's exercise of its business judgment, and are supported by

reasonably equivalent value and fair consideration.

   O. <u>Finding of Good Faith</u>.  Based upon the record presented at the Interim Hearing

and the Final Hearing, the DIP Facility and the DIP Financing Documents have been negotiated

in good faith and at arm's length between the Debtors, on the one hand, and the DIP Credit

Parties, on the other.  All of the DIP Obligations, including, without limitation, all DIP Credit

Extensions and other liabilities and obligations of any Debtor to the DIP Credit Parties under this

Final Order or in respect of credit card debt, overdrafts and related liabilities arising from treasury, depository, credit card, or cash management services, or in connection with any automated clearing house transfers of funds or other Bank Products (as defined in the DIP Loan Agreement), shall be deemed to have been extended by the DIP Credit Parties in "good faith," as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code.  The DIP Credit Parties shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

P.      <u>Immediate Entry</u>.  The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules. The Debtors' obtaining and consummating the DIP Facility in accordance with and as contemplated by the terms of the Interim Order, this Final Order and the DIP Financing Documents is in the best interests of each Debtor's estate and is consistent with each Debtor's exercise of its business judgment and fiduciary duties.  Under the circumstances, the notice given by the Debtors of the Motion and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Rules.  No further notice of the relief sought at the Final Hearing is necessary or required.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1.      **<u>Grant of Motion; Authorization of Financing; Use of Proceeds</u>**.

(a)      The Motion is hereby GRANTED on a final basis as and to the extent provided herein, and the Court hereby authorizes and approves each Debtor's execution and delivery of the DIP Loan Agreement in substantially the form annexed to the Motion (with such

changes, if any, as were announced at, or as a result of, the Interim Hearing or the Final Hearing

or are otherwise authorized to be made as amendments to the DIP Loan Agreement in

accordance with the Interim Order or this Final Order) and all instruments, guaranties, security

agreements, assignments, pledges, financing statements, intellectual property filings, mortgages,

deeds of trust, and other documents referred to therein or requested by the DIP Credit Parties to

give effect to the terms thereof (the DIP Loan Agreement and all such other instruments,

agreements and other documents, as at any time amended, modified, restated or supplemented in

accordance with the terms hereof and thereof, being collectively called the "***DIP Financing***

***Documents***").

(b)     The Debtors are hereby immediately authorized to obtain DIP Credit

Extensions and incur any and all other DIP Obligations (as defined below) from time to time

pursuant to the DIP Financing Documents, on the terms set forth therein and in this Final Order,

up to an aggregate principal amount of DIP Credit Extensions outstanding at any time not to

exceed $35,000,000 (subject to the borrowing base, commitment limitations, sub-limits, reserves

and other conditions and limitations on availability set forth in the DIP Loan Agreement), plus

all interest, fees, costs, payments, expenses, and other amounts payable in connection with such

DIP Credit Extensions as provided in the Interim Order, this Final Order and the DIP Financing

Documents; to incur any and all indebtedness, liabilities and obligations under the DIP Financing

Documents; and to pay all principal, interest, fees, costs, payments, expenses and other

obligations provided for under the DIP Financing Documents (including, without limitation,

obligations to indemnify the DIP Credit Parties and to reimburse them for their reasonable and

documented legal fees and other out-of-pocket expenses); and subject to all of the terms and

conditions in this Final Order, the DIP Financing Documents, and the Budget, the Debtors may

use the DIP Loans and other DIP Credit Extensions (a) to pay (or in the case of DIP LCs and the Prepetition LCs, to cash collateralize) amounts owed by any Debtor at any time to any DIP Lender under any of the DIP Financing Documents, including, without limitation, costs, fees and expenses at any time due thereunder; (b) to make disbursements specified or authorized to be paid in the Budget and in amounts not to exceed the Permitted Variances provided in the DIP Loan Agreement; (c) to make adequate protection and other payments to the Prepetition Credit Parties and the Cardinal Vendors to the extent authorized or required herein; (d) to pay other fees or expenses that are required or authorized to be paid under any of the DIP Financing Documents or this Final Order; (e) to fund the Carve-Out; and (f) for any other purposes specified in the Budget, this Final Order or the DIP Loan Agreement.  For purposes hereof, the term "***DIP Obligations***" means all "Obligations" as defined in the DIP Loan Agreement and shall include, without limitation, all DIP Credit Extensions and all interest, costs, expenses, fees (including, without limitation, any documented and actually incurred fees and expenses owing at any time to the DIP Agent), and other charges at any time or times payable by any Debtor to any DIP Credit Party in connection with any DIP Credit Extensions, all reimbursement obligations and other indebtedness in respect of any DIP LCs or Prepetition LCs, and all other indebtedness and obligations at any time or times outstanding under any of the DIP Financing Documents (including, without limitation, indebtedness in respect of Bank Products and indemnities and similar obligations (whether contingent or absolute)). The Debtors shall be jointly and severally liable for the DIP Obligations in accordance with the DIP Loan Agreement. Neither the DIP Obligations, nor any payment, transfer, or grant of a security interest or lien hereunder or under any of the DIP Financing Documents, shall be stayed, restrained, voidable, or recoverable under any applicable law (including sections 549 or 550 of the Bankruptcy Code) or be subject to any

reduction, setoff, recoupment, offset, recharacterization, subordination (equitable, contractual, or otherwise), counterclaim, cross-claim, or defense, or any other challenge under any applicable law.

(c)     In addition to the DIP Credit Extensions described above, the Debtors are authorized to incur credit and debit card debt, overdrafts and related liabilities arising from treasury, depository, and cash management services and other Bank Products provided to or for the benefit of any Debtor by any DIP Credit Party (or any of its affiliates), provided that nothing herein shall require any DIP Credit Party to allow overdrafts to be incurred or to provide any such Bank Products to any Debtor.

(d)     No DIP Credit Party shall have any obligation or responsibility to monitor any Debtor's use of the DIP Loans or other DIP Credit Extensions, and each DIP Credit Party may rely upon each Debtor's representations that the amount of the DIP Credit Extensions requested at any time, and the use thereof, are in accordance with the requirements of this Final Order, the Budget, the DIP Financing Documents, the Bankruptcy Code and the Bankruptcy Rules.

(e)     As provided in the DIP Loan Agreement, the Interim Order and this Final Order, and subject to paragraph 23 hereof, the Prepetition LCs shall be treated as DIP LCs issued pursuant to the DIP Loan Agreement, shall constitute part of the DIP Credit Extensions, and shall be entitled to all of the benefits and security of the DIP Financing Documents and this Final Order. Any cash collateral securing the LC Obligations (as defined in DIP Loan Agreement) shall constitute a part of the DIP Collateral to which the DIP Liens shall attach.

(f)     The Debtors may obtain and use DIP Loan Proceeds only for purposes and in the amounts specified in the DIP Loan Agreement and the Budget (subject to the Permitted

Variances). No DIP Loan Proceeds shall be used to (i) make any payment in settlement or satisfaction of any prepetition claim (other than the Prepetition Lender Debt) or administrative or priority claim (other than the DIP Obligations), unless (x) in compliance with the Budget and permitted under the DIP Financing Documents or this Final Order, or (y) as separately approved by this Court upon notice to the DIP Agent and subject to compliance with the Budget; (ii) except as expressly provided or permitted hereunder or in the Budget or as otherwise approved by the DIP Agent (and approved by this Court, if necessary), make any payment or distribution to or for the benefit of any non-Debtor affiliate, equity holder, or insider of any Debtor, and in no event shall any management, advisory, consulting or similar fees be paid to or for the benefit of any affiliate that is not a Debtor; (iii) make any payment, loan, advance, remittance or other transfer whatsoever to any Debtor or affiliate of any Debtor that is not a "Borrower" under the DIP Loan Agreement; or (iv) make any payment otherwise prohibited by this Final Order or the DIP Loan Agreement.

(g)     The Budget may be amended, supplemented or updated with the prior written consent of the DIP Agent and with notice to and consultation with the Committee. Deviations from the Budget may be approved by the DIP Agent (but to be enforceable against the DIP Credit Parties, such deviations must be in writing, which writing may be an electronic communication), in each case without notice to any party in interest and without Court approval. Notwithstanding any deviation from the Budget, the DIP Credit Parties may, in their discretion and pending resolution of any objection of the DIP Agent to such deviation, continue to make DIP Credit Extensions consistent with the Budget with or without the proposed change or to the extent the DIP Credit Parties deem it necessary to do so to protect or preserve the DIP Collateral (or the validity, perfection, or priority of the DIP Liens or Prepetition Security Interests thereon)

or to enhance the likelihood or timing of repayment of the DIP Obligations and Prepetition Lender Debt

2. **Execution, Delivery and Performance of DIP Financing Documents**. The DIP Financing Documents may be executed and delivered on behalf of each Debtor by any officer, director, or agent of such Debtor, who by signing shall be deemed to represent himself or herself to be duly authorized and empowered to execute such DIP Financing Documents and amendments for and on behalf of such Debtor; the DIP Credit Parties shall be authorized to rely upon any such person's execution and delivery of any of the DIP Financing Documents and any amendments thereto as having done so with all requisite power and authority to do so; and the execution and delivery of any of the DIP Financing Documents or any amendments thereto by any such person on behalf of such Debtor shall be conclusively presumed to have been duly authorized by all necessary corporate, limited liability company, or other entity action (as applicable) of such Debtor. Effective upon the execution and delivery thereof, each of the DIP Financing Documents and any amendments thereto is or shall constitute valid and binding obligations of each Debtor, enforceable against each Debtor to the extent and in accordance with their terms for all purposes during its Chapter 11 Case and any subsequently converted case of each Debtor under Chapter 7 of the Bankruptcy Code (a "***Successor Case***"), and after the dismissal of any Chapter 11 Case. Subject to the provisions of paragraph 23 hereof, no obligation of, or payment, transfer or grant of security by, any Debtor under any DIP Financing Documents or pursuant to this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including, without limitation, under sections 502(d), 544, 547, 548, 549 or 550 of the Bankruptcy Code or under any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform

Voidable Transactions Act or similar statute or common law), or be subject to any defense, reduction, setoff, recoupment or counterclaim.  In furtherance of the provisions of paragraph 1 of this Final Order, each Debtor is authorized to (i) do and perform all acts, (ii) make, execute and deliver all DIP Financing Documents, and (iii) pay all documented and actually incurred fees, costs and expenses, in each case as may be necessary or, in the discretion of the DIP Agent, desirable to give effect to any terms and conditions of the DIP Financing Documents and any amendments thereto, to validate and continue the perfection of the DIP Liens, or as otherwise required or contemplated by the DIP Financing Documents and any amendments thereto.

