**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| FRED'S, INC., *et al.*,[1] | ) Case No. 19-11984 (CSS) |
| Debtors. | ) Jointly Administered |
|  | ) **Re: D.I. 549** |

**DECLARATION OF RICHELLE KALNIT
IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER,
PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE,
(I) AUTHORIZING THE SALE OF CERTAIN INTELLECTUAL
PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
AND OTHER INTERESTS, AND (II) GRANTING RELATED RELIEF**

I, Richelle Kalnit, hereby declare under penalty of perjury as follows:

1. I am Senior Vice President of Hilco IP Services LLC d/b/a Hilco Streambank ("Hilco Streambank"), which has been retained as the Debtors' advisor in connection with the sale or disposition of the Debtors' intellectual property assets (collectively, the "Assets") as set forth in the *Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Hilco IP Services LLC d/b/a Hilco Streambank as Intellectual Property Disposition Consultant, Effective Nunc Pro Tunc to September 26, 2019 and (II) Granting Related Relief* [D.I. 264], which application was granted by the Court on October 25, 2019 [D.I. 375].

2. I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of an Order, Pursuant to Section 363 of the Bankruptcy Code, (I) Authorizing the Sale*

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 6625 Lenox Park, Suite 200, Memphis, TN 38115.

*of Certain Intellectual Property Free and Clear of Liens, Claims, Encumbrances, and Other Interests, and (II) Granting Related Relief* [D.I. 549] (the "<u>Sale Motion</u>").[2]

3. Except as otherwise stated, all statements in this Declaration are based upon my review of relevant documents, my discussions with the Debtors and their professionals, including other members of Hilco Streambank, and my personal knowledge and experience.

4. Hilco Streambank is an expert in the valuation, preservation, and monetization of intangible assets such as the Assets. Hilco Streambank has provided intangible asset advisory and brokerage services for dozens of retail and consumer companies. Many of those companies were debtors with chapter 11 bankruptcy cases pending in this district, including *In re The Bon-Ton Stores, Inc., et al.*, Case No. 18-10248 (CSS), *In re Charming Charlie Holdings Inc., et al.*, Case No. 19-11534 (CSS), *In re The Wet Seal, LLC, et al.*, Case No. 17-10229 (CSS), *In re Sports Authority Holdings, Inc., et al.*, Case No. 16-10527 (MFW), and *In re Draw Another Circle, LLC, et al.*, Case No. 16-11452 (KJC).

5. In connection with its engagement by the Debtors, Hilco Streambank worked with the Debtors' management and professionals to identify and assemble relevant data concerning the Assets, and to market the Assets to potential buyers. Hilco Streambank's activities included:

(a) identifying the Assets and assisting the Debtors in preserving such Assets;

(b) developing marketing materials including a "teaser" and webpage describing the Assets, the history of their use and their availability for sale;

(c) drafting and disseminating a press release via PR Newswire describing the Assets and their availability for sale;

(d) developing a contact list of potential buyers of the Assets;

(e) having direct contact by phone or email with 172 potential buyers of the Assets;

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

(f) disseminating email marketing materials that were sent to over 10,000 potential buyers of the Assets culled from Hilco Streambank's proprietary contact database;

(g) establishing and populating a virtual data room (the "Data Room") and arranging for the admission of two parties to the Data Room who executed a form of non-disclosure agreement acceptable to the Debtors;

(h) developing a bid form and bidder qualification guidelines;

(i) working with the Debtors and the buyers of the Assets to document deliverables and terms of the sale;

(j) working with the consumer privacy ombudsperson ("CPO") to facilitate information flow to the CPO concerning the sale of the customer data; and

(k) continuing to work with the Debtors and their professionals to close the sale of the Assets.

6. Hilco Streambank and the Debtors notified potential buyers that any offers to acquire the Assets were required to be submitted in writing on or before December 13, 2019 (the "Bid Deadline"), together with a minimum good-faith deposit equal to 10% of the proposed purchase price.

7. Throughout the sale process, Hilco Streambank had advised potential bidders engaged in due diligence of the Debtors' desire to generate a "stalking horse" bid that could be used as a template for further bids and set a floor on the value of the Assets. The Debtors were ultimately unable to secure a stalking horse bid.

8. Following an extension of the Bid Deadline to December 16, 2019, the Debtors received a bid from one qualified bidder, International Enterprise Inc. (the "Successful Bidder"). The Successful Bidder is not an "insider" as the term is defined in section 101(31) of the United States Bankruptcy Code.

9. Based on the extensive marketing process conducted and discussions with potential bidders, I do not believe that a longer sale process would have generated higher or better bids than what the Debtors received. To the contrary, I believe that an extension of the

sale process would have a negative impact on the value of the Assets. All of the Debtors' stores are closed, the www.fredsinc.com website is no longer operational, and customer engagement with the Debtors' brand is decreasing. Over time, the Debtors' customers will satisfy their demand for the types of products sold by the Debtors from other merchants under different brands. To reverse this trend, a buyer of the Assets will need to invest more in marketing and customer re-acquisition, thereby reducing the amount such buyer can pay for the Assets. As a result, time is of the essence with respect to the proposed sale of the Assets, to avoid further deterioration in their value and the incurrence of additional administrative expenses.

10. On December 20, 2019, the Debtors filed the *Notice of Successful Bidder and Purchase Agreement* [D.I. 627]. A substantially final version of the asset purchase agreement with the Successful Bidder (the "Purchase Agreement") was annexed thereto.

11. The Assets include trademarks and related brands, a domain name, social media assets and customer data. Some of the customer data constitutes Personally Identifiable Information as set forth in 11 U.S.C. § 101(41A) ("PII"). On December 30, 2019, the Court entered an order directing the appointment of a CPO to evaluate the Debtors' privacy policy, any proposed sale of assets that includes PII, and file a report setting forth recommendations with respect to the sale of the PII [D.I. 660]. On that same date, the Office of the United States Trustee for the District of Delaware filed the *Notice of Appointment of Consumer Privacy Ombudsman* [D.I. 664]. Since the appointment of the CPO, Hilco Streambank has worked with the Debtors and their respective advisors to gather information relevant to the CPO's evaluation.

12. The Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the Successful Bidder without collusion and in good faith, and resulted from arm's-length bargaining positions. Moreover, to the best of my knowledge, no common identity

of directors or controlling shareholders exists between the Debtors and the Successful Bidder. I believe that the Successful Bid represents the highest and best offer available for the Assets after the reasonable and thorough marketing process conducted by Hilco Streambank and the Debtors. Accordingly, in my opinion, granting the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, and their creditors.

13. A hearing to consider entry of an order approving the Sale Motion is scheduled before the Court on January 28, 2020. Subject to Court approval of the Sale Motion and the Purchase Agreement, the Debtors and the Successful Bidder intend to move expeditiously to consummate the sale of the Assets to the Successful Bidder. I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and accurate to the best of my personal knowledge and information.


Dated: January 27, 2020

                                                      */s/ Richelle Kalnit*
                                                     Richelle Kalnit