## EXHIBIT C

**Declaration of Mark A. Renzi**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRED'S, INC., *et al.*,[1] | ) | Case No. 19-11984 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

## **DECLARATION OF MARK A. RENZI**

I, Mark A. Renzi, hereby submit this declaration (the "Declaration") in support of the *Debtors' Motion for Entry of an Order Pursuant to Section 363 of the Bankruptcy Code, (i) Authorizing the Sale of Certain Litigation Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (ii) Authorizing the Rejection of Certain Executory Contracts in Connection therewith, and (iii) Granting Related Relief* (the "Motion").[2] I declare under penalty of perjury, that the following information is true to the best of my knowledge, information and belief.

1. I am the Chief Restructuring Officer ("CRO") of Fred's, Inc. ("Fred's") and its debtor affiliates as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). In such capacity, I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

2. I submit this Declaration in my capacity as CRO of the Debtors. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The Debtors' address is 6625 Lenox Park, Suite 200, Memphis, TN 38115.

[2] Terms not defined herein shall have the meanings ascribed to them in the Motion.

of the Debtors, and review of the relevant documents, provided to me or verified by employees of the Debtors and/or my opinion based upon my experience, knowledge and information concerning the Debtors.

3. I am authorized to submit this Declaration on behalf of the Debtors in connection with the Motion, and, if called to testify, I could and would testify competently to the facts set forth herein.

4. I have more than 25 years of business experience, and over 15 years of financial consulting experience, including liquidity and capital structure assessment, debt and equity restructuring advice, and identification of reorganization alternatives in a variety of industries.

5. In addition to my role as CRO for the Debtors, I serve as Managing Director of Berkeley Research Group, LLC ("BRG"), financial advisor to the Debtors. BRG's practice consists of senior financial, management consulting, accounting, and other professionals who specialize in providing financial, business, and strategic assistance typically in distressed business settings. I am a member of BRG's Corporate Finance Group, and specialize in performance improvement and restructurings.

6. As CRO of the Debtors, my duties have included, among other things, overseeing the liquidation of the Debtors' assets to maximize value for creditors, including the marketing and sale of certain of the Debtors' litigation assets (the "Claims") arising from a class action captioned *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* MDL 1720 (MKB) (JO), filed in the United States District Court for the Eastern District of New York (the "Interchange Litigation"), as well as from the other actions referenced in Exhibit A to the Sale Agreement (together with the Interchange Litigation, the "Litigation").

7.      It is not uncommon for liquidating companies, particularly retailers, to market and sell their interest in proceeds from class action cases like the Claims in these Chapter 11 Cases. In fact, BRG has overseen the sale and marketing of class action litigation assets in several other bankruptcy cases, including, for example in the *In re Avenue Stores, LLC, et al.*, Case No. 19-11842 (LSS) (Bankr. D. Del.) chapter 11 cases, and in the *In re Specialty Retail Shops Holding Corp.*, Case No. 19-80064 (TLS) (Bankr. D. Neb.) chapter 11 cases.

8.      A principal rationale for selling class action litigation assets in a liquidating chapter 11 case is that although a debtor's successor or successors following confirmation of a plan may eventually see the proceeds from a settlement of litigation claims, there is typically uncertainty regarding:  (i) whether the debtor will ultimately collect proceeds from the settlement; (ii) the date upon which the debtor will ultimately collect proceeds from a settlement; and (iii) the amount that the debtor stands to collect if and when a settlement occurs.  These factors depend on litigation that lies outside of the debtor's control as a class member or putative class member.

9.      In these Chapter 11 Cases, as CRO, I worked closely with BRG, the Debtors' General Counsel, Ben Morgan, and the Debtors' outside counsel Kasowitz Benson Torres LLP, to analyze the Claims, and in this process, concluded that the marketing and sale of the Debtors' class action litigation assets was in the best interest of the Debtors', their estates, and their creditors.  In determining which litigation assets to market and sell, the Debtors and their advisors conducted an analysis of which Claims they owned, as well as an analysis with respect to valuation, and other issues.[3]

---

[3] I have been informed that, as referenced in section 3.5 of the Sale Agreement, the Debtors have "good, valid and marketable title to the Claims."  Additionally, I have been informed that, as referenced in section 3.5 of the Sale Agreement, the Claims "ha[ve] not previously [been] transferred."

3

10. Prior to the commencement of the Claims sale process, the Debtors developed a list of thirty-seven potential bidders (the "Potential Bidders").[4] BRG assisted the Debtors in developing a list of the Potential Bidders, based on research into reputable litigation claims sale market participants. BRG also considered its prior experience with market participants in marketing and selling litigation claims in other bankruptcy cases, and together with the Debtors and Kasowitz, fielded inbound inquiries and expressions of interest.

11. On January 24, 2020, BRG, at my direction, commenced the sale process by emailing Potential Bidders to inform them of the procedures through which bidding would be conducted the "Bidding Procedures"), as well as conditions required for making a bid (the "Bidding Conditions"). The Bidding Procedures and Bidding Conditions were outlined in a "teaser" letter (the "Teaser") sent to the Potential Bidders. A true and correct copy of the Teaser is attached hereto as Exhibit 1.