3.    **DIP Liens**.  As security for the Debtors' timely payment and performance of all DIP Obligations, the DIP Agent shall have, for the benefit of the DIP Credit Parties, and is hereby granted, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens upon all of the DIP Collateral (collectively, the "***DIP Liens***"), in the priorities set forth herein. Subject to the Carve-Out, the DIP Liens shall be:

(a)    Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected, first priority (except to the extent provided otherwise in this sentence) senior liens on and security interests in all DIP Collateral that is not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date (collectively, the "***Unencumbered Property***").

(b)    DIP Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected security interests and liens upon the DIP Collateral, which security interests and liens shall be junior to (but only to) any properly perfected, valid, enforceable, and unavoidable security interests and liens in existence on the Petition Date with respect to any Prepetition Collateral, except as otherwise

provided in paragraph 3(c) hereof.

(c)     <u>Priming DIP Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy

Code, valid, binding, continuing, enforceable, fully perfected security interests and liens upon

any Prepetition Collateral, which security interests and liens shall in all respects be prior and

senior in priority to (1) the Prepetition Security Interests and the Prepetition Lender Adequate

Protection Liens (as defined in paragraph 7(a) below) with respect to such Prepetition Collateral,

(2) the Cardinal Liens and Cardinal Adequate Protection Liens (as defined in paragraph 8(a)

below) with respect to the Cardinal Collateral, and (3) any security interest or other lien on DIP

Collateral that on the Petition Date was unperfected, is invalid, unenforceable or avoidable, or is

equitably or contractually subordinated to the DIP Liens or the Prepetition Security Interests.

(d)     <u>Liens Senior to Certain Other Liens</u>. Neither the DIP Liens nor the

Adequate Protection Liens (as defined in paragraph 8(a) below) shall be (i) subject or

subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of

any Debtor or its estate under section 551 of the Bankruptcy Code, (B) any lien or security

interest of any lessor or landlord under any agreement or applicable state law to the extent any

such lien has been waived in favor of any of the Prepetition Security Interests, (C) except to the

extent the DIP Financing Documents expressly allow a postpetition lien to have priority over the

DIP Liens, any liens granted by any Debtor to other Persons or otherwise arising after the

Petition Date, including, without limitation, any liens or security interests granted in favor of any

Cardinal Vendor, or any Governmental Authority (as defined in the DIP Loan Agreement) for

any liability of any Debtor, or (D) any intercompany or affiliate liens or security interests of any

Debtor; (ii) subordinated to or made *pari passu* with any other lien or security interest under

section 363 or 364 of the Bankruptcy Code or otherwise; or (iii) subject to sections 510, 549 or

550 of the Bankruptcy Code.  In no event shall any Person who pays (or, through the extension

of credit to any Debtor, causes to be paid) any of the DIP Obligations be subrogated, in whole or

in part, to any rights, remedies, interests, claims, privileges, liens or priorities granted to or in

favor of, or conferred upon, any DIP Credit Party by the terms of any DIP Financing Documents

or this Final Order unless such Person contemporaneously causes Payment in Full[5] of all of the

DIP Obligations and the Prepetition Lender Debt.

(e)    Continuation of Liens.  Subject to paragraph 23 hereof, the Prepetition

Security Interests, the Prepetition Lender Adequate Protection Liens (as defined in paragraph

7(a) below), and the DIP Liens that prime the Prepetition Security Interests, are continuing liens

and the Prepetition Collateral and DIP Collateral are and will continue to be encumbered by such

liens in light of the integrated nature of the DIP Facility, the DIP Financing Documents, and the

Prepetition Loan Documents.

4.    **Superpriority Claims**. All DIP Obligations shall constitute allowed superpriority

claims (the "*Superpriority Claims*") against each Debtor (without the need to file any proof of

claim) pursuant to section 364(c)(1) of the Bankruptcy Code and subject only to the Carve-Out

(defined below), and shall have priority in right of payment over (i) all other obligations,

liabilities and indebtedness of such Debtor, whether now in existence or hereafter incurred by

such Debtor, (ii) all administrative expenses of the kind specified in sections 503(b) and 507(b)

of the Bankruptcy Code, and (iii) all administrative expenses or other claims arising under

sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507, 546, 552(b), 726, 1113, or

---

[5] The term "*Payment in Full*" (i) when used in reference to any Prepetition Lender Debt, shall have the meaning ascribed to "Payment in Full" in the Prepetition Loan Agreement, provided that Payment in Full of the Prepetition Lender Debt shall not occur unless and until (a) the Challenge Deadline (as defined in paragraph 23 below) expires without any Challenge (as defined in paragraph 23 below) having been timely asserted, or (b) in the event a Challenge is asserted, it is resolved by a final order of the Court in favor of the affected Prepetition Credit Parties, as applicable; and (ii) when used in reference to the DIP Obligations, shall have the meaning ascribed to "Payment in Full" in the DIP Loan Agreement.

1114 of the Bankruptcy Code. Such Superpriority Claims shall, for purposes of section

1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under

section 503(b) of the Bankruptcy Code and shall be payable from all prepetition and postpetition

property of the Debtors and all proceeds thereof including all Prepetition Collateral and DIP

Collateral.

    5.    **Repayment**.

    (a)    <u>Repayment of Prepetition Lender Debt</u>.  Subject to paragraph 23 hereof,

the Prepetition Lender Debt shall be paid as and to the extent provided in paragraph 7 of this

Final Order, as part of the adequate protection to be provided to the Prepetition Credit Parties.

The DIP Lenders are authorized to fund under the DIP Facility (to the extent that Payment in

Full of the Prepetition Lender Debt has not theretofore occurred pursuant to paragraph 7 of the

Interim Order or of this Final Order) one or more DIP Loans in an amount sufficient to cause

Payment in Full of, or cash collateralize, all of the Prepetition Lender Debt, and in such event the

Debtors shall be deemed to have requested a funding of one or more DIP Loans without need for

further action by the Debtors.

    (b)    <u>Repayment of DIP Obligations</u>.  The DIP Obligations shall be due and

payable, and shall be paid, as and when provided in the DIP Financing Documents and as

provided herein, without defense, offset, recoupment or counterclaim.  Without limiting the

generality of the foregoing, in no event shall any Debtor be authorized to offset or recoup any

amounts owed, or allegedly owed, by any Prepetition Credit Party or any DIP Credit Party to any

Debtor or any Debtor's subsidiaries or affiliates against any of the DIP Obligations without the

prior written consent of each Prepetition Credit Party or DIP Credit Party that would be affected

by any such offset or recoupment, and no such consent shall be implied from any action, inaction

or acquiescence by any Prepetition Credit Party or DIP Credit Party.

6.    **Cash Collateral**.

(a)    <u>Collection Accounts</u>. To the extent required by the DIP Financing
Documents, each Debtor shall cause all Cash Collateral (other than DIP Loan Proceeds) to be
promptly deposited in an account or accounts designated by the DIP Agent (each, a "***Collection
Account***").  Prior to the deposit of Cash Collateral to any Collection Account, each Debtor shall
be deemed to hold such proceeds in trust for the benefit of the DIP Credit Parties and the
Prepetition Credit Parties.  The DIP Agent shall be entitled to apply such Cash Collateral to the
payment of the Prepetition Lender Debt and the DIP Obligations, in each case in such order of
application as the DIP Agent may elect from time to time.

(b)    <u>Use of Cash Collateral</u>.  The Debtors may use DIP Loan Proceeds
constituting Cash Collateral for all purposes for which they may be used under the DIP Loan
Agreement and this Final Order. Any Cash Collateral securing the Prepetition LCs as of the
Petition Date (the "***LC Cash Collateral***") shall continue to secure all of the DIP LCs. The
Debtors may use Cash Collateral not consisting of DIP Loan Proceeds and any LC Cash
Collateral solely (i) to fund the Carve-Out, (ii) to pay Prepetition Lender Debt and DIP
Obligations, and (iii) in the case of any obligations in respect of DIP LCs and other contingent
DIP Obligations, to provide cash collateral in accordance with the DIP Loan Agreement for any
such contingent obligations.  The Debtors may not use any LC Cash Collateral for any purpose
other than to secure LC Obligations and other DIP Obligations under the DIP Facility.

7.    **Adequate Protection of Prepetition Credit Parties**.  As adequate protection of
its interests in the Prepetition Collateral, the Prepetition Agent, on behalf of the Prepetition
Credit Parties, is entitled, pursuant to sections 105, 361, 363 and 364 of the Bankruptcy Code, to

claims and other protections (the "***Prepetition Lender Adequate Protection Claims***") in an amount equal to the Collateral Diminution.  As used in this Final Order, the term "***Collateral Diminution***" shall mean an amount equal to the aggregate diminution in the value in any Prepetition Credit Party's interest in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date for any reason, including, without limitation, any such diminution resulting from the use of Cash Collateral; the priming of any Prepetition Security Interests in the Prepetition Collateral by the DIP Liens pursuant to this Final Order; the depreciation, sale, loss, use, or collection by any Debtor (or any other decline in value) of such Prepetition Collateral; the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; or the subordination of liens and priority claims in connection with the Carve-Out, in each case to the fullest extent provided under the Bankruptcy Code.  The Prepetition Agent is hereby granted, as adequate protection but subject to the rights of third parties preserved under paragraph 23 hereof, the following for the benefit of the Prepetition Credit Parties:

(a)     <u>Prepetition Lender Adequate Protection Liens</u>.  The Prepetition Agent, for the benefit of the Prepetition Credit Parties, is hereby granted (effective and perfected upon the date of entry of the Interim Order and without the necessity of the execution, filing or recording by any Debtor, the Prepetition Agent or any other Prepetition Credit Party of any security agreement, pledge agreement, mortgage, deeds of trust, financing statement or other agreement), replacement security interests in and liens on all of the DIP Collateral (the "***Prepetition Lender Adequate Protection Liens***").  The Prepetition Lender Adequate Protection Liens shall be junior and subordinate to (i) the Carve-Out, (ii) the DIP Liens, and (iii) any valid, perfected, enforceable, and unavoidable security interest in or lien upon any Prepetition Collateral that, on the Petition Date, was senior to and had priority over the Prepetition Security Interests in such

Prepetition Collateral. The Prepetition Lender Adequate Protection Liens shall not be subject to sections 506(c), 510(c), 549, or 550 of the Bankruptcy Code, and no lien avoided and preserved for the benefit of any estate pursuant to section 510 of the Bankruptcy Code shall be made *pari passu* with or senior to any Prepetition Lender Adequate Protection Liens.

(b)    <u>Priority of Prepetition Lender Adequate Protection Claims</u>.  The Prepetition Lender Adequate Protection Claims are allowed as priority administrative claims pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and, subject to the Carve-Out and the Superpriority Claims, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, including, without limitation, (i) any administrative claim in any Successor Case, and (ii) any intercompany claim between or among the Debtors for reimbursement, contribution, indemnification, or otherwise to the extent constituting an administrative expense claim of any Debtor.