12. Pursuant to the Bidding Procedures, the deadline for a Potential Bidder to submit a bid was February 14, 2020 (the "Bidding Deadline"). The Bidding Conditions required, *inter alia*, representations from Potential Bidders that they: (i) had not engaged in any collusive conduct and had acted in good faith in the submission of a bid; (ii) had agreed to accept the Claims "as is, where is,"; and (iii) had acted in good faith and had not engaged in collusive conduct. Both the Bidding Procedures and Bidding Conditions were designed to liquidate the Claims in a timely and cost-efficient manner, and to ensure a fair, arms'-length process.

13. The Bidding Procedures required Prospective Bidders to, among other things, execute a non-disclosure agreement ("NDA") to gain access to a data room the Debtors established containing information on the Claims (the "Data Room"), and which was updated

---

[4] One Potential Bidder was sent a Teaser on February 11, 2020, in response to an inbound inquiry regarding the Claims after the bidding process had commenced.

periodically with additional information on the Claims, including in response to questions received from Potential Bidders. Of the thirty-seven Potential Bidders to whom the Debtors sent the Teaser, seventeen executed an NDA and received access to the Data Room.

14. As of the Bidding Deadline, eight Potential Bidders who signed NDAs had submitted bids (the "<u>Bidders</u>"). I evaluated the bids submitted by the Bidders in concert with the Mr. Morgan, BRG, and Kasowitz, and concluded that Optium's bid of $950,000 for all of the Claims was the highest and best bid. Optium also certified compliance with the Bidding Conditions. Following the selection of the winning bidder, on February 21, 2020, BRG, at my direction, emailed all Bidders to notify them regarding the outcome of the sale process.

15. Between February 21, 2020 and April 1, 2020, the Debtors engaged in vigorous arms'-length negotiations, which culminated in the execution of the Sale Agreement. The Sale Agreement contemplates, among other things, the entry of an order to the reasonable satisfaction of Fred's and Optium, providing for the sale of the Claims free and clear of interests pursuant to section 363 of the Bankruptcy Code, and for the rejection of the Claims Servicing Agreements.

16. With respect to the Claims Servicing Agreements, the Debtors determined that such agreements would no longer be necessary, following the entry of an order approving the sale of the Claims, in light of the fact that the Debtors would no longer have a continued need for assistance in administering the Claims.

17. Based on the foregoing, I respectfully submit that Optium is entitled to the protections afforded to good faith purchasers under section 363(m) of the Bankruptcy Code, and that the Court should grant the Motion.

Dated: May 1, 2020  
Boston, Massachusetts               /s/ *Mark A. Renzi*  

                                                    Name: Mark A. Renzi  
                                                  Title: Chief Restructuring Officer

# **EXHIBIT 1**

**Teaser**

Prospective Bidder,

As you may be aware, Fred's, Inc. and debtor its affiliates ("Fred's") filed for Chapter 11 bankruptcy on September 9, 2019.  Fred's is proposing to sell or assign certain litigation assets, including their rights to the Visa/MasterCard class action settlement proceeds, in addition to their right to proceeds from other litigations in which they are a plaintiff.  We are reaching out to see if you are interested in submitting a bid for some, or all of these assets (collectively, the "Assets").

You will find the information necessary to submit a bid for such rights in a data room that Fred's has created (the "Data Room").  To obtain access the Data Room, you must first submit an executed non-disclosure agreement in the form attached hereto.

If you have a request for additional information, please email Mark Renzi (mrenzi@thinkbrg.com), Michael Bohne (mbohne@thinkbrg.com), John McDonald (john.mcdonald@thinkbrg.com), and Andrew Elkin (aelkin@kasowitz.com) and we will attempt to coordinate all reasonable requests.

If you would like to purchase some, or all of the Assets, you must submit a bid to the parties on this email **by February 14, 2020 @ 5:00 p.m. EST** (the "Bid Deadline").[1] The bid shall contain a statement from the bidder that:

> (i) it is prepared to enter into and consummate the transactions contemplated in an applicable asset purchase agreement immediately upon entry by the Court of an order approving the sale of the assets to such bidder;
>
> (ii) it has had an opportunity to conduct any and all due diligence regarding the transaction prior to making its offer;
>
> (iii) it has relied solely upon its own independent review, investigation, and/or inspection of any documents in making its bid;
>
> (iv) it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the transaction or the completeness of any information provided in connection therewith;
>
> (v) it did not engage in any collusive conduct and acted in good faith in submitting its bid;
>
> (vi) it will accept the Assets "as is, where is";
>
> (vii) it acknowledges that the Debtors shall provide no representations or warranties regarding the assets other than with respect to ownership;

---

[1] Fred's reserves the right to, in its sole discretion, accept bids submitted after the Bid Deadline, in accordance with Fred's fiduciary duties.

      (viii) its bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

The submission of a bid shall constitute a binding and irrevocable offer to consummate the transaction reflected in such bid. Fred's reserves all rights, and nothing contained herein shall abrogate the fiduciary duties of Fred's.

If you have any further questions please email Mark Renzi (mrenzi@thinkbrg.com), Michael Bohne (mbohne@thinkbrg.com), John McDonald (john.mcdonald@thinkbrg.com), and Andrew Elkin (aelkin@kasowitz.com).

Sincerely,

Michael Bohne