(c)    <u>Interest Payments</u>.  Until Payment in Full of the Prepetition Lender Debt, the Prepetition Agent, for the benefit of the Prepetition Credit Parties, shall be entitled to receive as additional adequate protection cash payments of interest each month, in arrears, on the first day of the month, at the applicable non-default rate of interest under the Prepetition Loan Documents (including, for the avoidance of doubt, payment of all prepetition accrued and unpaid interest under the Prepetition Loan Documents).

(d)    <u>Application of Prepetition Receivable Collections</u>. All proceeds and collections on or after the Petition Date in respect of any accounts receivable or payment intangibles of any Debtor, and all other proceeds received by any Debtor, that arose from any

sale, lease or other disposition of any DIP Collateral or the rendition of any services by any Debtor (collectively, the "***Prepetition Receivable Collections***") shall be promptly turned over to the Prepetition Agent to be applied by it to pay (or, in the case of contingent obligations, to cash collateralize) the Prepetition Lender Debt in accordance with the terms of the Prepetition Loan Documents until Payment in Full of the Prepetition Lender Debt; provided, however, that Prepetition Receivables Collections shall not include proceeds from the sale of real estate in Jacksboro, Texas and Bridgeport, Texas used to repay mortgage debt owed by Debtors Summit Properties-Jacksboro, LLC and Summit Properties-Bridgeport, LLC, respectively.  The Prepetition Agent shall be entitled to assume that all deposits to the Collection Account and all collections received by any Debtor and turned over to Prepetition Agent after the Petition Date constitute Prepetition Receivable Collections until such time as Prepetition Agent has received and applied to the Prepetition Lender Debt an amount equal to the aggregate value of all Prepetition Collateral consisting of accounts receivable and payment intangibles on the books and records of Debtors as of the Petition Date.

(e)     Use of Prepetition Inventory.  In consideration of each Debtor's use, consumption, sale or other disposition of any inventory (together with packaging materials and labels, collectively, "***Inventory***") that was in existence on the Petition Date (collectively, "***Prepetition Inventory***"), to the extent the use, consumption, sale or other disposition creates an account receivable therefor owing to any Debtor, the Debtors shall pay to the Prepetition Agent, concurrently with any use, consumption, sale or other disposition thereof, the gross book value (in the manner reported to the Prepetition Agent on the Debtors' prepetition borrowing base certificates, which value reflects lower of cost or market adjustments consistent with past practices) of such Prepetition Inventory, and the Prepetition Agent shall be authorized to apply

- 31 -

all such payments to the Prepetition Lender Debt (in such order of application as the Prepetition

Agent may elect in its discretion consistent with the Prepetition Loan Agreement) until Payment

in Full of the Prepetition Lender Debt.  Based upon representations of the Debtor representatives

at or prior to the Interim Hearing and/or the Final Hearing, the total gross book value of all

Prepetition Inventory as of the Petition Date was approximately $42.5 million (the "***Prepetition***

***Inventory Value***"), and, therefore, the aggregate of all payments made to the Prepetition Agent

pursuant to the provisions of this subparagraph shall not exceed such value.  For purposes of

implementing this measure of adequate protection, it shall be assumed that each Debtor's use,

consumption, sale or other disposition of any Inventory after the Petition Date constitutes a use

of Prepetition Inventory until the aggregate amount of the payments received by the Prepetition

Agent under this subparagraph equals the Prepetition Inventory Value. The DIP Credit Parties

are authorized to make DIP Loans in amounts sufficient to satisfy the Debtors' payment

obligations under this subparagraph and to disburse such DIP Loans directly to the Prepetition

Agent for application to the Prepetition Lender Debt.  All such DIP Loans shall be entitled to all

of the benefits and security of the DIP Financing Documents, the Interim Order and this Final

Order.

(f)    Application of Non-Ordinary Course Proceeds.  All Non-Ordinary Course

Proceeds (as defined in the DIP Loan Agreement) will be presumed to constitute and arise from

DIP Collateral existing on the Petition Date and shall be applied (or, despite any prior

application, reapplied) to pay, or in the case of contingent obligations, to cash collateralize, the

Prepetition Lender Debt or the DIP Obligations in such order of application as the Prepetition

Agent and the DIP Agent shall elect, in their sole discretion, until Payment in Full of the

Prepetition Lender Debt and the DIP Obligations.  If Non-Ordinary Course Proceeds are applied

to the Prepetition Lender Debt, then such application shall be as provided in the Prepetition Loan

Agreement; and if Non-Ordinary Course Proceeds are applied to the DIP Obligations, then such

application shall be as provided in the DIP Loan Agreement.

(g)    Fees and Expenses of Professionals for Prepetition Credit Parties.  As

additional adequate protection, and notwithstanding any limitations in the Budget, the Debtors

shall reimburse the Prepetition Credit Parties for (i) the documented and actually incurred fees

and expenses of professional retained by them (the "*Prepetition Professionals*"), including, but

not limited to, the documented and actually incurred fees and disbursements of legal counsel,

financial advisors, appraisers and other third-party consultants, incurred by them prior to the

Petition Date and reimbursable to the Prepetition Credit Parties pursuant to the Prepetition Loan

Documents, and (ii) on a current basis, the documented and actually incurred fees and expenses

of the Prepetition Professionals, incurred by the Prepetition Credit Parties on or subsequent to the

Petition Date and reimbursable to them under and pursuant to the Prepetition Loan Documents.

The Debtors shall pay the documented and actually incurred fees, expenses and disbursements

set forth in this paragraph 7(g) no later than ten (10) Business Days after the receipt by the

Notice Parties (as defined below) of invoices therefor (the "*Invoiced Fees*") (which invoices

may be redacted for protection of any applicable privilege, work product doctrine, and other

confidential information)[6] and without the necessity of filing formal fee applications, regardless

of whether such amounts arose or were incurred before or after the Petition Date; provided,

however, that the Debtors, the Committee, and the U.S. Trustee may challenge the

reasonableness of any portion of the Invoiced Fees (the "*Disputed Invoiced Fees*") if, within ten

(10) Business Days after receipt by the Notice Parties of the relevant invoices therefor, (i) the

---

[6] The provision of such invoices or summary materials shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine.

Debtors pay in full all of the Invoiced Fees other than the Disputed Invoiced Fees and (ii) the

Debtors, the Committee, or the U.S. Trustee notifies the Prepetition Agent and each affected

Prepetition Lender of the objection in writing which, if unable to be resolved consensually within

a reasonable time, shall be followed by the filing with this Court of a motion or other pleading

requesting a determination of allowance or disallowance of the Disputed Invoiced Fees) setting

forth the specific basis for each objection to the Disputed Invoiced Fees. The Debtors shall pay

any Disputed Invoiced Fees promptly upon approval by this Court, to the extent of such

approval. As used herein, the term "***Notice Parties***" shall mean: primary counsel of record for

the Debtors, primary counsel of record for the Committee, primary counsel of record for the DIP

Agent, counsel of record for BAML, and the U.S. Trustee, each as specified as follows: (a)

proposed counsel to the Debtors, Kasowitz Benson Torres LLP, 1633 Broadway, New York,

New York 10019, Attn.: Adam L. Shiff (ashiff@kasowitz.com) and Robert M. Novick

(rnovick@kasowitz.com); (b) proposed co-counsel to the Debtors, Morris, Nichols, Arsht &

Tunnell, 1201 N Market St #1600, Wilmington, DE 19801, Attn.: Derek Abbott

(dabbott@mnat.com); (c) proposed counsel to the Committee, Lowenstein Sandler LLP, 1251

Avenue of the Americas, New York, NY 10020, Attn.: Jeffrey Cohen (jcohen@lowenstein.com)

and Gabriel Olivera (golivera@lowenstein.com); (d) proposed counsel to the Committee,

Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, DE

19801, Attn.: Matthew P. Ward (matthew.ward@wbd-us.com); (e) counsel for the DIP Agent

and Prepetition Agent, Parker Hudson Rainer & Dobbs LLP, 303 Peachtree Street NE, Suite

3600, Atlanta, Georgia 30308, Attn: Eric W. Anderson (eanderson@phrd.com) and Bryan E.

Bates (bbates@phrd.com); (f) co-counsel for the DIP Agent, Richards, Layton & Finger, P.A.,

One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: John H. Knight

(knight@rlf.com); (g) counsel for BAML, Choate, Hall & Stewart LLP, 2 International Place, Boston, MA 02110, Attn: John F. Ventola (jventola@choate.com) and Emily J. Holt (eholt@choate.com); and (h) Benjamin A. Hackman, Office of the United States Trustee, 844 N. King Street, Room 2207, Lockbox 35, Wilmington, Delaware 19801 (benjamin.a.hackman@usdoj.gov).

(h)     Reservation of Rights.  Nothing herein shall be deemed to be a waiver by any Prepetition Credit Party of its right to request additional or further protection of its interests in any Prepetition Collateral, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner for any Debtor or the conversion or dismissal of any of these Chapter 11 Cases, to object to any proposed sale or other disposition of any Debtor's assets under section 363 of the Bankruptcy Code or otherwise, to accept or reject any plan of reorganization or liquidation, or to request any other relief in these Chapter 11 Cases; nor shall anything herein or in any of the DIP Financing Documents constitute an admission by a Prepetition Credit Party regarding the quantity, quality or value of any collateral securing the Prepetition Lender Debt or constitute a finding of adequate protection with respect to the interests of the Prepetition Agent in any DIP Collateral.  The Prepetition Credit Parties shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of section 507(b) of the Bankruptcy Code in connection with any use, sale, encumbering or other disposition of any of the DIP Collateral, to the extent that the protections afforded by the Interim Order and this Final Order to the Prepetition Security Interests proves to be inadequate.

(i)     Reporting and Information Rights.  Until Payment in Full of the Prepetition Lender Debt, the Prepetition Agent shall be entitled to the same reporting, notification and other information rights as the DIP Agent under the DIP Financing Documents.

- 35 -

8.      **Adequate Protection of Cardinal Vendors.**  As adequate protection of their

interests in the Cardinal Collateral, the Cardinal Vendors are entitled, pursuant to sections 105,

361, 363 and 364 of the Bankruptcy Code, to claims and other protections in an amount equal to

the Cardinal Collateral Diminution in respect of the Cardinal Liens (the "***Cardinal Adequate***

***Protection Claims***," together with the Prepetition Lender Adequate Protection Claims, the

"***Adequate Protection Claims***").  As used in this Final Order, "***Cardinal Collateral Diminution***"

shall mean an amount equal to the aggregate diminution in the value of the Cardinal Vendors'

interest in the Cardinal Collateral from and after the Petition Date for any reason, including,

without limitation, any such diminution resulting from the use of Cash Collateral including for

the funding of "stub rent" payments to landlords; the priming of the Cardinal Liens in the

Cardinal Collateral by the DIP Liens pursuant to this Final Order; the depreciation, sale, loss,

use, or collection by any Debtor (or any other decline in value) of such Cardinal Collateral; the

imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; or the

subordination of liens and priority claims in connection with the Carve-Out, in each case to the

fullest extent provided under the Bankruptcy Code.  The Cardinal Vendors are hereby granted, as

adequate protection but subject to the rights of third parties preserved under paragraph 23 hereof,

the following:

(a)      Cardinal Adequate Protection Liens.  The Cardinal Vendors are hereby

granted (effective and perfected upon the date of entry of the Interim Order, without the

necessity of the execution, filing or recording by any Debtor or the Cardinal Vendors of any

security agreements, pledge agreements, mortgages, deeds of trust, financing statements or other

agreements) replacement security interests in and liens (the "***Cardinal Adequate Protection***

***Liens***" (and collectively with the Prepetition Lender Adequate Protection Liens, the "***Adequate***

*Protection Liens*")) on (i) all Cardinal Collateral already or hereafter acquired and the proceeds thereof and (ii) any DIP Collateral that does not otherwise constitute Cardinal Collateral (*e.g.*, the Debtors' owned real estate) in an amount equal to the Cardinal Collateral Diminution.  The Cardinal Adequate Protection Liens shall be junior and subordinate to (i) the Carve-Out and Stub Rent Carve-Out, (ii) the DIP Liens, (iii) any valid, perfected, enforceable, and unavoidable security interest in or lien upon any Prepetition Collateral that, on the Petition Date, was senior to and had priority over the Cardinal Liens in such Prepetition Collateral, and (iv) the Prepetition Security Interests, and the Adequate Protection Liens in the DIP Collateral.

(b)    Priority of Cardinal Adequate Protection Claims.  The Cardinal Adequate Protection Claims are to be allowed as priority administrative claims pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and, subject to the Carve-Out and the Superpriority Claims, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, including, without limitation, the rights of each Debtor and any successor trustee in these Chapter 11 Cases or any Successor Case.

(c)    Additional Provision.  Notwithstanding anything set forth in this Final Order or the Interim Order to the contrary, all parties reserve all rights with respect to (i) the application of sections 506(c) or 552(b) of the Bankruptcy Code to the Cardinal Vendors, and (ii) the amount of the Cardinal Adequate Protection Liens and/or the Cardinal Adequate Protection Claims, including whether, and to what extent, if any, such Liens and/or Claims may be offset or reduced by the amount of any payments made on account of the Carve-Out or the Stub Rent Carve-Out.

9.    **Payments Free and Clear**.  All payments or proceeds remitted (a) to the DIP

Agent on behalf of any DIP Credit Party or (b) to the Prepetition Agent on behalf of any

Prepetition Credit Parties, in each case pursuant to the provisions of this Final Order or any

subsequent order of this Court, shall be received free and clear of any claim, charge, assessment

or other liability, including, without limitation, any such claim, charge, assessment or other

liability arising out of or based on, directly or indirectly, section 506(c) or the "equities of the

case" exception of 552(b) of the Bankruptcy Code, subject, with respect to payments on account

of the Prepetition Lender Debt, only to any timely challenges by third parties permitted by

paragraph 23 hereof.

10. **Section 506(c) Claims**. No costs or expenses of administration shall be imposed

upon any DIP Credit Party, any Prepetition Credit Party or any of the DIP Collateral pursuant to

section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of such

DIP Credit Party or Prepetition Credit Party, as the case may be, and no such consent shall be

implied from any action, inaction or acquiescence by any DIP Credit Party or Prepetition Credit

Party, as applicable.

11. **Fees and Expenses of Estate Professionals**. So long as no Event of Default (as

defined in paragraph 19 below) has occurred and is continuing, each Debtor is authorized to use

DIP Loan Proceeds to pay such compensation and expense reimbursement (collectively, "***Estate***

***Professional Fees***") of professional persons (including, without limitation, attorneys, financial

advisors, accountants, investment bankers, appraisers, and consultants) retained with Court

approval by any Debtor (the "***Debtor Professionals***"), by the Committee (the "***Committee***

***Professionals***"), or by any examiner or other Person appointed by or retained with the approval

of this Court (the Debtor Professionals, the Committee Professionals, and such other professional

persons retained by the examiner or other Persons appointed by or retained with the approval of

this Court are referred to collectively as the "***Estate Professionals***"), to the extent that such compensation and expense reimbursement is authorized and approved by this Court; <u>provided</u>, <u>however</u>, that, notwithstanding anything herein or in any other order of this Court to the contrary, no DIP Loan Proceeds or any portion of the Carve-Out shall be used to pay Estate Professional Fees incurred for any Prohibited Purpose (as defined in paragraph 13 hereof). If any Estate Professional Fees at any time paid to any Estate Professional are subject to refund, rebate or disgorgement, then such funds shall be remitted to the DIP Agent for application to the DIP Obligations.

12. **<u>Carve-Out</u>**.

(a)     <u>Priority and Extent of Carve-Out</u>.     Subject to the terms, conditions, and limitations contained in this Paragraph 12, the DIP Liens, the Superpriority Claims, the Pre-Petition Security Interests, the Adequate Protection Liens, and the Adequate Protection Claims shall be subject and subordinate to the following (collectively, the "***Carve-Out***"):

(i) all fees required to be paid to the Clerk of this Court pursuant to 28 U.S.C. § 156(c) and to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) (collectively, the "***Statutory Fees***"); plus

(ii) the allowed fees and expenses actually incurred by Debtor Professionals and Committee Professionals on or after the Petition Date in a cumulative aggregate sum of:

(x) for the period prior to the delivery of a Carve-Out Trigger Notice (as defined below), an amount not to exceed the lesser of (A) the aggregate weekly amounts budgeted to be funded in advance for each Debtor Professional and Committee Professional for such week in accordance with the Budget, and

(B) the actual amount of allowed Estate Professional Fees for each Estate Professional incurred on or after the Petition Date up to, through and including the date a Carve-Out Trigger Notice is delivered (the "***Pre-Trigger Professional Fees***") subject in all respects to the terms of the Interim Order, this Final Order, and any other interim or other compensation order entered by the Bankruptcy Court; provided, however, that to the extent that any DIP Obligations remain outstanding, solely for purposes of calculating the amount of the Carve-Out, Pre-Trigger Professional Fees shall not exceed $6,050,000 in the aggregate (the "***Pre-Trigger Cap***"); and

(y) beginning the first day after the delivery by the DIP Agent of a Carve-Out Trigger Notice (which for the avoidance of doubt may be by electronic mail) to the Notice Parties, the fees and expenses incurred by the Estate Professionals in an aggregate amount not to exceed $500,000. Nothing in the Interim Order or this Final Order shall be construed (1) to impair the ability of any interested party to object to the fees or expenses of any Estate Professional, (2) as a consent to the allowance of any Estate Professional Fee of any Estate Professional, (3) as an undertaking by any of the DIP Credit Parties to be responsible for payment of any Estate Professional Fees in connection with the Chapter 11 Cases or any Successor Cases, or (4) to obligate any DIP Credit Party or Pre-Petition Credit Party to pay (or constitute a guarantee of payment of) any Estate Professional Fees. In no event shall the Carve-Out, or the funding of any DIP Loans or use of Cash Collateral to satisfy the Carve-Out, result in any reduction in the amount of any DIP Obligations or Pre-Petition Lender Debt, the

security therefor, or the obligations of the Debtors to pay same in accordance with the Pre-Petition Loan Documents or the DIP Financing Documents, as applicable. The DIP Agent shall be entitled to maintain a reserve (the "***Reserve***") against the Borrowing Base under (and as defined in) the DIP Loan Agreement in the amount of $1,700,000 (the "***Initial Reserve***") on the Petition Date.  From and after the Petition Date, the amount of the Reserve shall be the lesser of: (A) the sum of (1) at any given time, the amount of budgeted fees and expenses of Debtor Professionals and Committee Professionals (as set forth in the Budget) for the current week, *plus* (2) the amounts of any prior weekly budgeted fees and expenses of Debtor Professionals and Committee Professionals (as set forth in the Budget) that the Debtors have failed to fund into the Carve-Out Account in accordance with paragraph 12(c) below, *plus* (3) $1,000,000, and (B) the sum of $7,050,000 minus the amount that the Debtors have funded into the Carve-Out Account in accordance with paragraph 12(c) below.  Additionally, in the event that the fees incurred by the Debtor Professionals are less than the aggregate budgeted amounts for Debtor Professionals' Pre-Trigger Professional Fees or fees incurred after the Carve-Out Trigger Notice pursuant to the Budget, such difference shall be used to offset Committee Professionals' fees in excess of the amounts allocated for Committee Professionals' fees pursuant to the Budget.  In the event that the fees incurred by the Committee Professionals are less than the aggregate budgeted amounts for Committee Professionals' Pre-Trigger Professional Fees or fees incurred after the Carve-Out Trigger Notice pursuant to the Budget, such difference shall be used to offset Debtor Professionals' fees in

excess of the amounts allocated for Debtor Professionals' fees pursuant to the Budget.

(b)    <u>The Carve-Out Trigger Notice</u>: The term "***Carve-Out Trigger Notice***" shall mean a written notice delivered by the DIP Agent to the Notice Parties (which notice may be sent by email), which notice shall specify that it is a "Carve-Out Trigger Notice" and may be delivered at any time (x) concurrently with the closing of a sale or disposition of any Debtor's assets that is expected to provide sufficient funds to cause Payment in Full of all outstanding DIP Obligations (other than contingent obligations under the DIP Loan Agreement) and the Prepetition Lender Debt, (y) after or concurrently with the effective date of a Chapter 11 plan of reorganization or liquidation (whether proposed by one or more Debtors or any other interested party), or (z) after the occurrence of any Event of Default under (and as defined in) the DIP Loan Agreement.

(c)    <u>Funding Carve-Out Account</u>.  The Debtors shall maintain a segregated account for the payment of allowed Estate Professional Fees of Debtor Professionals and Committee Professionals (the "***Carve-Out Account***"). Subject to the Budget and the terms and conditions of the DIP Financing Documents, the Debtors shall fund the Carve-Out Account, including through borrowings under the DIP Credit Agreement, in accordance with the Budget on a weekly basis, in advance, until the delivery of a Carve Out Trigger Notice.  Promptly after each such deposit into the Carve-Out Account, the Debtors shall provide the DIP Agent with evidence of each such deposit and the then-current balance in the Carve-Out Account at the time of, and after giving effect to, such deposit.  Each deposit to the Carve-Out Account (whenever made) and amounts otherwise paid to Estate Professionals after issuance of a Carve-Out Trigger Notice shall reduce the Carve-Out (and the DIP Credit Parties' obligations with respect thereto)

on a dollar-for-dollar basis.  Upon the delivery of a Carve Out Trigger Notice, the Debtors shall deposit into the Carve-Out Account $500,000 plus amounts estimated to be equal to the unpaid Statutory Fees described in 12(a)(i) of this Final Order, whereupon the Carve-Out and the DIP Credit Parties' obligations with respect thereto shall be deemed satisfied.  The DIP Agent shall retain a first priority, perfected security interest in all funds in the Carve-Out Account to the extent of any surplus remaining after payment of all allowed Estate Professional Fees and Statutory Fees pursuant to the Carve-Out as set forth in this Paragraph 12, with such excess to be remitted to the DIP Agent as soon as reasonably practicable.  The Debtors shall first use funds in the Carve-Out Account to pay any Estate Professional Fees or Statutory Fees that have been authorized by the Court to be paid, and shall not request advances under the DIP Loans to pay any such fees or expenses unless and until the funds in the Carve-Out Account have been exhausted.  All funds deposited to the Carve-Out Account shall be used solely to pay the Estate Professional Fees and Statutory Fees comprising the Carve-Out until those items are paid in full, and thereafter any balance shall be remitted to the DIP Agent for application to the DIP Obligations, and thereafter any balance shall be remitted to the Pre-Petition Agent for application to the Pre-Petition Lender Debt. In no event shall the Carve-Out, or the funding of any DIP Loans or use of any Cash Collateral to satisfy all or any part of the Carve-Out, result in any reduction in the amount of any DIP Obligations or Pre-Petition Lender Debt, the security therefor, or the joint and several obligations of the Debtors to pay same in accordance with the DIP Financing Documents or Pre-Petition Loan Documents, as applicable; and any funding of the Carve-Out with DIP Loan Proceeds shall be added to, and made a part of, the DIP Obligations, secured by all of the DIP Collateral and entitled to all of the benefits and protections granted by the Interim Order, this Final Order and the DIP Financing Documents.

13.    **Excluded Estate Professional Fees**.  Notwithstanding anything to the contrary in this Final Order, neither the Carve-Out nor any proceeds of any DIP Credit Extensions or DIP Collateral (including, without limitation, Cash Collateral) shall be used to pay any Estate Professional Fees (including, without limitation, expense reimbursement to Estate Professionals) in connection with any of the following (each a "***Prohibited Purpose***"): (a) objecting to, seeking subordination or recharacterization of, contesting the validity or enforceability of, or asserting any defense, counterclaim, recoupment or offset to this Final Order, any DIP Obligations or Prepetition Lender Debt, or the Prepetition Loan Documents, or the perfection or priority of any Prepetition Security Interest, provided that the Committee may be reimbursed up to $100,000 (the "***Investigation Budget***") for fees and expenses incurred in connection with the investigation of, but not the commencement or pursuit of litigation, objection or any challenge to, any Prepetition Security Interests, Prepetition Lender Debt, or Prepetition Loan Documents; (b) asserting or prosecuting any claim, demand, or cause of action against any DIP Lender, the DIP Agent, or any Prepetition Credit Party (or any of their respective officers, directors, agents, employees, attorneys or affiliates), including, without limitation, any action, suit or other proceeding for breach of contract or tort or pursuant to sections 105, 506, 510, 544, 547, 548, 549, 550, 552 or 553 of the Bankruptcy Code, or under any other applicable law (state, federal or foreign), or otherwise; (c) seeking to modify any of the rights or remedies granted to the DIP Agent, any DIP Lender, or any Prepetition Credit Party under this Final Order or any of the DIP Financing Documents; or (d) objecting to, contesting, delaying, preventing, or otherwise interfering in any way with the exercise of rights or remedies by any DIP Credit Party with respect to any DIP Obligations or DIP Collateral.

14.    **Preservation of Rights**.

(a)    <u>Protection from Subsequent Financing Order</u>.  Without the prior written

consent of the DIP Credit Parties, there shall not be entered in any of these Chapter 11 Cases or

in any Successor Case any order that authorizes the obtaining of credit or the incurrence of

indebtedness by any Debtor (or any trustee or examiner) that is (i) secured by a security interest,

mortgage or collateral interest or other lien on all or any part of the DIP Collateral that is equal

or senior to the DIP Liens, the Adequate Protection Liens, or the Prepetition Security Interests or

(ii) entitled to claims with priority administrative status that is equal or senior to the

Superpriority Claims or the Adequate Protection Claims; <u>provided</u>, <u>however</u>, that nothing herein

shall prevent the entry of an order that specifically provides for the Payment in Full of all of the

DIP Obligations and Prepetition Lender Debt at closing from the proceeds of such credit or

indebtedness, and the termination of any funding commitments under the DIP Facility.

(b)    <u>Rights Upon Dismissal, Conversion or Consolidation</u>.  If any of the

Chapter 11 Cases are dismissed, converted or substantively consolidated with another case, then

neither the entry of this Final Order nor the dismissal, conversion or substantive consolidation of

any of the Chapter 11 Cases shall affect the rights or remedies of any DIP Credit Party under the

DIP Financing Documents or the rights or remedies of any DIP Credit Party or Prepetition Credit

Party under this Final Order, and all of the respective rights and remedies hereunder and

thereunder of each DIP Credit Party and each Prepetition Credit Party shall remain in full force

and effect as if such Chapter 11 Case had not been dismissed, converted, or substantively

consolidated. Until Payment in Full of all DIP Obligations and Prepetition Lender Debt has

occurred, it shall constitute an Event of Default if any Debtor seeks, or if there is entered, any

order dismissing any of the Chapter 11 Cases. If an order dismissing any of the Chapter 11 Cases

is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the

Bankruptcy Code) that (i) the Superpriority Claims, the Adequate Protection Claims, the DIP Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until Payment in Full of all DIP Obligations and satisfaction of all Adequate Protection Claims, (ii) such Superpriority Claims, Adequate Protection Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest to the extent provided in this Final Order, (iii) the other rights granted to the DIP Credit Parties and Prepetition Credit Parties by this Final Order shall not be affected, and (iv) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in the Interim Order or this Final Order.

(c)    Survival of Final Order.  The provisions of this Final Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases or any Successor Case; and all provisions in the DIP Financing Documents and the Prepetition Loan Documents that by their terms survive Payment in Full of the DIP Obligations and the Prepetition Lender Debt shall continue in full force and effect notwithstanding such Payment in Full.

(d)    No Discharge.  None of the DIP Obligations shall be discharged by the entry of any order confirming a plan of reorganization or liquidation in any of these Chapter 11 Cases, and, pursuant to section 1141(d)(4) of the Bankruptcy Code, each Debtor is hereby deemed to have waived such discharge until Payment in Full of the DIP Obligations has occurred.

(e)    <u>No Challenge to Credit Bid Rights</u>.  No Debtor shall object to any DIP Credit Party or any Prepetition Credit Party credit bidding in any sale of DIP Collateral up to the full amount of the outstanding DIP Obligations and Prepetition Lender Debt (including in each case any accrued interest, fees and expenses), regardless of whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

(f)    <u>No Marshaling/Lien Preservation</u>.  No DIP Credit Party or Prepetition Credit Party shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any DIP Collateral; and in no event shall any DIP Lien be subject to any prepetition or postpetition lien or security interest that is avoided and preserved for the benefit of any Debtor's estate pursuant to section 551 of the Bankruptcy Code.

(g)    <u>No Requirement to File Claim for DIP Obligations</u>.  Notwithstanding anything to the contrary contained in any prior or subsequent order of this Court, including, without limitation, any bar order establishing a deadline for the filing of proofs of claims or requests for payment of administrative expense treatment under section 503(b) of the Bankruptcy Code, no DIP Credit Party shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Loan Agreement and the other DIP Financing Documents applicable thereto without the necessity of filing any such proof of claim or request for payment of administrative expenses; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity or enforceability of any of the DIP Financing Documents or of any of the DIP Obligations or prejudice or otherwise adversely affect any DIP Credit Party's rights, remedies, powers or privileges under any of the DIP Financing

Documents, this Final Order or applicable law.

(h)     Committee Professionals' Preservation of Rights.  Notwithstanding anything to the contrary herein, and absent further order of the Court, in no event during the course of the Chapter 11 Cases will payments for fees and expenses of Committee Professionals prohibit such Committee Professionals from seeking administrative expenses or claims pursuant to sections 330, 503 or 1129(a)(9)(A) of the Bankruptcy Code on account of professional fees and expenses that: (i) exceed the applicable amounts set forth in the Budget; or (ii) are on account of fees incurred after the period contemplated by the Budget, as may be amended, modified or supplemented hereafter.  Additionally, nothing in this Final Order or the Committee Professionals' conduct will be interpreted as an express or affirmative consent by Committee Professionals to a different treatment on account of their administrative claims (if any).

15.     **Automatic Perfection of Liens**.  The DIP Liens and the Adequate Protection Liens shall be deemed valid, binding, enforceable and duly perfected upon entry of the Interim Order and as of the date of entry thereof.  No Prepetition Credit Party, DIP Credit Party or Cardinal Vendor shall be required to file any UCC-1 financing statement, mortgage, deed of trust, assignment, pledge, security deed, notice of lien or any similar document or instrument or take any other action (including taking possession of any of the DIP Collateral) in order to validate the perfection of any DIP Liens or the Adequate Protection Liens, but all of such filings and other actions are hereby authorized by this Court.  The DIP Credit Parties shall be deemed to have "control" over all deposit accounts of any of the Debtors for all purposes of perfection under the Uniform Commercial Code or any other similar laws.  If the Prepetition Agent or DIP Agent shall, in its respective discretion, choose to file or record any such mortgage, deed of trust, assignment, pledge, security deed, notice of lien, financing statement, or other similar document

or instrument, or take any other action to evidence the perfection of any part of the DIP Liens or the Adequate Protection Liens, each Debtor and its respective officers are authorized to execute, file and record any documents or instruments as the Prepetition Agent or DIP Agent shall request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Order. The DIP Agent may, in its discretion, file a certified copy of this Final Order in any filing office in any jurisdiction in which any Debtor is organized or has or maintains any DIP Collateral or an office, and each filing office is authorized to accept such certified copy of this Final Order for filing and recording. Any provision of any lease, license, contract or other agreement that requires the consent or approval of one or more counterparties in order for a Debtor to pledge, grant, sell, assign or otherwise transfer any such interest or the proceeds thereof is hereby found to be (and shall be deemed to be) inconsistent with the provisions of the Bankruptcy Code and shall have no force and effect with respect to the transactions granting DIP Liens or Adequate Protection Liens on such interest or the proceeds of any such transfer, assignment and/or sale thereof by any Debtor, in accordance with the DIP Financing Documents, the Interim Order or this Final Order.

16.    **No Superior Rights of Reclamation**.  Based on the continuation of the Prepetition Security Interests and the integrated nature of the DIP Facility and the Prepetition Loan Documents, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens.

17.    **Reimbursement of Expenses**.  All reasonable costs and expenses incurred by the DIP Agent, Regions and BAML, in their respective capacities as co-collateral agents ("***Co-Collateral Agents***", and each a "***Co-Collateral Agent***") (and, to the extent provided in the DIP

Loan Agreement, the other DIP Credit Parties) shall form a part of the DIP Obligations and shall be paid by the Debtors in accordance with the terms of the DIP Financing Documents, subject to the review provisions set forth in paragraph 7(g).  In no event shall any invoice or other statement submitted by any DIP Credit Party to any Notice Party or any other interested person (or any of their respective Professionals) with respect to fees or expenses incurred by any professional retained by such DIP Credit Party operate to waive the attorney/client privilege, the work-product doctrine or any other evidentiary privilege or protection recognized under applicable law.

18.    **Amendments and Waivers**.  The Debtors and the DIP Credit Parties are hereby authorized to execute, deliver and implement, in accordance with the terms of the applicable DIP Financing Documents and without further order of this Court, any amendments to, modifications of, or waivers with respect to any of such DIP Financing Documents (and any fees, expenses, or other amounts payable in connection therewith) on the following conditions: (i) the amendment, modification, or waiver must not constitute a material change to the terms of such DIP Financing Documents, (ii) copies of the amendment, modification, or waiver must be served upon the Notice Parties and (iii) the amendment, modification or waiver does not adversely affect the rights of, or obligations owed to, any Governmental Authority. In the case of an amendment, modification, or waiver that effects a material change to the DIP Financing Documents, the Debtors shall provide notice (which shall be provided through electronic mail) to the Notice Parties, each of whom shall have five (5) days from the date of such notice to object in writing to such amendment, modification or waiver.  For purposes hereof, a "material change" shall mean a change to a DIP Financing Document that operates to (a) shorten the term of the DIP Facility or the maturity of the DIP Obligations, (b) increase the aggregate amount of the commitments of

the DIP Lenders under the DIP Facility, (c) increase the rate of interest other than as currently provided in or contemplated by such DIP Financing Documents, (d) add specific Events of Default, or (e) enlarge the nature and extent of remedies available to the DIP Agent following the occurrence of an Event of Default.  Without limiting the generality of the foregoing, no amendment of a DIP Financing Document that postpones or extends any date or deadline therein or herein (including, without limitation, the expiration of the term of the DIP Facility), nor any waiver of an Event of Default, nor any amendment of any sublimit with respect to letters of credit or swingline loans, shall constitute a "material change" and may be effectuated by Debtors and the DIP Credit Parties without the need for further approval of this Court. If all Notice Parties indicate that they have no objection to the amendment, modification or waiver (or if no objections are timely received), the Debtors may proceed to execute the amendment, modification or supplement, which shall become effective immediately upon execution. If a Notice Party timely objects to such amendment, modification or waiver, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or waiver. Any material modification, amendment or waiver that becomes effective in accordance with this paragraph 18 shall be filed with the Court.

19.    **Events of Default; Remedies**.

(a)    <u>Event of Default</u>. The occurrence of any of the following events, unless waived by the DIP Agent in writing and in accordance with the terms of the DIP Loan Agreement, shall constitute an event of default (an "***Event of Default***") of this Final Order: (i) the failure of the Debtors to perform or meet any of the terms, provisions, covenants, or obligations under this Final Order, or (ii) the occurrence of an "Event of Default" under (and as defined in) the DIP Loan Agreement.

(b)    <u>Default Remedies</u>. Upon the occurrence and during the continuation of an Event of Default, (i) each DIP Credit Party shall be authorized to discontinue honoring any pending or future request for DIP Credit Extensions (or may honor and fund such requests, in their sole respective discretion); (ii) the DIP Agent may, in its discretion, terminate the DIP Facility; (iii) the DIP Agent may, in its discretion, file with this Court and serve upon the Notice Parties a written notice (each, a "***Default Notice***") describing the Events of Default; and (iv) upon expiration of the Remedies Notice Period (as defined below) without any Remedies Objection (as defined below) having been filed, the DIP Agent and the Prepetition Agent shall be deemed to have received complete relief from the automatic stay of section 362 of the Bankruptcy Code to exercise all rights, powers, and remedies available to it under the DIP Financing Documents, the Prepetition Loan Documents, the Interim Order, this Final Order, and applicable law (collectively, the "***Default Remedies***"), without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order. The automatic stay otherwise applicable to the DIP Agent is hereby modified so that five (5) Business Days (as defined in the DIP Loan Agreement) after the sending by the DIP Agent to the Notice Parties of a Default Notice (the "***Remedies Notice Period***"), the DIP Agent shall be entitled to exercise its Default Remedies to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve-Out. The term "***Remedies Objection***" shall mean an objection filed with this Court prior to the expiration of the Remedies Notice Period by a Notice Party (or any other interested party in these Chapter 11 Cases) to the exercise of Default Remedies by the DIP Agent and/or the Prepetition Agent. Unless the Court orders otherwise, the automatic stay, as to the DIP Agent, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. During the pendency of a Remedies Objection, the

DIP Credit Parties and the Prepetition Credit Parties shall forbear from exercising any remedies hereunder, but, unless they elect to do so in their sole discretion (which election will not constitute a waiver of any Event of Default), the DIP Credit Parties shall not be obligated to provide any DIP Credit Extensions. Upon expiration of the Remedies Notice Period, the DIP Agent shall be permitted to exercise all Default Remedies without further order of or application or motion to the Court. Except as provided above in this paragraph 19(b), no Debtor shall be entitled to seek any relief (including, without limitation, relief under section 105 of the Bankruptcy Code) to the extent that such relief would impair, limit, delay or restrict the rights and remedies of the DIP Agent or Prepetition Agent as set forth in the Interim Order, this Final Order, any of the DIP Financing Documents or any of the Prepetition Loan Documents, as applicable, or applicable law. The DIP Agent's or Prepetition Agent's delay or failure to exercise rights and remedies under any DIP Financing Documents, any Prepetition Loan Documents, this Final Order or applicable law shall not constitute a waiver of any of its rights and remedies hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed by the DIP Agent or Prepetition Agent, as applicable, in accordance with the terms of the DIP Financing Documents or the Prepetition Loan Documents, as applicable.

(c)    Rights Cumulative.  The rights, remedies, powers and privileges conferred upon any DIP Credit Party pursuant to this Final Order shall be in addition to and cumulative with those contained in the DIP Financing Documents and created under applicable law.

20.    **Loan Administration**.

(a)    Cash Dominion and Control.  Until the Payment in Full of all Prepetition Lender Debt and DIP Obligations, the DIP Agent will have exclusive dominion and control over all Collection Accounts (as defined in the DIP Loan Agreement), and the DIP Agent shall be

authorized to implement, and the Debtors shall strictly comply with, the cash collection and payment provisions of the DIP Loan Agreement governing the collection of accounts, including, without limitation, sections 5.2 and 8.12 of the DIP Loan Agreement.

(b)    Inspection Rights; Budget Updates. As set forth in the DIP Financing Documents, representatives of the DIP Agent and Prepetition Agent shall be authorized, with prior notice to the Debtors, to visit the business premises of any Debtor and its subsidiaries to (i) inspect any DIP Collateral, (ii) inspect and make copies of any books and records of any Debtor, and (iii) verify or obtain supporting details concerning the financial information to be provided by any Debtor hereunder or under any of the DIP Financing Documents, and the Debtors shall facilitate the exercise of such inspection rights. The Debtors shall provide to the DIP Agent, the Prepetition Agent, the U.S. Trustee, and the Committee an updated Budget every four (4) weeks covering the next 13-week period, which shall be subject to the approval requirements set forth in the DIP Financing Documents.  In addition, each week, the Debtors shall provide the DIP Agent, and the Prepetition Agent with a variance report pursuant to the terms set forth in the DIP Financing Documents.

(c)    DIP Agent's Professionals.  The DIP Agent, each Co-Collateral Agent, and, to the extent provided in the DIP Loan Agreement, the DIP Credit Parties each is authorized to retain attorneys, appraisers, auditors, financial advisors, consultants, and other professionals (the "***DIP Credit Party Professionals***") in accordance with the DIP Loan Agreement, and all such DIP Credit Party Professionals shall be afforded reasonable access to the DIP Collateral and each Debtor's business premises and records for purposes of monitoring the businesses of Debtors, verifying each Debtor's compliance with the terms of the DIP Financing Documents and this Final Order, and analyzing or appraising all or any part of the DIP Collateral. The

Debtors shall be liable for the documented and actually incurred fees and expenses of such DIP

Credit Party Professionals to the extent provided in the DIP Financing Documents and

paragraph 17 above.

21.      **Modification of Automatic Stay**.  The automatic stay provisions of section 362

of the Bankruptcy Code are hereby modified and lifted to the extent necessary to implement the

provisions of this Final Order and the DIP Financing Documents, thereby permitting the DIP

Agent and the Prepetition Agent to receive collections and proceeds of the DIP Collateral for

application to the DIP Obligations or Prepetition Lender Debt as and to the extent provided

herein, and the DIP Agent and the Prepetition Agent to file or record any UCC-1 financing

statements, mortgages, deeds of trust, assignments, pledges, security deeds and other instruments

and documents evidencing or validating the perfection of any DIP Liens or Adequate Protection

Liens, and to enforce any DIP Liens and Adequate Protection Liens as and to the extent

authorized by this Final Order.

22.      **Effect of Appeal**.  Consistent with section 364(e) of the Bankruptcy Code, if any

or all of the provisions of the Interim Order or this Final Order are hereafter modified, vacated or

stayed on appeal:

(a)      such stay, modification or vacation shall not affect the validity of any

obligation, indebtedness or liability incurred or liens granted by the Debtors to any DIP Credit

Party, Prepetition Credit Party, or Cardinal Vendor prior to the effective date of such stay,

modification or vacation, or the validity, enforceability or priority of any liens, rights or claims

authorized or created under the original provisions of the Interim Order or this Final Order or

pursuant to any of the DIP Financing Documents; and

(b)      any DIP Obligations prior to the effective date of such stay, modification

or vacation shall be governed in all respects by the original provisions of the Interim Order this Final Order and the DIP Financing Documents, and each DIP Credit Party shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Liens and priorities granted to or for its benefit herein or pursuant to the applicable DIP Financing Documents, with respect to any such indebtedness, obligation or liability. All DIP Credit Extensions shall be deemed to have been made in reliance upon the Interim Order and this Final Order, and, therefore, the indebtedness resulting from such DIP Credit Extensions prior to the effective date of any stay, modification or vacation of the Interim Order or this Final Order cannot, as a result of any subsequent order in any of these Chapter 11 Cases, or any Successor Case of a Debtor, be extinguished or subordinated or deprived of the benefit or priority of the DIP Liens and the Superpriority Claims granted to the DIP Credit Parties under the Interim Order, this Final Order or the DIP Financing Documents.

23.    **Effect of Stipulations on Third Parties; Deadline for Challenges**.

(a)    Each Debtor's admissions, stipulations, agreements and releases contained in the Interim Order or this Final Order, including, without limitation, those contained in paragraph E hereof, shall be binding upon such Debtor and any successor thereto (including, without limitation, any Chapter 7 trustee or Chapter 11 trustee appointed or elected for such Debtor) under all circumstances and for all purposes.

(b)    Each Debtor's admissions, stipulations, agreements and releases contained in the Interim Order or this Final Order, including, without limitation, those contained in paragraph E hereof, shall be binding upon all other parties in interest (including, without limitation, the Committee, any examiner, or post-confirmation trustee or other fiduciary) under all circumstances and for all purposes unless and to the extent (a) such other party in interest

(including the Committee) obtains requisite standing to do so and has timely and properly filed, in accordance with this paragraph 23, an adversary proceeding or contested matter seeking such standing by no later than the Challenge Deadline (as defined below) (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Lender Debt or any Prepetition Security Interest or (B) otherwise asserting any defenses, claims, causes of action, counterclaims or offsets against any Prepetition Credit Party or its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in any way relating to any transactions, events, actions or failure to act under or in connection with any of the Prepetition Loan Documents (collectively, a "***Challenge***") and (b) this Court rules in favor of the plaintiff with respect to any such timely and properly filed Challenge. As used herein, the term "***Challenge Deadline***" means the earliest to occur of (A) the date that this Court enters an order confirming any chapter 11 plan of reorganization or liquidation proposed by any Debtor or other interested party, and (B) (i) in the case of a party in interest with requisite standing other than the Committee, November 24, 2019 (that date which is 75 days after the date of entry of the Interim Order), (ii) in the case of the Committee, November 17, 2019 (that date which is 60 days after the filing of notice of appointment of the Committee), or (iii) in each case of clauses (i) and (ii), any such later date agreed to in writing by the Prepetition Agent, in its sole discretion, or ordered by this Court for cause shown, after notice and an opportunity to be heard, <u>provided</u> that such motion for an order to extend the Challenge Deadline is filed with this Court prior to the expiration of the applicable Challenge Deadline as set forth in clause (i) or (ii) of this sentence. Notwithstanding the foregoing, if, prior to the Challenge Deadline as defined above, any of the Chapter 11 Cases is converted to a case under Chapter 7, or if a Chapter 11 trustee is appointed in any of the Chapter 11 Cases, the Challenge Deadline applicable solely to such trustee(s) shall

be deemed extended for a period of fifteen (15) days and the admissions, stipulations, agreements and releases in the Interim Order and this Final Order shall not be binding on any such trustee until the expiration of the extended Challenge Deadline.  Nothing contained in this paragraph 23 increases the Investigation Budget.  If before the Challenge Deadline the Committee files a motion (the "***Standing Motion***") in which the Committee seeks standing from this Court to pursue a Challenge and sets forth in reasonable detail the basis for each Challenge, then, with respect only to such proposed Challenge, the expiration of the Challenge Deadline shall be tolled until this Court rules on the motion seeking standing.  A hearing to consider the merits of the Standing Motion will be held on an expedited basis on the Court's earliest available hearing date.  In the event the Court grants the Standing Motion, the Committee shall file a complaint setting forth the basis for such Challenge within five (5) days of the Court's order granting the Standing Motion.

(c)      If no such Challenge is timely and properly filed as of the applicable Challenge Deadline against a Prepetition Credit Party, or, in the event a Challenge is asserted, it is resolved by a final order of the Court in favor of the affected Prepetition Credit Parties, as applicable, then for all purposes in these Chapter 11 Cases and in any Successor Case, (i) each Debtor's admissions, stipulations, agreements and releases in the Interim Order and this Final Order, including, without limitation, those contained in paragraph E of this Final Order shall be binding on, in addition to the Debtors and their successors, all other parties in interest, including the Committee, any examiner, and only post-confirmation trustee or other fiduciary; (ii) the Prepetition Lender Debt owing to each Prepetition Credit Party shall constitute a fully secured allowed claim that is not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in each Chapter 11 Case and any Successor

Case; (iii) the Prepetition Security Interests in favor of each Prepetition Credit Party shall be

deemed to have been, as of the Petition Date and thereafter, legal, valid, binding, perfected, first

priority security interests and liens that are not subject to recharacterization, subordination,

avoidance, nullification, or other defense, and shall not be subject to any other or further claim or

challenge by the Committee or any other party in interest seeking to exercise the rights of any

Debtor's estate, including, without limitation, any trustee, examiner, other fiduciary or any other

successor in interest to a Debtor; and (iv) each Debtor (for itself, its estate and its successors and

assigns) shall be deemed to have forever waived and released any and all claims (including,

without limitation, all "Claims" as such term is defined in the Bankruptcy Code), counterclaims,

actions, causes of action, defenses or setoff rights that such Debtor may have against such

Prepetition Credit Party or any of its officers, directors, agents, employees, attorneys and

affiliates and that arise out of or relate to any of the Prepetition Loan Documents or any action,

inaction, or transactions thereunder, whether disputed or undisputed, at law or in equity, or

known or unknown, including, without limitation, any recharacterization, subordination,

avoidance or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy

Code or under any other similar provisions of applicable state or federal law. Even if a Challenge

is properly filed on or before the applicable Challenge Deadline, each Debtor's admissions,

stipulations, agreements and releases contained in the Interim Order and this Final Order,

including, without limitation, those contained in paragraph E of this Final Order, shall

nonetheless remain binding and preclusive as provided in paragraph 23(a) and, except as to those

specific admissions, stipulations, agreements and releases expressly challenged in such

Challenge and as to which the plaintiff prevails on the merits, the first sentence of this paragraph

23(c).  Nothing contained in this Final Order shall vest or confer any Person, including the

Committee, with standing or authority to commence or prosecute, or participate in, any

Challenge.  Upon a successful Challenge brought pursuant to this paragraph 23, the Court may

fashion any appropriate remedy.

24.    **Indemnification**.

(a)    The indemnity provisions in the Prepetition Loan Documents and the DIP

Financing Documents shall be valid and enforceable against the Debtors, and shall continue in

full force and effect until (i) Payment in Full of the Prepetition Lender Debt and the DIP

Obligations, and (ii) in the case of the Prepetition Loan Documents, expiration of the Challenge

Period with no Challenge having been timely and properly filed against a Prepetition Credit

Party or this Court having ruled or resolved such Challenge in favor of the respective Prepetition

Credit Party in the event of such Challenge.

(b)    At any time requested by any (i) DIP Credit Party from and after the date

of assertion of any Claims or Extraordinary Expenses (as defined in the DIP Loan Agreement) in

respect of which the indemnities under the DIP Loan Agreement apply, or (ii) Prepetition Credit

Party from and after the assertion of claims, losses, damages, liabilities or related expenses, in

respect of which the indemnities under the Prepetition Loan Agreement apply, the Debtors shall

deposit into an indemnity account with the DIP Agent or Prepetition Agent, as applicable, such

amount as may reasonably be determined by the DIP Agent or Prepetition Agent, as applicable,

to be the amount of any such asserted claim or demand, which indemnity account shall be

subject to first priority liens of the DIP Agent, for the benefit of the DIP Credit Parties, and of

the Prepetition Agent, for the benefit of the Prepetition Credit Parties, to be released only upon

Payment in Full of the DIP Obligations or Prepetition Lender Debt, as applicable.

25.    **Debtors' Waivers**.  At all times during the Chapter 11 Cases, and whether or not

an Event of Default has occurred, each Debtor irrevocably waives any right that it may have to

seek authority to (i) use Cash Collateral except to the extent expressly permitted in this Final

Order; (ii) obtain postpetition loans or other financial accommodations pursuant to section 364(c)

or (d) of the Bankruptcy Code that do not provide for Payment in Full at closing of all DIP

Obligations and Prepetition Lender Debt, other than from a DIP Credit Party on the terms and

conditions set forth herein and in the DIP Financing Documents; (iii) challenge the application of

any payments authorized by the Interim Order or this Final Order to the Prepetition Credit

Parties pursuant to section 506(b) of the Bankruptcy Code or assert that the value of the

Collateral is less than the amount of the Prepetition Lender Debt; (iv) propose or support a plan

of reorganization or liquidation that does not provide for the Payment in Full of all DIP

Obligations and the Prepetition Lender Debt on the effective date of such plan; or (v) seek relief

under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy

Code, to the extent any such relief would in any way restrict or impair the rights and remedies of

any DIP Credit Party or any Prepetition Credit Party as provided in the Interim Order, this Final

Order or any of the DIP Financing Documents, as applicable, or a DIP Credit Party's or

Prepetition Credit Party's exercise of such rights or remedies.

26.     **Cardinal Intercreditor Agreement**.  Pursuant to section 510(a) of the

Bankruptcy Code, the provisions of the Cardinal Intercreditor Agreement shall continue in full

force and effect during the pendency of the Chapter 11 Cases or any Successor Case, and all DIP

Credit Parties, Prepetition Credit Parties and Cardinal Vendors shall be bound by the terms and

provisions in the Cardinal Intercreditor Agreement except to the extent of any inconsistency with

the provisions of this Final Order, in which event the provisions of this Final Order shall govern

and control. All of the types and items of property that are included within the Cardinal

Collateral and that are created, acquired or arise after the Petition Date shall constitute Cardinal Collateral for all purposes of the Cardinal Intercreditor Agreement and this Final Order.

27. **Service of Final Order**. Promptly after the entry of this Final Order, the Debtors shall mail, by first class mail, a copy of this Final Order, to (without duplication) (i) the U.S. Trustee; (ii) counsel to the Prepetition Agent; (iii) counsel to the DIP Agent; (iv) counsel to BAML; (v) counsel to the Cardinal Vendors; (vi) the Internal Revenue Service; (vii) the Securities and Exchange Commission; (viii) the holders of the thirty (30) largest unsecured claims against the Debtors, on a consolidated basis; (ix) all parties known by a Debtor to hold or assert a material lien on any assets of a Debtor; and (x) any parties that have filed requests for notices under Rule 2002 of the Bankruptcy Rules, and shall file a certificate of service regarding same with the Clerk of this Court.

28. **No Deemed Control; Exculpation; Release**.

(a) In making any DIP Credit Extension as and when permitted by the Interim Order, this Final Order or the DIP Financing Documents, no DIP Credit Party and no Prepetition Credit Party shall be deemed to be in control of any Debtor or its operations or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar state or federal statute) with respect to the operation or management of such Debtor.

(b) Nothing in this Final Order, the DIP Financing Documents, or any other document related to the DIP Facility shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Credit Party or any Prepetition Credit Party any liability for any claims arising from the prepetition or postpetition activities of any Debtor in the operation of

its business or in connection with its restructuring efforts. So long as a DIP Credit Party or Prepetition Credit Party complies with its obligations under the DIP Financing Documents and Applicable Law (i) such DIP Credit Party or Prepetition Credit Party shall not, in any way or manner, be liable or responsible for (A) the safekeeping of the DIP Collateral, (B) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (C) any diminution in the value thereof, or (D) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other Person; and (ii) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Debtors.

(c)     Subject to the provisions of paragraph 23 hereof with respect to the Prepetition Credit Parties, each Debtor hereby forever, unconditionally and irrevocably releases, discharges and acquits the Prepetition Credit Parties and the DIP Credit Parties and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns (collectively, the "***Releasees***") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever to the extent arising out of, connected with, or relating to any and all acts, omissions, or events that have occurred (or, in the case of omissions, not occurred) prior to the entry of this Final Order (collectively, the "***Released Claims***") whether or not any such Released Claims are known or unknown, foreseen or unforeseen, liquidated or unliquidated, arising in law or in equity or upon contract or tort or under any state or federal law or otherwise, to the extent that any such Released Claims arise out of or relate in any way to the Prepetition Loan Documents, the DIP Financing Documents, and/or the transactions contemplated thereunder, any

actions taken pursuant thereto, or omissions thereunder, including, without limitation, (A) any

so-called "lender liability" or equitable subordination claims or defenses, (B) any and all claims

and causes of action arising under the Bankruptcy Code, and (C) any and all claims and causes of

action with respect to the validity, priority, perfection, or avoidability of the DIP Liens, DIP

Obligations, Prepetition Security Interests, or Prepetition Lender Debt.  Each Debtor further

waives and releases any defense, right of counterclaim, right of setoff or recoupment, or

deduction with respect to the payment of any of the Prepetition Lender Debt or any of the DIP

Obligations that it now has or may claim to have against any of the Releasees, to the extent

arising out of, connected with, or relating to any and all acts, omissions, or events that have

occurred (or, in the case of omissions, not occurred) prior to the entry of this Final Order.

29.    **Authorization to File Master Proof of Claim**.  The Prepetition Agent shall not

be required to file any proof of claim with respect to any of the Prepetition Lender Debt, all of

which shall be due and payable in accordance with the applicable Prepetition Loan Documents,

without the necessity of filing any such proof of claim; and the failure to file any such proof of

claim shall not affect the validity or enforceability of any of the Prepetition Loan Documents or

prejudice or otherwise adversely affect any Prepetition Credit Party's rights, remedies, powers or

privileges under any of the Prepetition Loan Documents, this Final Order, or applicable law.

Notwithstanding the foregoing sentence, the Prepetition Agent is authorized and empowered (but

shall not be required) to (i) file (and amend and/or supplement as it sees fit) a proof of claim

and/or aggregate proof of claim in each Chapter 11 Case or any Successor Case on behalf of the

Prepetition Credit Parties (with respect to a proof of claim filed by the Prepetition Agent with

respect to the Prepetition Lender Debt), (ii) file (and amend and/or supplement as it sees fit) a

single proof of claim in the jointly administered lead case for any claim of the Prepetition Credit

Parties in which case such proof of claim will be deemed to have been filed against each of the Debtors (a "***Master Proof of Claim***"), and (iii) collect and receive any monies or other property payable or distributable on account of any such claims and to share such payments or property with the Prepetition Credit Parties in accordance with the Prepetition Loan Documents and this Final Order. Upon the filing of a Master Proof of Claim, each Prepetition Credit Party on whose behalf such Master Proof of Claim was filed shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against any Debtor under the applicable Prepetition Loan Documents, and the claim of each Prepetition Credit Party (and each of its respective successors and assigns) named in such Master Proof of Claim shall be treated as if each such entity had filed a separate proof of claim in each Chapter 11 Case. The Prepetition Agent shall not be required to amend a proof of claim or a Master Proof of Claim filed by it to reflect a change in the holder of a claim set forth therein or a reallocation among such holders of the claims asserted therein and resulting from the transfer of all or any portion of such claims. The provisions of this paragraph and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect any right of any Prepetition Credit Party (or its successors in interest) to vote separately on any plan of reorganization or liquidation proposed in any of these Chapter 11 Cases or to file its own proof of claim, which claim, if filed, shall be in addition to, and not in lieu of, any other proof of claim filed by the Prepetition Agent. The Prepetition Agent shall not be required to attach to a Master Proof of Claim any instruments, agreements or other documents evidencing the obligations owing by any Debtor to any Prepetition Credit Party, which instruments, agreements or other documents will be provided upon written request made to counsel for the Prepetition Agent.

30.     **Binding Effect; Successors and Assigns**.  The provisions of this Final Order shall be binding upon all parties in interest in these Chapter 11 Cases and any Successor Case, including, without limitation, the DIP Credit Parties, the Prepetition Credit Parties, and the Debtors and their respective successors and assigns (including any Chapter 11 or Chapter 7 trustee hereafter appointed for the estate of any Debtor, any examiner appointed pursuant to section 1104 of the Bankruptcy Code, the Committee or any other fiduciary appointed as a legal representative of any Debtor or with respect to any property of the estate of any Debtor), and shall inure to the benefit of the DIP Credit Parties and the Prepetition Credit Parties and their respective successors and assigns. In no event shall any DIP Credit Party or Prepetition Credit Party have any obligation to make DIP Credit Extensions to, or permit the use of the DIP Collateral (including Cash Collateral) by, any Chapter 7 trustee, Chapter 11 trustee or similar responsible person appointed or elected for the estate of any Debtor.

31.     **Insurance**.  To the extent the Prepetition Agent is listed as loss payee or lender's loss payee under any Debtor's insurance policies, the DIP Agent shall also deemed to be the loss payee or lender's loss payee under such Debtor's insurance policies and, subject to the terms of this Final Order, shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies.

32.     **DIP Collateral Rights**.  Except as expressly permitted in this Final Order and the DIP Financing Documents, if any Person holds a lien on or security interest in DIP Collateral that is junior or subordinate to the DIP Liens in such DIP Collateral and such Person receives or is paid the proceeds of such DIP Collateral, or receives any other payment with respect thereto from any other source, in each case in a manner prohibited by any of the DIP Financing Documents or this Final Order prior to Payment in Full of all DIP Obligations, such junior or

subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for such DIP Credit Parties, and shall immediately turn over such proceeds to the DIP Agent for application in accordance with this Final Order and the DIP Financing Documents.

33.    **Conditions Precedent**.  No DIP Credit Party shall have any obligation to make any DIP Credit Extensions under the DIP Financing Documents unless the conditions precedent to making such extensions of credit under the DIP Financing Documents have been satisfied in full or waived in accordance with the DIP Financing Documents.

34.    **No Impact on Certain Contracts or Transactions**.  No rights of any Person in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 or 561 of the Bankruptcy Code, whatever such rights might or might not be, are affected by the provisions of this Final Order.

35.    **Effectiveness; Enforceability**.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be valid, take full effect, and be enforceable immediately upon entry hereof; there shall be no stay of execution or effectiveness of this Final Order; and any stay of the effectiveness of this Final Order that might otherwise apply is hereby waived for cause shown.

36.    **Inconsistencies**.  To the extent that any provisions in the DIP Financing Documents are expressly inconsistent with any of the provisions of this Final Order, the provisions of this Final Order shall govern and control.

37.    **Headings**.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

38.    **Objections Overruled**.  Any and all objections to the relief requested in the Motion, to the extent not otherwise withdrawn, waived, or resolved by this Final Order or by consent at or before the Final Hearing, and all reservations of rights included therein, are hereby OVERRULED and DENIED.

39.    **Chubb Reservation of Rights**.  To the extent Federal Insurance Company, Indemnity Insurance Company of North America, ACE American Insurance Company and/or any of their affiliates (collectively, and together with each of their successors, "***Chubb***") had valid, perfected, unavoidable and enforceable liens upon and/or security interests in any Cash Collateral of the Debtors as of the Petition Date, such liens and/or security interests in that Cash Collateral only shall be senior to any liens and/or security interests granted pursuant to this Final Order. Chubb shall not be granted liens or security interests in Cash Collateral for an amount greater than that held as of the Petition Date, without further order of this Court after notice and a hearing. This Final Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under insurance policies and related agreements. The proceeds of any insurance policy issued by Chubb shall only be considered to be Collateral to the extent such proceeds are payable to the Debtors (as opposed to a third party claimant) pursuant to the terms of any such applicable insurance policy. Nothing, including the DIP Credit Agreement and/or this Final Order, alters or modifies the terms and conditions of any insurance policies or related agreements issued by Chubb.

40.    **Stub Rent**.  Notwithstanding anything to the contrary in the Final Order or DIP Financing Documents, but subject to and subsequent to the funding of the Carve Out Account for

all amounts required to be deposited therein as of such time in accordance with paragraph 12, the Debtors shall fund $1 million of Cash Collateral, or proceeds of Cash Collateral, as the case may be, into an escrow account (the "***Stub Rent Carve Out***") within seven days after entry of this Final Order to satisfy obligations arising under the Debtors' real property leases for the period of September 9, 2019, through September 30, 2019 ("***Stub Rent***").  Undisputed claims for Stub Rent shall be paid within four weeks of the funding of the Stub Rent Carve Out and the Debtors shall work diligently to reconcile any disputed claims for Stub Rent and pay such amounts when agreed to by the Debtors and the affected landlord or determined by a final order of the Court. Upon the final reconciliation and payment of Stub Rent, any remaining funds in the Stub Rent Carve Out, which shall constitute Cash Collateral, shall be returned to the Debtors' operating account.

41.      **Certain Tax Liens**.  Notwithstanding any other provisions included in the Interim Order or Final Order, or any agreements approved hereby, any statutory liens of the Texas Taxing Authorities[7] (collectively, the "***Texas Liens***"), shall not be primed by nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Taxing Authorities are fully preserved.  From the proceeds of the sale of any of the Debtors' assets located in the state of Texas, the amount of $22,964.66 shall be set aside by the Debtors in a segregated account as adequate protection for the asserted secured claims of the Texas Taxing Jurisdictions prior to the distribution of any proceeds to any other creditor.  The liens of the Texas Taxing Jurisdictions, if any, shall attach to these proceeds to the same extent and with the same priority as the liens they

---

7        The "***Texas Taxing Authorities***" include the County of Denton, the County of Harrison, Harrison Central Appraisal District, the City of Waco, the City of Gladewater, White Oak ISD, and Gladewater ISD.

now hold against the property of the Debtors.  These funds shall be on the order of adequate

protection and shall constitute neither the allowance of the claims of the Local Texas Tax

Jurisdictions, nor a cap on the amounts they may be entitled to receive.

- 70 -

**Dated: October 17th, 2019**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**